IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES D. MCNAMEE,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:14-CV-1948** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **NATIONSTAR MORTGAGE, LLC** | : | **Magistrate Judge Kemp** |
| | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

Before the Court are Defendant Nationstar Mortgage, LLC's ("Defendant" or

"Nationstar") April 2, 2015 Motions to Apply the First-to-File Rule (Doc. 13) and to Withdraw

the Reference and to Consolidate Cases (Doc. 14.) As to the former, Defendant moves the Court

to apply the first-to-file rule in this proceeding against a later-filed parallel proceeding styled

*Amy L. McChesney, et al. v. Nationstar Mortgage, LLC* (Case No. 14-cv-4752) (the "Minnesota

Case") now pending in the United States District Court for the District of Minnesota (the

"Minnesota Court.") As to the latter, Defendant moves the Court to withdraw the reference of an

adversary case styled *Charles D. Mcnamee, et al. v. Nationstar Mortgage, LLC* (Adv. No. 14-

3027) (the "Bankruptcy Class Action") now pending in the United States Bankruptcy Court for

the Southern District of Ohio (the "Bankruptcy Court") and to consolidate that case with the one

*sub judice*. The Motions are fully briefed and ripe for review. For the reasons below, Defendant's

Motion to Apply the First-to-File Rule is **DENIED**, and Defendant's Motion to Withdraw the

Reference and to Consolidate Cases is **GRANTED** in part and **DENIED** in part.

1

## I.     Factual Background[1]

In June 2009, Plaintiff Charles McNamee ("Plaintiff") executed a Note in the amount of

$181,936.00 payable to The American Eagle Mortgage Company to secure residential real estate

property ("the Property") located at 8641 Ross Drive in Mechanicsburg, Ohio. (*Compl.*, Doc. 1,

¶6.) That same month, The American Eagle Mortgage Company endorsed the Note to Taylor,

Bean & Whitaker Mortgage Company who then endorsed the Note without recourse to Bank of

America, N.A. ("Bank of America.") (*Id.*, ¶7.)

On May 29, 2012, Plaintiff filed a voluntary Chapter 7 petition jointly with his spouse in

the case styled *Charles and Christina McNamee* (Case No. 3:12-bk-32578) (the "Bankruptcy

Case") in the Bankruptcy Court. (*Id.*, ¶8.) That same day, Plaintiff filed a Statement of Intention

pursuant to 11 U.S.C. § 521(a)(2)(A) informing Bank of America of his intention to surrender

the Property, which property he and his wife vacated in June 2012. (*Id.*, ¶¶10-11.) Plaintiff

received a Chapter 7 discharge in the Bankruptcy Case on September 25, 2012. (*Id.*, ¶14.)

In December 2012, Bank of America assigned the debt to Defendant. (*Id.*, ¶16.) Plaintiff

alleges Defendant then began to send monthly "Mortgage Loan Statements" to Plaintiff as early

as January 2013, demanding payment for the above-referenced debt discharged in the

Bankruptcy Case. (*Id.*, ¶19.) Plaintiff alleges that each Statement sent included a detachable

payment coupon and a return payment envelope, a breakdown of "Amounts Payable,"

information about "Unpaid Monthly Payments" and "Unpaid Late Charges," the "Amount Due,"

and a "Payment Due Date," among other things. (*Id.*, ¶¶19-20.) Plaintiff further alleges that

Defendant made telephone calls to Plaintiff seeking payment for the discharged debt even after

being told by Plaintiff to stop calling. (*Id.*, ¶¶21, 23.)

## II.     Procedural History

---

[1] For the purposes of this order the Court recites the facts as alleged in Plaintiff's Complaint.

On November 27, 2013, Plaintiff moved the Bankruptcy Court to find Defendant in contempt for violating that court's discharge injunction. (Bankruptcy Case, Doc. 42.) Plaintiff sought to represent a nationwide class of debtors allegedly contacted by Nationstar for payment of debt discharged in bankruptcy. (*Id.* at 6-7.) On February 7, 2014, Plaintiff withdrew the motion. (Bankruptcy Case, Doc. 59.) One week later, on February 14, 2014, Plaintiff filed a class action complaint against Defendant in the same court, again alleging Defendant violated that court's discharge injunction and petitioning that court to hold Defendant in contempt. (Bankruptcy Case, Doc. 60; Bankruptcy Class Action, Doc. 1; Doc. 11 at 8.) Plaintiff's proposed class comprised those who "(i) have filed for Chapter 7 Bankruptcy relief from January 1, 2009 to the present; (ii) have filed and served a Statement of Intention pursuant to 11 U.S.C. § 521 stating an intention to surrender or otherwise to not retain or pay for real property that once served or continues to serve as security for a loan/debt serviced and/or administered by Nationstar; (iii) have received a bankruptcy discharge; (iv) and have received from Nationstar, after the issuance of such bankruptcy discharge, Mortgage Loan Statements of the type described in [the] Complaint and/or other telephonic or written collection communications that Plaintiff alleges violate the discharge injunctions issued in such Chapter 7 Bankruptcy Cases." (Bankruptcy Class Action, Doc. 1, ¶26.)

Relief sought by Plaintiff includes, among other things, a monetary sanction against Defendant to purge the contempt citations, a civil judgment against Defendant in favor of Plaintiff and putative class members, and a determination that the sanction should include the costs of the class action and reasonable attorney fees. (*Id.* at 12-13.) In an October 2, 2014 order the Bankruptcy Court limited the class to debtors who received their discharge in the Southern District of Ohio. (Bankruptcy Class Action, Doc. 11 at 13.) In a March 26, 2015 order that court

stayed the proceeding indicating that it would take no further action until it received a status report filed by both parties informing the court of the necessity of further proceedings. (Bankruptcy Class Action, Doc. 26 at 2.) As of December 4, 2015, no status report has been filed in that court.

On October 17, 2014, Plaintiff filed a class action complaint against Defendant in this Court alleging violations of 15 U.S.C. §§ 1692(e) and (f),[2] also known as the Fair Debt Collection Practices Act ("FDCPA.") (Doc. 1.) The allegations concern unlawful attempts to collect on debt discharged in bankruptcy. Plaintiff filed suit on behalf of himself and those who, like him, "filed Chapter 7 and duly informed Nationstar . . . of their intent to surrender or to not otherwise retain or pay for the real properties that serve(d) as security for the underlying debts." (*Id.*, ¶25.) As with the Bankruptcy Class Action, Plaintiff's proposed class comprises those who "(i) had/have filed for Chapter 7 bankruptcy relief; (ii) had/have filed and served a Statement of Intention pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender or otherwise to not retain or pay for real property that once served or continues to serve as security for a consumer loan/debt serviced or administered by Nationstar; (iii) had/have received a bankruptcy discharge; (iv) and from October 18, 2013 to the present, had/have received from Nationstar, after the issuance of such bankruptcy discharge, Mortgage Loan Statements of the type described in [the] Complaint and/or other telephonic or written collection communications." (*Id.*, ¶27.)

On November 13, 2014, less than one month after Plaintiff brought suit in this Court, one Amy L. McChesney ("McChesney") filed a similar class action complaint in the United States District Court for the District of Minnesota. (Minnesota Case, Doc. 1.) McChesney alleged Defendant violated §§ 1692(e) and (f) of the FDCPA through unlawful attempts to collect discharged debt. (*Id.*, ¶1.) She brought suit individually and on behalf of all natural persons to

---

[2] Only the §1692(e) count remains. The Court dismissed the §1692(f) count. (Doc. 20.)

whom, within the year prior to her filing the complaint, Nationstar directly or indirectly sent a letter similar to the ones she received concerning a mortgage loan that had been discharged in bankruptcy. (*Id.*, ¶34.)

On April 1, 2015, Defendant filed a motion in the Minnesota case to stay proceedings in in favor of the first-filed Case, i.e. the case *sub judice*. (Minnesota Case, Doc. 29.) On October 19, 2015, that court issued an order granting in part and denying in part the Motion. (Minnesota Case, Doc. 48.) McChesney's individual claims were allowed to proceed. (*Id.* at 10) McChesney's class claims, however, were stayed pending certification of the class in the case *sub judice*, which is in progress.[3] (*Id.*)

On April 2, 2015, Defendant filed the two Motions at issue. The first moves the Court to apply the first-to-file rule against the Minnesota Case; the second moves the Court to withdraw the reference of the Bankruptcy Class Action and to consolidate it with the case *sub judice*.

### III.    ANALYSIS

### A.  Motion to Apply the First-to-File Rule

### 1. Standard

The first-to-file rule is "a well-established doctrine that encourages comity among federal courts of equal rank." (*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed. App'x 433, 437 (6th Cir. 2001) (unpublished). It provides that, for suits involving nearly identical parties and issues filed in two district courts, "the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop*, 16 Fed. App'x at 437 (quoting *In re Burley*, 738 F.2d 981, 988) (9th Cir. 1984)). The rule is not precise, *Colorado River Water*

---

[3] Magistrate Judge Kemp scheduled any motion for class certification to be filed by October 31, 2015. (Doc. 12 at 2.) On October 30, 2015, Plaintiff moved to amend the order and postpone the deadline to file the motion for class certification until a time after issuance of this Order. (Doc. 22 at 5-6.)

*Conservation Dist. V. U.S.*, 424 U.S. 800, 817 (1976), rather a rule of thumb reviewed only for abuse of discretion. *See Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997). Indeed "[t]he most basic aspect of [the rule] is that it is discretionary." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). However, a court "abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it," *Smith v. S.E.C.*, 129 F.3d at 361, which is to say that "the issues 'must have such an identity that a determination in one action leaves little or nothing to be determined in the other.'" *Congress Credit Corp. v. AJC Intern., Inc.*, 42 F.3d 686, 690 (1st Cir. 1994) (quoting *Thermal Dynamics Corp. v. Union Carbide Corp.*, 214 F. Supp. 773, 776 (S.D.N.Y. 1963)).

## B. Application of Standard

In determining whether to apply the first-to-file rule, courts generally consider: (1) the chronology of the actions; (2) the similarity of the issues; and (3) the similarity of the parties. *Alltrade, Inc.*, 946 F.2d at 625; *Smithers-Oasis Co. v. Clifford Sales & Marketing*, 194 F. Supp. 2d 685, 687 (N.D. Ohio 2002); *Thomas & Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002); *Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999). The Court adopts this framework and will address each factor in turn.

First, the date that an original complaint is filed controls. *Zide Sport Shop*, 16 Fed. App'x at 437. The first factor is satisfied because there is no doubt that the case *sub judice* is the case first filed. (Doc. 1; Minnesota Case, Doc. 1.)

Second, there is also no doubt that both cases involve substantially similar issues; both cases concern allegations that the same Defendant violated the same sections of the FDCPA by engaging in similar conduct. (Doc. 1 at 9-10, ¶¶19-20, 22; Minnesota Case, Doc. 1, ¶¶1, 15-20.) The only difference between the factual allegations in each case is that Plaintiff alleges

Defendant engaged in even more unlawful debt collecting activities than McChesney does. While McChesney alleges Defendant sent form letters to her, (Minnesota Case, Doc. 1, ¶15), Plaintiff alleges Defendant not only sent such letters but also made repeated telephone calls attempting to collect from Plaintiff. (Doc. 1, ¶¶16, 19-20, 21, 23.) Given the broader scope of Plaintiff's allegations, a determination of them here would leave nothing to be determined in the Minnesota Case. Therefore, the second factor is satisfied. *See Congress Credit Corp.*, 42 F.3d at 690 (internal quotation marks omitted).

Third, until last month, there was little doubt that the parties in both putative class actions would be similar. Although their class proposals differed in language and likely effect, (Doc. 1, ¶27; Minnesota Case, Doc. 1, ¶34), Plaintiff and McChesney each sought to certify a nationwide class of persons contacted by Defendant for payment of debt discharged in bankruptcy. (*Id.*) On October 19, 2015, however, the Minnesota Court issued an order granting in part and denying in part Defendant's Motion to Stay Proceedings in Favor of the First-Filed Case. (Minnesota Case, Doc. 48 at 1.) The Order stayed McChesney's class claims pending resolution of the class in the case *sub judice* but permitted McChesney's individual claims to proceed. The Minnesota Court did so in light of its concern that a stay of her individual claims might unfairly delay the resolution of those claims and prejudice her ability to pursue individual relief. (*Id.* at 10.) This development has rendered every one of Defendant's arguments concerning the similarity of the parties moot. *Cf. Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 690 (E.D. Tenn. 2005) (finding the third factor satisfied only after establishing that the "collective classes substantially overlap.") The parties are now necessarily dissimilar, which leaves the third factor not satisfied. Moreover, the Court cannot imagine a meritorious argument that would support a stay.

The Court thus exercises its discretion to **DENY** Defendant's Motion to Apply the First-to-File Rule.

### B. Motion to Withdraw the Reference and to Consolidate Cases

### 1. Standard

28 U.S.C. § 157(d) provides that a district court "may withdraw, in whole or in part, any case or proceeding referred under this section . . . on timely motion of any party, for cause shown." The statute does not define cause, and the Sixth Circuit has yet to address the matter. Nevertheless several federal circuit courts of appeals guide courts to "consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (quoting *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir.1985)). The Second Circuit suggests the Court weigh the following factors, of which the first is most important: (1) whether the claim is core or non-core, (2) the most efficient use of judicial resources, (3) the delay and costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (1996). As the moving party, Defendant bears the burden of persuading the Court to withdraw the reference. *See Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 955 (7th Cir. 1996).

### 2. Application of Standard

Parties agree on the relevant factors to be considered by the Court in determining whether permissive withdrawal of the Bankruptcy Class Action is warranted, i.e. whether the claim is core or non-core, the most efficient use of judicial resources, delay and cost to parties, promoting

uniformity of bankruptcy administration, preventing forum shopping, and other relevant factors.[4]

They also agree that Plaintiff's claim for violation of the discharge injunction is a core

proceeding under 28 U.S.C. § 157(b)(2).[5] *See In re Marshall*, 491 B.R. 217, 228 (Bankr.S.D.

Ohio 2012).

Plaintiff emphasizes the Second Circuit's suggestion that the core or non-core nature of

the claim is the most important factor. (Doc. 16 at 7) (citing *In re Burger Boys*, 94 F.3d at 762).

That determination is paramount because it purportedly is the issue on which "questions of

efficiency and uniformity will turn," because "hearing core matters in a district court could be an

inefficient allocation of judicial resources given that the bankruptcy court generally will be more

familiar with the facts and issues." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).

While that might usually be the case, the case *sub judice* is unusual. This case and the

Bankruptcy Class Action involve the same parties and the same underlying facts. A

determination of the facts in one court necessarily determines those in the other. Despite

Plaintiff's position to the contrary (*see* Doc. 16 at 13), neither case demands sophisticated legal

knowledge or analysis, and any concern about this Court's ability to familiarize itself efficiently

with the facts and law concerning the Bankruptcy Class Action is misplaced.

Defendant rightly notes that several courts in this district have favored permissive

withdrawal only upon a showing of both cause and extraordinary, unusual, or compelling

circumstances. *See Dirt Road Enters., LLC v. Equilon Enters., LLC (In re Petro Acquisitions,*

*Inc.)*, 2009 U.S. Dist. LEXIS 133518, at *9 (S.D. Ohio Jan. 30, 2009); *Nicole Energy Servs., Inc.*

---

[4] Plaintiff offers no argument as to timeliness and, based on Defendant's showing (Doc. 14 at 5), the Court finds the Motion filed timely.

[5] 28 U.S.C. § 157(b)(3) provides that the Bankruptcy Court should initially determine whether a proceeding is core. *See In re Rivera*, 2005 WL 4001273, at *4 (N.D. Ohio Oct. 12, 2005) ("the question of whether an adversary proceeding is a core proceeding should initially be decided by the bankruptcy court"). The Bankruptcy Court determined as much in the Bankruptcy Class Action, Doc. 11 at 12.

*v. McClathey*, 2007 U.S. Dist. LEXIS 21171, at *9 (S.D. Ohio Mar. 26, 2007); *In re Elder-Beerman Stores Corp.*, 1997 U.S. Dist. LEXIS 23784, at *10 (S.D. Ohio Aug. 1, 1997); *In re Federated Dep't Stores, Inc.*, 189 B.R. 142, 144 (S.D. Ohio 1995). As with the purported importance of the core or non-core nature of the claim, discussed above, the underlying principle animating the more restrictive standard applied by courts in this district is concern about judicial economy. *See, e.g., Dirt Road Enters*, 2009 U.S. Dist. LEXIS 133518, at *9 (denial of permissive withdrawal due to complexity of the bankruptcy court proceeding); *Nicole Energy*, 2007 U.S. Dist. LEXIS 21171, at *9 (denial due to movant not addressing "the goal of uniformity and efficiency in the administration of bankruptcy law"); *In re Elder-Beerman*, 1997 U.S. Dist. LEXIS 23784, at *10 (withdrawing the reference to serve judicial economy); *In re Federated Dep't Stores*, 189 B.R. 142 at 144 (denial due to the bankruptcy court's "significant experience and familiarity with both the bankruptcy code and the facts of [the] case").

Concerning judicial economy, Defendant's position is persuasive. Plaintiff's Bankruptcy Case was closed on December 30, 2014. (Bankruptcy Case Doc. Report.) The only matter outstanding is the Bankruptcy Class Action, which has been stayed since March 2015. (Bankruptcy Class Action, Doc. 26 at 2.) The choice now before the Court is whether to handle the Bankruptcy Class Action alongside the case *sub judice* or to handle only the case *sub judice* and leave the parties to litigate the Bankruptcy Class Action in the Bankruptcy Court. The Court chooses the former. This Court and the Bankruptcy Court need not independently determine the same set of facts for the same parties represented by the same counsel. Such dual-track adjudication would be unusually inefficient and shows sufficient cause to warrant withdrawal. *See, e.g., Congress Credit Corp.*, 42 F.3d 686 at 690 (instructing the district court to direct a show of cause as to why cases should not be consolidated because "it makes no sense for the two

10

actions to proceed along separate tracks); *In re Bennett Funding Group, Inc.*, 258 B.R. 67, 77 (N.D.N.Y. 2000) (withdrawing the reference, noting that "[w]ith respect to the efficient use of judicial resources, it appears highly inefficient to force the defendants to litigate many of the same issues in two separate forums"). Were judicial efficiency the sole concern, the Court would grant Defendant's Motion to Withdraw in full. However, the Bankruptcy Class Action is essentially a contempt proceeding. This presents a problem, and the appropriateness of this Court administering the Bankruptcy Court's contempt proceeding is a concern.

Plaintiff asserts that most courts have rejected the position that a debtor's rights as to a violated discharge injunction may even be heard outside of a bankruptcy court. (Doc. 16 at 8.) Plaintiff cites no authority for the assertion. (*Id.*) Such authority would be welcome considering a plain reading of 28 U.S.C. § 157(d) permits the Court to withdraw *any* case or proceeding referred under the section. Nevertheless, the Court takes Plaintiff's concern well. Contempt proceedings are a *sui generis* exercise of power inherent in all courts to enforce obedience. *Myers v. U.S.*, 264 U.S. 95, 103 (1924). And "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction." *In re Kilbourne*, 507 B.R. 219, 222 (S.D. Ohio 2014) (quoting *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 236 (1998)). Plaintiff relies solely on the Bankruptcy Court's contempt powers for his remedy in the Bankruptcy Class Action, (Bankruptcy Class Action, Doc. 11 at 8), and it is in that court that the contempt proceeding will eventually be adjudicated, per instruction below.

### IV.    Conclusion

For the reasons above, Defendant's Motion to Apply the First-to-File Rule is **DENIED**, and Defendant's Motion to Withdraw the Reference and to Consolidate Cases is **GRANTED in part** and **DENIED in part**; the Court withdraws the case styled *Charles D. Mcnamee, et al. v.*

*Nationstar Mortgage, LLC* (Adv. No. 14-3027) now pending in the United States Bankruptcy Court for the Southern District of Ohio, and consolidates it with the case *sub judice* only for the purpose of making findings of fact. After final judgment is entered for the case *sub judice*, the Bankruptcy Court will make any remaining determinations for the withdrawn case.

    **IT IS SO ORDERED.**

                          **s/ Algenon L. Marbley**
                        **ALGENON L. MARBLEY**
**DATED: December 10, 2015**         **UNITED STATES DISTRICT JUDGE**