IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHARLES D. MCNAMEE, et al., :
: Case No. 2:14-CV-1948
Plaintiffs, :
: JUDGE ALGENON L. MARBLEY
v. :
: Magistrate Judge Vascura
NATIONSTAR MORTGAGE, LLC, :
:
Defendant. :

**OPINION & ORDER**

This matter is before the Court on Plaintiffs' Motion to Certify Class. (ECF No. 48). The Court held a Class Certification Hearing on Thursday, March 29, 2018 at 10:00 a.m. (ECF No. 56). After consideration of the memoranda related to class certification and the oral argument of the parties, and for the reasons set forth below, the Court **GRANTS** the Motion and certifies the classes.

## I. BACKGROUND

### A. Factual Background

This case concerns Fair Debt Collection Practices Act ("FDCPA") consequences of letters that Defendant Nationstar Mortgage sent to Plaintiff Charles McNamee and others similarly situated.

Nearly a decade ago, Mr. McNamee took out a mortgage on his home in Mechanicsburg, Ohio, through American Eagle Mortgage Company. (ECF No. 1). He executed a Note in the amount of $181,936.00, payable to American Eagle. (*Id.*). Eventually, American Eagle endorsed the Note to an intermediary mortgage company, which, in turn, endorsed the Note to Bank of America, N.A. (*Id.*).

In 2012, Mr. McNamee found himself in default on the Note. (*Id.*). He and his wife filed jointly for voluntary Chapter 7 bankruptcy. (*Id.*). As part of the bankruptcy proceedings, Mr. McNamee filed a Statement of Intention pursuant to 11 U.S.C. § 521(a)(2)(A) informing Bank of America that he and his wife intended to surrender the Mechanicsburg property. (*Id.*). They physically vacated the property as the bankruptcy proceedings continued. (*Id.*). Mr. McNamee received a Chapter 7 discharge in September 2012, and, upon the request of Bank of America, the Chapter 7 Trustee abandoned the bankruptcy estate's interest in the property. (*Id.*).

After the bankruptcy, Bank of America assigned the mortgage on the property to Defendant Nationstar. (*Id.*).

Nationstar began to send Mr. McNamee correspondence that would ultimately become the focal point of this litigation. Specifically, it sent Mr. McNamee two letters on December 17, 2012, informing him that it took over debt servicing for the mortgage. (*Id.*). On December 31, 2012, it sent a letter indicating that it was seeking to collect $22,439.32 on the mortgage on behalf of Ginnie Mae. (*Id.*). And once a month from January 2013 to January 2015, Nationstar sent Mr. McNamee a "Mortgage Loan Statement" that specified, among other things, an "Amount Due" and "Payment Due Date," and warned him not to delay payment lest Nationstar report his account to credit bureaus. (*Id.*).

As it continued to send the Mortgage Loan Statement letters to Mr. McNamee, Nationstar commenced an *in rem* foreclosure proceeding in the Champaign County Court of Common Pleas. (*Id.*). In October 2013, it obtained a final decree of foreclosure on the property. (*Id.*).

Nationstar then acquired force-placed insurance on the property, advancing $4,552.00 to pay for coverage. (*Id.*). The company began sending Mr. McNamee Forced-Placed Insurance letters telling him that the cost of the insurance would result in costs to him. (*Id.*)

2

As of the time Mr. McNamee filed his Motion for Class Certification, Nationstar has not yet sold the house. (*Id.*).

It is Mr. NcNamee's contention that the Mortgage Loan Statements and the Force-Placed Insurance communications were in the nature of debt collection, and that the "continuous and voluminous collection activity" against him after he vacated the house was in violation of the FDCPA and 11 U.S.C. §524(a). Specifically, he contends that the communications violated 15 U.S.C. §1692e(2)(A) "because they gave Plaintiff a false and misleading impression that his debt serviced by Nationstar remained collectible even though such debt was lawfully discharged in his U.S. Bankruptcy proceeding," violated 15 U.S.C. §1692e(5) and (8) "because they falsely represented that Nationstar could or would actually report 'late payments' and 'other defaults' about Plaintiff to the credit bureaus" and violated 11 U.S.C. §524(a) "because they constitute attempts to collect discharged debts and obligations." (ECF No. 48 at 13). He therefore wishes to represent "those individuals who, like him, vacated the surrendered residences and continued to receive the Mortgage Loan Statements, and Force-Placed Insurance communications thereafter." (*Id.* at 15).

### B. Procedural History

In 2013, Mr. McNamee filed suit against Nationstar in the United States Bankruptcy Court for the Southern District of Ohio, seeking an order of contempt and sanctions on behalf of himself and those similarly situated. Nationstar filed a Motion to Dismiss, which the Bankruptcy Court granted as to Mr. McNamee's request to represent a nationwide class but denied as to Mr. McNamee's request to represent a district-wide class.

Mr. McNamee then filed this FDCPA class action in October 2014, alleging claims under 15 U.S.C. §1692e, which generally proscribes false and misleading representations in debt

3

collection, and §1692f, which prohibits the use of unfair or unconscionable means to collect or attempt to collect debts. (ECF No. 1). Nationstar moved to dismiss Mr. McNamee's §1692f claims; this Court granted the motion on September 4, 2015. (ECF No. 20). Only the §1692e claims remain.

Plaintiffs now seek to certify the following classes as to the §1692e claims:

**Class 1 (Nationwide): as to the Issues of FDCPA Liability and Statutory Damages:** Any person who (i) who received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts on or after January 1, 2012 and on or before January 31, 2015; (ii) who filed and served a Statement of Intention therein pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, one or more Mortgage Loan Statements of the type exemplified by the attached Exemplar Exhibit A;

**CLASS 2 (Nationwide): as to the Issues of FDCPA Liability and Statutory Damages:** Any person who (i) received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts on or after January 1, 2012 and the present; (ii) who filed and served a Statement of Intention pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, at least one Force-Placed Insurance letter of the type exemplified by the attached Exemplar Exhibits B and C;

**CLASS 3 (S.D. Ohio): as to the Issue of Whether Nationstar Violated 11 U.S.C. §524(a):** Any person who (i) who received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts for the S.D. Ohio on or after January 1, 2012 and on or before January 31, 2015; (ii) who filed and served a Statement of Intention therein pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, one or more Mortgage Loan Statements of the type exemplified by the attached Exemplar Exhibit A;

**CLASS 4 (S.D. Ohio): as to the Issue of Whether Nationstar Violated 11 U.S.C. §524(a):** Any person who (i) received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts for the S.D. Ohio on or after January 1, 2012 and the present; (ii) who filed and served a Statement of Intention pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, at least one Force-Placed Insurance letter of the type exemplified by the attached Exemplar Exhibits B and C.

The issue of class certification is fully briefed and ready for review.

## II. STANDARD OF REVIEW

Federal class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. To obtain class certification, Plaintiffs must first demonstrate that the putative class meets the requirements of Rule 23(a) by showing that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). Plaintiffs must also show that the class action falls into at least one of the three categories set forth by Rule 23(b). *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Here, Mr. McNamee seeks class certification under Rule 23(b)(3), which provides that class certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

In addition to satisfying these rules, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (internal quotation omitted). In other words, the proposed class must be ascertainable.

Plaintiffs bear the burden of showing that these elements have been met. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). Before certifying a class action, the Court must

conduct a "rigorous analysis" to determine whether Plaintiffs have met the requirements of Rule 23. *Id.* In ruling on a motion for class certification, the Court may not consider the merits of Plaintiffs' claims, but may consider evidence outside the pleadings to determine whether Plaintiffs have met their burden. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). The Court has broad discretion in determining whether to certify a class. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

### III. ANALYSIS

Nationstar argues that the proposed classes are subject to several fatal defects, namely: (A) they are not ascertainable, (B) they are overly broad, (C) they do not satisfy the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure, (D) the putative class representative does not have claims typical to the classes, and (E) they do not satisfy the predominance and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure. Ultimately, this Court holds that none of these arguments defeat Mr. McNamee's Motion for Class Certification.

#### A. The Proposed Classes are Objectively Ascertainable

The concept of "ascertainability" as it pertains to class actions "goes to whether the class has been defined such that it encompasses an identifiable group." *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2010 WL 3397501, *5 (S.D. Ohio Aug. 25, 2010). For a class to be ascertainable, "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young*, 693 F.3d at 538. The Court need not deny class certification due to the need to review individual files. *Id.* at 540. Otherwise, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained." *Id.* (internal quotation omitted). Indeed, as the Sixth Circuit has held,

> It is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies.

*Id.*

Nationstar argues that the proposed class definitions create an unascertainable class because class membership requires an individualized, fact-specific inquiry: "to be a member of any of the four proposed classes, a person must have received an informational mortgage loan statement or lender-placed insurance letter after filing a Statement of Intent to surrender the property and 'vacating the real property.'" (ECF No. 51 at 17). But whether a class is *ascertainable* is a totally distinct inquiry from whether class membership requires an individualized inquiry. Ascertainability requires only the existence of objective criteria upon which class membership is based. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538–39 (6th Cir. 2012) (holding that "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria" (quoting MOORE'S FEDERAL PRACTICE § 23.21[3] (citations omitted)). To illustrate the difference between ascertainability and susceptibility to individualized inquiry, consider, for example, a class defined as "all people in the State of Ohio who currently have a pint of mint chocolate chip ice cream in the freezer." Such a class is certainly ascertainable: every Ohioan either is a class member, or she is not. The inquiry is an objective one. But—at least to this Court's knowledge—there is no centralized list of Ohioan mint chocolate chip ice cream enthusiasts that would obviate the need for an individualized inquiry to compile the class.

7

Here, Plaintiff's proposed class definition carries all the indicia of objective criteria: if an individual received specific letters from Defendant after filing a Statement of Intent and vacating the property, that individual is a class member. Whether an individual received a debt collection letter after filing a Statement of Intent and vacating the property is—like the mint chocolate chip inquiry—an inquiry based solely on objective criteria. Far from being hopelessly unascertainable, the contours of the class could not be clearer.

### B. The Proposed Classes are Not Overly Broad

A class is overly broad when it captures in its membership individuals who were not harmed. *Edwards v. McCormick*, 196 F.R.D. 487, 492 (S.D. Ohio 2000) (citing *Pagan v. Dubois*, 884 F.Supp. 25 (D.Mass. 1995)). Nationstar argues that the FDCPA classes are overly broad because the class definition makes no attempt to limit liability only to those plaintiffs who received "false, deceptive, or misleading" documents. It is true, as both parties concede, that "not every communication with a bankrupt debtor is prohibited after discharge." (ECF No. 48 at 14; ECF No. 51 at 23). But here, the class definition limits membership to only those individuals who receive communications in circumstances that could—if Plaintiffs' theory of liability is correct—render the documents false, deceptive or misleading. The proposed definition of the FDCPA class therefore does not capture individuals who were not potentially harmed.

As to the discharge injunction classes, Nationstar argues that they are overly broad because they capture those borrowers who vacate the property but nevertheless wish to retain the property by continuing to make payments to the lender. In Nationstar's view, those borrowers fall into the following discharge injunction exception in the Bankruptcy Code, thereby rendering lawful Defendant's post-discharge efforts to contact borrowers:

[A]n act by a creditor that is the holder of a secured claim, if-

> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j).

But the proposed class definition accounts for this statutory exception to the discharge injunction. After an individual physically vacates the property in question, it is no longer the "principal residence of the debtor" and cannot be subject to the exception. *Bibolotti v. Am. Home Mortg. Servicing, Inc.*, No. 4:11-CV-472, 2013 WL 2147949, at *8 (E.D. Tex. May 15, 2013). Every proposed class definition contemplates that the putative class member has already vacated the property. And unlike in *Sellers v. Rushmore Loan Management Services, LLC* the risk that a putative class member would fall into the § 524(j) exception is mitigated by the fact that Nationstar's own records reveal whether a property has been vacated. *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, No. 3:15-CV-1106-J-32PDB, 2017 WL 6344315, at *4 (M.D. Fla. Dec. 12, 2017), *reconsideration denied*, No. 3:15-CV-1106-J-32PDB, 2018 WL 340009 (M.D. Fla. Jan. 9, 2018). These records form a sufficient basis upon which to conclude that the property has been vacated and no longer is the principal residence of the debtor. No further individualized proof would be required, let alone a series of individualized mini-trials. The Court therefore concludes that the classes are not overly broad.

### C. Plaintiffs Meet the Commonality Requirement

To satisfy the commonality requirement of Rule 23(a)(2), Plaintiffs must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation omitted). At the class certification stage, Plaintiffs need not prove "that all or most class members were in fact injured to meet this requirement."

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015). To certify a class, "[t]here need be only one common question." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). This question, however, must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 852 (quoting *Dukes*, 564 U.S. at 350). As the Sixth Circuit explained, "named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505.

Plaintiffs claim that the two following common questions of law exist in this case:

> First: After receiving your Chapter 7 bankruptcy discharge, and after vacating your surrendered residence, did Nationstar send you at least one monthly Mortgage Loan Statement of type exemplified in Exemplar Exhibit A? If the answer is yes, then you are member of FDCPA Class 1 (and §524(a) Class 3 if your Bankruptcy case was filed in the S.D. Ohio). (ECF No. 48 at 21).
>
> Second: After receiving your bankruptcy discharge, and after vacating your surrendered residence, did Nationstar send you at least one of the Force-Placed Insurance communications exemplified by Exemplar Exhibits B and C? If the answer is yes, then you are member of Class 2 and (Class 4 if you filed your Chapter 7 bankruptcy in the S.D. Ohio).

(ECF No. 48 at 22).

Nationstar counters that "[t]he fatal flaw in Plaintiff's argument is that the loan statements and lender-placed insurance letters do not per se violate the FDCPA or the Discharge Injunction, even when the borrowers vacated their surrendered residences." (ECF No. 51 at 26). Specifically, Nationstar argues that some borrowers in the putative class may have voluntarily continued to make payments and that, as to those borrowers, the letters would not be false,

deceptive or misleading. (*Id.*). As a result, Nationstar believes that individualized questions as to the post-discharge relationship would have to be answered in order to adjudicate liability.

But here, the proposed class definitions explicitly include only those putative class members who both vacated the property *and* "filed and served a Statement of Intention . . . pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar." In other words, the post-discharge relationship is not adjudicated—as Nationstar seems to fear—simply by reference to whether a borrower physically vacated their surrendered residences. Instead, it is defined both by reference to a document that governs the post-discharge relationship and by the observations of Nationstar's own contractors as to the occupancy status of the house. Unlike in Thus, once the class is identified, no thorny questions as to the exact nature of the post-discharge relationship remain live. The only remaining questions are those that would advance the litigation by either establishing or relieving Nationstar of its alleged liability. The Court therefore finds that Plaintiffs satisfy the commonality requirement.

### D. Plaintiffs Meet the Typicality Requirement

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The typicality requirement:

> determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS, § 3–13, at 3–76 (3d ed. 1992). Put simply, to meet the typicality requirement, the class members' claims must be "fairly

encompassed by the named plaintiffs' claims." *Whirlpool*, 722 F.3d at 852. A claim meets this requirement if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. If a plaintiff, in proving his own claim, has "not necessarily . . . proved anybody else's claim," then his claim is not typical. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal quotations omitted). Finally, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Id.* (internal quotations omitted).

Here, Nationstar argues that Mr. McNamee's claim is distinct from the claims of other members of the putative class because he, in effect, halted the sale of the property by seeking a contempt order from the Bankruptcy Court. (ECF No. 51 at 12). The argument goes that "[b]ecause the foreclosure was halted, Plaintiff retained title, and informational statements and insurance letters continued to be generated and sent to Plaintiff. Had the statements been 'valueless' or 'unwanted,' Plaintiff easily could have contacted Nationstar to ask that Nationstar stop sending them. Although every informational statement indicated that Plaintiff could call Nationstar to request that Nationstar stop all communications and indicated on their face that they were not an attempt to collect a debt, Plaintiff never contacted Nationstar and never made any such request." (*Id.* (internal citations omitted)).

But, as discussed above, the claims of the named plaintiff in a class action need not be absolutely identical in every way to the claims of other plaintiffs; it need only be identical in the ways that matter. And here, Nationstar had sent Mr. McNamee the two varieties of debt collection letters that form the basis of the putative class action. The mere fact that he may have

12

been able to stop the communications by contacting Nationstar in no sense renders his claims atypical or his representation of the class inadequate.

Additionally, whether an individual may have been able to stop the communications from occurring does not necessarily bear on the statement's inherent capacity to mislead. The Sixth Circuit employs an objective, "least-sophisticated-consumer" test to ascertain whether a statement qualifies as misleading. *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 592 (6th Cir. 2009) (quoting *Kistner v. Law Offices of Michael P. Margelefsky LLC*, 518 F.3d 433, 438-39 (6th Cir. 2008)). Under this standard, a basic level of understanding is presumed, but naïve consumers are protected. *Id.* Nationstar has not marshaled any evidence that would lead this Court to conclude that an unsophisticated consumer would understand that the statements could be halted by contacting the company. The Court therefore concludes that even if Nationstar is correct that Mr. McNamee could have contacted the company to stop the letters, his claims are not atypical to the class.

### E. Plaintiffs Meet the Rule 23(b)(3) requirements of Predominance and Superiority

"When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b)." *Swigart*, 288 F.R.D. at 186. Here, Mr. McNamee seeks class certification under Rule 23(b)(3), "which permits certification when 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and when 'a class action is superior to other methods available for fairly and efficiently adjudicating the controversy.'" *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2017 WL 3977956, at *8 (S.D. Ohio Sept. 11, 2017) (quoting Fed. R. Civ. P. 23(b)(3)). These requirements are "designed to achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

13

without sacrificing procedural fairness or bringing about other undesirable results." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotation marks omitted)). Nationstar argues that the proposed class definitions meet neither the predominance requirement nor the superiority requirement. Each is addressed in turn below.

### 1. Predominance

To establish predominance, the "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *Whirlpool*, 722 F.3d at 860. Generally, in light of the interplay between the requirements of Rule 23(a) and (b), "a finding of commonality will likely satisfy a finding of predomination." *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2017 WL 3977956, at *8 (S.D. Ohio Sept. 11, 2017). Here, predominance is satisfied because the questions of liability are common to each putative class member who, after receiving bankruptcy discharge and vacating their surrendered residence, received either a Mortgage Loan Statement or a Force-Placed Insurance Communication.

### 2. Superiority

For a class to be certified, the class method must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) lists four factors to be considered in determining the superiority of proceeding as a class action compared to other methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. *Id.* All of these actors weigh in favor of class certification.

Nationstar argues that because attorneys' fees are recoverable in FDCPA actions, the barrier to bringing an individual action is low. (ECF No. 51 at 35). The reality, however, is that litigation is likely too costly—both in time and in money—for individual plaintiffs to vindicate their rights under the statute. Moreover, plaintiffs have no independent interest in individual litigation as they may prove class member claims through representative evidence. *Myers v. Marietta Mem'l Hosp.*, No. 2:15-CV-2956, 2017 WL 3977956, at *8 (S.D. Ohio Sept. 11, 2017) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016)). Finally, as discussed in Part III(C) *supra*, the Court does not anticipate that individualized inquiries will be necessary to ascertain class members' intentions with respect to their real property. For these reasons, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(b)(3).

## IV. CONCLUSION

The Court certifies this action as a class action, and designates Plaintiff as the representative of the four classes outlined below:

**Class 1 (Nationwide): as to the Issues of FDCPA Liability and Statutory Damages:** Any person who (i) who received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts on or after January 1, 2012 and on or before January 31, 2015; (ii) who filed and served a Statement of Intention therein pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, one or more Mortgage Loan Statements of the type exemplified by the attached Exemplar Exhibit A;

**CLASS 2 (Nationwide): as to the Issues of FDCPA Liability and Statutory Damages:** Any person who (i) received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts on or after January 1, 2012 and the present; (ii) who filed and served a Statement of Intention pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, at least one Force-Placed Insurance letter of the type exemplified by the attached Exemplar Exhibits B and C;

**CLASS 3 (S.D. Ohio): as to the Issue of Whether Nationstar Violated 11 U.S.C. §524(a):** Any person who (i) who received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts for the S.D. Ohio on or after January

1, 2012 and on or before January 31, 2015; (ii) who filed and served a Statement of Intention therein pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, one or more Mortgage Loan Statements of the type exemplified by the attached Exemplar Exhibit A;

**CLASS 4 (S.D. Ohio): as to the Issue of Whether Nationstar Violated 11 U.S.C. §524(a):** Any person who (i) received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts for the S.D. Ohio on or after January 1, 2012 and the present; (ii) who filed and served a Statement of Intention pursuant to 11 U.S.C. §521(a)(2)(A) stating an intention to surrender residential real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, at least one Force-Placed Insurance letter of the type exemplified by the attached Exemplar Exhibits B and C.

In addition, the Court designates the law firm of Nobile & Thompson Co., LPA as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. The Court directs Plaintiffs' counsel and counsel for Defendant to meet and confer, and to provide the Court with a proposed plan for providing notice to the potential class action members. The parties shall report to the Court within thirty (30) days of this Order with such proposed plan. If the parties are unable to agree on notice, the parties shall submit separate proposed notices by the same date.

**IT IS SO ORDERED.**

                                                          _s/ Algenon L. Marbley_
                                                     ALGENON L. MARBLEY
                                                     UNITED STATES DISTRICT JUDGE

**DATED: March 30, 2018**