**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CHARLES D. MCNAMEE,** : | |
| : | Case No. 14-1948 |
| **Plaintiffs,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Vascura |
| **NATIONSTAR MORTGAGE LLC,** : | |
| : | |
| **Defendant.** : | |

### **OPINION & ORDER**

### I.    INTRODUCTION

This matter is before the Court on Defendant Nationstar Mortgage, LLC's Motion for Decertification of the Class. (ECF No. 103). For the reasons set forth below, the Court **DENIES** Defendant's Motion**.**

### II.    BACKGROUND

This case concerns letters that Defendant Nationstar Mortgage, LLC ("Nationstar") sent to Plaintiff Charles D. McNamee ("Mr. McNamee") and others similarly situated. Mr. McNamee filed a complaint on October 17, 2014, on behalf of himself and a putative class, claiming Nationstar sent correspondence[1] in violation of the Fair Debt Collection Practices Act ("FDCPA"). (ECF No. 1). On March 30, 2018, this Court certified four subclasses. (ECF No. 62). Classes 1 and 2 were nationwide and concerned issues of FDCPA liability and statutory damages, while Classes 3 and 4 were confined to S.D. Ohio and concerned whether Nationstar had violated 11 U.S.C. § 524(a). (*Id.*). On May 22, 2019, this Court modified the class definition only of Classes

---

[1] Such correspondence included a Mortgage Statement and two Force-Placed Insurance letters.

- 1 -

1 and 2, excluding individuals whose debt Nationstar acquired before it went into default. (ECF No. 83 at 1-2).

On July 31, 2020, Nationstar filed its motion seeking decertification of all four subclasses, on the grounds that Class Counsel has failed to represent adequately the interests of the class. (ECF No. 103). Mr. McNamee filed a response, and Nationstar filed a reply thereto. (ECF Nos. 104; 107). Oral argument on the motion for decertification, as well as on the parties' cross-motions for summary judgment, took place on November 24, 2020. (ECF No. 113).

Although the parties' briefs intensely dispute the factual and procedural background relevant to Nationstar's motion, the basics are as follows. Nationstar provided the class list to Class Counsel on October 24, 2019. (ECF No. 103 at 8-9). Between that date and mid-February or mid-March, the parties communicated about two notice-related problems: (1) they engaged in discussions about revisions to the notice, specifically regarding a statutory cap issue raised by Nationstar, (ECF Nos. 104 at 4; 107 at 8); and (2) they communicated about providing social security numbers of class members to the class administrator, KCC, LLC ("KCC") that were needed to effectuate notice. (ECF No. 107 at 10). Nationstar provided the social security numbers to KCC on February 14, 2020. (*Id.* at 11). Finalized notice language, however, was not provided to KCC at that time. (*Id.* at 11-12). As a result, notice was not sent to class members. Apparently, it was not until Nationstar filed its motion for decertification that Class Counsel realized notice had not been sent.

After briefing on Nationstar's motion ended, KCC mailed notice to 33,493 class members on September 18, 2020. (ECF No. 111 at 1). Class members were required to opt out by mailing notification of their intent to do so to KCC, post-marked no later than November 2. (ECF No. 111 at 2). Through October 9, there were 2,163 returned undeliverable mailings, eight of which were

successfully re-mailed. (ECF No. 112 at 2). As of a November 11 exclusion report prepared by KCC, seventy-four class members timely excluded themselves, and five exclusions were untimely. (ECF No. 112 at 2).

### A. Defendant's Motion for Decertification

Nationstar's position is that decertification is proper based on the inadequacy of Class Counsel. (ECF No. 103 at 15). It argues that under Federal Rule of Civil Procedure 23(g)(4), Class Counsel must "fairly and adequately represent the interests of the class," but has failed to do so. (ECF No. 103 at 15). Nationstar advances two basic reasons in support of its motion. First, it contends that Class Counsel has not vigorously prosecuted this action due to its failures both to send notice to class members and to pursue vigorously discovery that could have provided evidence necessary to the plaintiffs' case. (ECF No. 103 at 15-20). Second, Nationstar contends that decertification would not prejudice the class. (ECF No. 103 at 21).

#### 1. Failure to Vigorously Prosecute this Action

Notably, at the time Nationstar filed its motion, Class Counsel had not yet sent notice to the class. Thus, Nationstar's arguments do not address the fact it has since been sent.

Nationstar argues that Class Counsel is inadequate because it failed to send notice to class members for approximately nine months. (ECF No. 103 at 16-17). According to Nationstar, sending notice to the class is strictly required, ensures that judgment will be binding on non-excluded class members, and is the plaintiff's responsibility. (ECF No. 103 at 16-17). Failure to do so "weighs in favor of decertification." (ECF No. 1 at 17). Such failure also raises a concern in this case, Nationstar argues, because a ruling on the merits[2] before notice is sent would allow class members to wait and see whether it would be in their interests to participate in the class, thus

---
[2] Nationstar is likely referring to the parties' cross-motions for summary judgment currently pending before the Court.

- 3 -

creating a risk of violation of the one-way intervention doctrine. (ECF No. 103 at 17-19). Thus, Nationstar concludes, both the class and Nationstar itself are "likely to be prejudiced in connection with the pending summary judgment motions by counsel's failure to notify the class." (ECF No. 103 at 19).

Nationstar's motion gives its account of why notice to the class was delayed.[3] According to Nationstar, it produced the final class list, along with all co-borrower names, to Class Counsel on October 24, 2019, (ECF No. 103 at 10-11). It alleges that Class Counsel then waited until late November to contact Nationstar about revisions to the notice. (ECF No. 103 at 11). Through December and January 2020, the parties discussed revisions to the notice regarding the FDCPA statutory damages cap. (ECF No. 103 at 11). In either January or February (it is unclear from Nationstar's retelling), they came to an agreement on the notice language. (ECF No. 103 at 11). On February 14, Nationstar provided full social security numbers for all class members to KCC. (ECF No. 103 at 11). By July 31, the date of Nationstar's motion, notice had not been sent. (ECF No. 103 at 11). Despite, by its own account, participating in discussions about revisions to the notice until as late as January or February and providing identifying information to KCC in mid-February, Nationstar characterizes the delay in notice spanning October 2019 to July 2020 as entirely Class Counsel's failure.

Nationstar also argues that Class Counsel is inadequate because it has not vigorously pursued necessary discovery. Specifically, Nationstar notes that Class Counsel (1) filed only one set of written discovery on class issues and one requesting net worth information; (2) did not name an expert and did not take the deposition of Nationstar's corporate representative identified in response to the first set of discovery; (3) failed to authenticate the Mortgage Statement and Force-

---

[3] The "true" story of why notice was delayed became a significant preoccupation of the parties in the course of briefing this motion.

- 4 -

Placed Insurance letters; and (4) failed to develop evidence "aside from Plaintiff's own self-serving testimony" that the correspondence would confuse the least sophisticated consumer. (ECF No 103 at 19-20). According to Nationstar, "Plaintiff has incurred avoidable risks that could prevent him and the class from prevailing in this case—either on summary judgment or at trial." (ECF No. 103 at 20).

As background to the above, Nationstar noted that on January 3, 2020, a joint scheduling order was entered setting an April 15 deadline for completion of discovery and a June 15 deadline to file dispositive motions. (ECF No. 103 at 12). Nationstar states that after April 15 and before June 15, Class Counsel asked Nationstar "for additional discovery in the form of a declaration or deposition of Nationstar's corporate representative. Evidently, counsel discovered . . . that he had never asked Nationstar to authenticate the documents on which Plaintiff's and the class's case relies." (ECF No. 103 at 12). While Nationstar does not say whether it granted that request,[4] it agreed to an extension for the filing of dispositive motions to July 30. (ECF No. 103 at 12-13).

2. Decertification Will Not Prejudice the Class

The second reason Nationstar gives in support of its motion is that the class will not be prejudiced if the Court grants decertification. On this front, it argues that no prejudice will result "from a statute-of-limitations perspective," because it has been tolled and any class member may file an individual action on a similar claim, provided they do so within the applicable statute of limitations. (ECF No. 103 at 21). Additionally, it argues that because this case involves only statutory damages under the FDCPA, which are capped, individual class members with actual damages could bring claims for both types of damages together. (ECF No. 103 at 21).

B. Plaintiff's Response in Opposition

---

[4] Presumably, Nationstar did not, because it asserts that "Plaintiff failed to authenticate the [Mortgage Statement and Force-Placed Insurance letters] on which his and the class's case rests . . . ." (ECF No. 103 at 19).

Mr. McNamee primarily dedicated his response to setting the record straight as to why the notice was delayed in this case. The Court will summarize his version of the story after presenting his response to Nationstar's argument.

### 1. Response to Argument

Class Counsel contends that it has vigorously pursued this action. (ECF No. 104 at 17). Class Counsel stated it has regained control of the notice process and would ensure that the Court suspend its ruling on the parties' summary judgment motions until after the notice process was complete. (ECF No. 104 at 17). It also contends that its discovery was sufficient in this case. (ECF No. 104 at 19). Generally, Class Counsel's position is that it "obtained either admissible information pertinent to the FDCPA and Discharge Injunction claims before the Court, or more importantly, dispositive concessions from Defendant as to key issues." (ECF No. 104 at 19). It gives specific examples in support: (1) Class Counsel's discovery efforts led Nationstar to "capitulate[] as to its 'bona fide error' defense." (ECF No. 104 at 19); (2) no depositions were required concerning Nationstar's financial condition, because "[t]hrough considerable effort, Class Counsel negotiated" a stipulation as to the statutory damages cap if FDCPA liability is found. (ECF No. 104 at 20); and (3) that the documents attached to Class Counsel's motion for summary judgment were all "authenticated and admissible to establish the propositions that Plaintiff argued." (ECF No. 104 at 20). Class Counsel did not address whether decertification would prejudice the class.

### 2. Account of Notice Delay

As to why notice was delayed, Class Counsel contends that Nationstar is largely to blame. In its view, the class list Nationstar produced on October 24, 2019 was voluminous. (ECF No. 104 at 2). Class Counsel characterizes it as "problematic" because the addresses for class members

were of the properties they had vacated. (*Id.* at 3). After reviewing the list, Class Counsel sent it to KCC on November 25. (*Id.*). That same day, Class Counsel emailed Nationstar regarding revisions to the notice addressing issues Nationstar previously had raised. (*Id.* at 4). On December 3, the parties conferred regarding finalization of the notice and its dissemination. (*Id.*).

KCC informed Class Counsel that it would be time- and cost-prohibitive to send notice using only the information in the class list as provided by Nationstar. (*Id.*). Class Counsel and KCC determined that either full social security numbers or loan applications of class members containing such numbers were needed to disseminate notice. (*Id.*). On December 4, Class Counsel informed Nationstar of such needs. (*Id.* at 5). Class Counsel also took the position that because notice was not yet disseminated, the parties could make revisions, and asked Nationstar to propose written language. (*Id.*). Nationstar sent to Class Counsel by email proposed notice language on December 13. (ECF Nos. 104 at 5; 104-6). In that same email, Nationstar requested for KCC's contact information to discuss "what they need and why they need it." (ECF No. 104-6). Class Counsel characterizes this as Nationstar deciding to deal with KCC directly rather than through Class Counsel. (ECF No. 104 at 5).

Class Counsel addressed the notice language proposed in an email on January 2, 2020, noting potential problems. (*Id.* at 6). On January 16, Nationstar proposed new notice language and noted that it had not yet contacted KCC. (*Id.*). Class Counsel states that it approved the finalized notice language that same day by separate email. (*Id.*).

On January 27, Nationstar emailed Class Counsel about having made contact with KCC. (*Id.* at 7). That same day, Class Counsel provided a copy of the notice to Nationstar to incorporate the January 16 notice language. (*Id.*). Class Counsel states that "[a]t this point, it became clear to

Class Counsel that Defendant's counsel had expressly insinuated themselves in the Rule 23(c) notice process . . . ." (*Id.*).

On February 13, Nationstar emailed Class Counsel stating that the social security numbers would be sent to KCC and attaching the revised draft notice, noting that Nationstar "had a couple questions, which [were] noted with comments." (ECF Nos. 104 at 8; 104-15). Class Counsel states that the changes had already been approved. (ECF No. 104 at 8). It appears Class Counsel saw no need to respond to Nationstar's notice-related questions.

On March 13, Nationstar emailed Class Counsel to confirm that social security numbers had been sent to KCC on February 14. (*Id.*). Class Counsel appears to have taken that email to mean that KCC had both the finalized notice language and the social security numbers, and was therefore prepared to send the notice to class members. (*Id.*). Class Counsel stated that as the July 31 dispositive motion deadline approached, it "had not been apprised by either KCC or Defendant's counsel that the . . . Notice had (or had not) been mailed." (*Id.* at 9). Class Counsel evidently expected them to follow up on the matter. (*Id.*).

On August 10, 2020, Class Counsel contacted KCC, which confirmed it received the social security numbers in February but was lacking a final version of the notice language. (*Id.* at 10). On August 12, 2020, Class Counsel sent the final notice language to KCC. (ECF No. 104 at 11).

### C. Defendant's Reply

Nationstar essentially reiterated the arguments for decertification set forth in its motion for decertification. (ECF No. 107 at 21-27). In its discussion of the delay in notice, Nationstar acknowledges that the delay totaled roughly six months after it provided social security numbers to KCC, but did not abandon its contention of a nine-month delay. (*Id.* at 18). Nonetheless, it notes the "undisputed fact that Plaintiff's counsel had *no contact* with KCC from at least February until

late July 2020 (and then only after being served with Nationstar's motion) . . . ." (*Id.* at 17). It emphasized Class Counsel at all times bore the responsibility to send notice, and that it had not insinuated itself into the notice process as Class Counsel suggests. (*Id.* at 22). Nationstar also argues that Class Counsel's inadequacy is shown whether one accepts as true Class Counsel's narrative or not. (*Id.*). Nationstar notes that from mid-February onwards, Class Counsel could have simply reached out to KCC directly to ascertain the status of the notice. Additionally, Nationstar gave its own detailed account of the relevant background to the notice process, which the Court need not recount in detail here. (*Id.* at 5-21).[5]

### III. STANDARD OF REVIEW

Class actions in federal court are governed by Rule 23 of the Federal Rules of Civil Procedure. For class certification to be proper, four prerequisites—numerosity, commonality, typicality, and fair and adequate representation—must be met. FED. R. CIV. P. 23(a)(1)-(4); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011). Additionally, plaintiffs must show that the class action fits one of the types set forth in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). This case is of the type described in Rule 23(b)(3), which allows certification if the above prerequisites are met, questions of law or fact common to class members predominate, and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). If a class is certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances," in accordance with the terms of Rule 23(c)(2)(B).

---

[5] In general, Nationstar does not contradict the timeline of events already recited, *supra*. Rather, it is primarily concerned with disputing Class Counsel's interpretation of such events.

Once a class is certified, however, "[a] district court 'retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.'" *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1090 (6th Cir. 2016) (quoting *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004)); *see also* FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Decertification "'is a drastic step, not to be taken lightly.'" *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 4459636, at *8 (N.D. Ohio July 21, 2015) (quoting NEWBERG ON CLASS ACTIONS § 7:37 at 190 (3rd ed. 1992)) (internal quotation marks omitted). Accordingly, "[a] district court 'retains significant discretion to make decertification and modification decisions and its decision is reviewed only for abuse of discretion.'" *Id.* (quoting NEWBERG, § 7:38 at 191) (citation omitted).

## IV. LAW & ANALYSIS

At issue in this case is whether decertification is proper on the grounds that Class Counsel failed to send prompt notice to class members and to pursue discovery vigorously.

A federal court that certifies a class generally must appoint class counsel. FED. R. CIV. P. 23(g)(1). In doing so, the court must consider the factors under Rule 23(g)(1)(A), and it "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[]" pursuant to Rule 23(g)(1)(B). Class counsel has a duty to "fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(4).

To determine the adequacy of class counsel's representation, courts have considered whether counsel is qualified, experienced, generally able to conduct the litigation, free of conflicts of interest, honest, loyal, and possessed of integrity. *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) ("When class counsel have demonstrated a

lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class.") (citations omitted); *Stepp v. Monsanto Research Corp.*, No. 3:91cv468, 2012 WL 604328, at *6 (S.D. Ohio Feb. 24, 2012) (examining cases on the adequacy of representation requirement) (citations omitted); *In re Am. Express Anti Steering Rules Antitrust Litig.*, Nos. 11-MD-2221, 13-CV-7355, 2015 WL 4645240, at *11-12 (E.D.N.Y. Aug. 4, 2015). Other considerations include whether counsel is able to prosecute the action competently, responsibly, and vigorously. *See, e.g.*, *Sheinberg v. Sorenson*, No. 00-6041 (JLL), 2007 WL 496872, at *3 (D.N.J. Feb. 8, 2007) (observing in the context of a motion for decertification involving failure to send class notice that the named plaintiffs and class counsel must show they "will competently, responsibly, and vigorously prosecute suit") (citations and internal quotation marks omitted).

Here, Nationstar does not argue that decertification is proper because the prerequisites under Rule 23(a)(1)-(4) are no longer met, nor does it argue that anything has changed with respect to the predominance and superiority considerations under Rule 23(b)(3). Its argument is focused on the question of whether Class Counsel has met its duty to represent adequately the interests of the class. *See* (ECF No. 103 at 15). Specifically, Nationstar contends that Class Counsel is inadequate because, by failing to send notice to class members and to pursue discovery, it has not vigorously prosecuted this suit.

Nationstar cited various cases, none of which is binding on this Court, granting decertification where class counsel failed to send proper or timely notice to the class or to conduct discovery. The cases show that one of the reasons courts have found class counsel inadequate is a failure to send timely or proper notice to class members. *See, e.g.*, *Sheinberg*, 2007 WL 496872 at *3 (characterizing counsel's failure to send class notice as "irresponsible"); *Dubin v. Miller*, 132 F.R.D. 269, 273 (D. Colo. 1990) (granting decertification where plaintiff did not move for court

approval to send notice to the class until after the original trial had been scheduled). They also show that courts have found class counsel inadequate where it has engaged in discovery in a deficient manner. *See, e.g.*, *Colby v. J.C. Penney, Inc.*, 128 F.R.D. 247, 248 (N.D. Ill. 1989) (describing class counsel's failure to conduct discovery for extended period of time); *Hardy v. Vought Corp.*, No. CA-3-75-1495-D, 1979 LEXIS 13324, at *3 (N.D. Tex. Apr. 2, 1979) (granting decertification where class counsel conducted minimal discovery and obstructed defendants' discovery).

In such cases, decertification was granted due to class counsel's conduct as to notice or discovery where the conduct involved serious failures, was part of a broader pattern of deficient prosecution of the action, or other factors demonstrating inadequacy existed. *See, e.g. Dillon v. Clackamas Cty.*, No. 3:14-cv-00820-YY, 2019 WL 6709545 (D. Or. August 6, 2019) (recommending decertification where notice was never approved by the court because class counsel submitted multiple versions and a document from a different case, it was unclear what notice was ultimately sent to the class, counsel had in another case failed to appear at trial, his co-counsel had withdrawn and the court had doubts about resources as a solo practitioner, and counsel faced health challenges); *Sheinberg*, 2007 WL 496872 (decertifying class where notice failures resulted in trial delays, counsel did not receive court documents because it was admitted *pro hac vice* and failed to arrange for local counsel to receive filings on its behalf, and the notice referenced a previously dismissed claim and failed to advise class members of potential liability for defendants' legal fees); *Colby*, 128 F.R.D. 247 (decertifying class representative where class counsel completely failed to engage in discovery during the first seven years of the case, eventually included only one set of requests for documents, failed to move to compel discovery of documents not produced, failed to review documents produced for a year, failed to meet filing deadline, and

made untimely motion for continuance); *Hardy v. Vought Corp.*, 1979 LEXIS 13324 (decertifying class where class counsel filed only 2 sets of interrogatories, obstructed defendant's discovery through long delays and was ordered twice to respond, delayed in moving for class certification, failed to respond to motions and did not file a response to the motion for decertification, filed few and inadequate briefs, and was in poor health).[6]

The case at bar is readily distinguishable from those Nationstar cites. Here, Class Counsel's conduct with respect to the notice was troubling, but it did not rise to the level of inadequate representation. Similarly, Class Counsel's conduct with respect to discovery does not demonstrate an inability to represent adequately the interests of the class.

### A.   Notice to Class Members

This case was certified under Rule 23(b)(3), and therefore notice to class members was required. FED. R. CIV. PRO. 23(c)(2)(B).

Nationstar's view is that Class Counsel had everything it needed to send the notice in October 2019 but simply failed to act between then and the time Nationstar filed its motion. According to Class Counsel, however, Nationstar "insinuated itself" into the notice process and misled Class Counsel to believe that it had assumed responsibility for ensuring KCC had both the information and notice language it needed.

The truth appears to lie somewhere in the middle. From the time Nationstar provided a class list in October 2019 until mid-February 2020, the delay in sending notice is largely accounted for by: (1) the parties' discussions about substantive revisions to the notice, an issue Nationstar

---

[6] *See also Dubin v. Miller*, 132 F.R.D. 269 (D. Colo. July 16, 1990) (decertifying class where "serious questions concerning the conduct of the litigation" existed because not all responsible parties were joined as defendants, counsel complied with an order to file a new complaint and motion for class certification only after an order threatening dismissal for failure to prosecute was issued and six had months passed, class counsel did not move for court approval to send notice until 18 days after the original trial date, and class counsel's response to a motion for decertification seventeen days before trial was to file twelve days later a motion to bifurcate the trial).

itself raised; and (2) the fact that KCC needed Nationstar to provide the class members' social security numbers. From mid-February or mid-March until late July, however, it is hard to see the delay in notice as attributable to anyone other than Class Counsel, who wrongly assumed that Nationstar had provided both the final notice language and the social security numbers to KCC.[7] As Nationstar incisively points out, nothing prevented Class Counsel from simply reaching out to KCC to check on the status of the Notice. Thus, for approximately five or six months, notice was delayed due to Class Counsel's error.

Nonetheless, notice to class members has not only been sent in this case, but the period for class members to opt out has passed. (ECF No. 113). Thus, the seriousness of Class Counsel's error as to notice has been mitigated. It appears that once Class Counsel realized its error, it promptly took the necessary steps to send notice to the class. Additionally, Class Counsel's participation in the notice process between October and February indicates that it previously had been adequately addressing notice-related issues. To date, neither party has pointed out errors in the notice. Nationstar's concern that summary judgment might be decided prior to completion of the notice process is not presented on the facts, because the notice process came to an end before an entry of judgment.[8] Class Counsel's error is not part of a broader pattern of deficient performance, nor are there other factors present to suggest Class Counsel is inadequate. In light of

---

[7] It appears that Class Counsel's mistaken belief may be attributable in part to a misreading of an email from Nationstar's counsel. On March 13, 2020, counsel for Nationstar emailed Class Counsel, stating: "We can also confirm that on 2/14 we provided the SSN information to KCC, so there should not be any issue remaining on that—at least, we have not heard anything from KCC since we sent the information a month ago." (ECF No. 104-16). Class counsel may have taken this to mean that KCC had both the finalized notice language and the social security numbers. It is clear enough that Nationstar's counsel intended to communicate that there were no remaining issues only as to the social security numbers. Even assuming, *arguendo*, the above statement carried some suggestion that KCC possessed the finalized notice too, it is problematic that Class Counsel took it for granted KCC was fully equipped and entirely ignored the notice process until Nationstar filed for decertification.

[8] At oral argument, Nationstar appeared to contend that Class Counsel's filing of a summary judgment motion before notice was given presents a due process issue. Previously, it had argued only that entry of summary judgment presented such an issue. Nationstar did not explain this change, nor did it cite any authority in support of that proposition.

Class Counsel's initial level of engagement, prompt corrective action, and the fact that the notice process has been effectuated, a finding of inadequate representation with respect to notice is not warranted at this stage.

### B. Discovery

The argument that Class Counsel's pursuit of discovery shows its inadequacy is similarly unconvincing. Nationstar argues that Class Counsel has failed to pursue vigorously discovery because it: (1) filed only one set of written discovery on class issues and one requesting net worth information; (2) did not name an expert and did not take the deposition of Nationstar's corporate representative; (3) failed to authenticate the Mortgage Statement and Force-Placed Insurance letters; and (4) failed to develop evidence "aside from Plaintiff's own self-serving testimony" that the correspondence would confuse the least sophisticated consumer. (ECF No. 103 at 19-20).

There does not appear to be cause for serious concern about Class Counsel's adequacy on this front. As discussed above, courts have granted decertification where class counsel failed to pursue discovery. In those cases, however, the discovery issues were both more serious and part of a broader pattern of deficient prosecution than what is presented here. *See Colby v. J.C. Penney, Inc.*, 128 F.R.D. 247 (N.D. Ill. 1989); *Hardy v. Vought Corp.*, No. CA-3-75-1495-D, 1979 LEXIS 13324 (N.D. Tex. Apr. 2, 1979).

The discovery conducted by Class Counsel appears to surpass that conducted in any case Nationstar cited. Moreover, the number of sets of written discovery alone does not necessarily mean Class Counsel neglected to obtain necessary information or documentation, nor does Nationstar argue why it should here. Class counsel responded by noting that its discovery efforts contributed to Nationstar's abandonment of its "bona fide error" defense and a stipulation regarding the statutory award under 15 U.S.C. § 1692k(a)(2)(B) if liability is found. (ECF No. 104

at 19-20). While Class Counsel's discovery efforts could not be described as prodigious, they are not obviously insufficient. As to Class Counsel's failure to name an expert or take the deposition of its representative, Nationstar offers no explanation for why an expert would be so important to the Plaintiffs' case that such failure indicates Class Counsel has not vigorously prosecuted this action.

With respect to authentication of the Mortgage Statement and Force-Placed Insurance letters, there is currently no reason to believe Class Counsel would be unable to authenticate them for purposes of trial. Under the Federal Rules of Evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). One method of authentication is the testimony of a witness with knowledge "that an item is what it is claimed to be." FED. R. EVID. 901(b)(1). Here, Nationstar gives no indication why Class Counsel could not call one or more witnesses to testify at trial that the Mortgage Statement and Force-Placed Insurance letters are what they are claimed to be.

Finally, Nationstar contends that Class Counsel failed to develop evidence, "aside from Plaintiff's own self-serving testimony," to prove the correspondence at issue would confuse the least sophisticated consumer. (ECF No. 103 at 20). To the extent this argument is directed at the parties' summary judgment motions before the Court, it is misplaced. To the extent it is properly directed at the issue of Class Counsel's adequacy, it is unpersuasive. Class counsel responded that no expert opinion is required to establish that the relevant correspondence would meet that test. (ECF No. 104 at 20-21). In its reply, Nationstar asserted that some proof must be marshaled on this issue, which would ordinarily be supplied by an expert. (ECF No. 107 at 26). Perhaps Nationstar's argument would carry more force if Class Counsel had no evidence whatsoever going to the issue. Even Mr. McNamee's "self-serving testimony," however, would appear to be some

relevant evidence, and Nationstar did not establish in its motion for decertification that such evidence could not serve to support a finding that the correspondence at issue would confuse the least sophisticated consumer. Instead, Nationstar asserted that Class Counsel "has incurred avoidable risks that could prevent him and the class from prevailing . . . at trial." (ECF No. 103 at 20). Even assuming *arguendo* that is true, it does not appear that such risks are so great as to lead to a finding that Class Counsel has proven itself inadequate.

In sum, any shortcomings in Class Counsel's conduct with respect to giving notice to class members and to discovery do not rise to the level of a failure to prosecute vigorously this action. Nor is there cause to believe Class Counsel is inadequate for other reasons. Thus, decertification of the class on the grounds of inadequacy of Class Counsel is not proper.

### C. Prejudice to Class

Given the Court's conclusion that decertification on the grounds that Class Counsel is inadequate is not proper, it makes no difference whether decertification would prejudice the class members. Accordingly, there is no need to address this part of Nationstar's argument.

### V. CONCLUSION

For the reasons discussed above, the Court does not conclude that Class Counsel is unable to represent adequately the interests of the class. Defendant's Motion for Decertification of the Class, (ECF No. 103), is therefore **DENIED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: December 7, 2020**