**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES D. MCNAMEE,** | : | |
| | : | **Case No. 2:14-CV-1948** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **NATIONSTAR MORTGAGE LLC,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on Cross-Motions for Summary Judgment – Plaintiff's Motion for Partial Summary Judgment (ECF No. 100) and Defendant's Motion for Summary Judgment (ECF No. 101). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion and **DENIES** Plaintiff's Motion.

## I.     BACKGROUND

### A.     Factual Background

In June 2009, Plaintiff Charles D. McNamee executed a promissory note and mortgage to finance the purchase of a home, located at 8641 Ross Drive, Mechanicsburg, Ohio (the "Property"). (ECF No. 100-2 at 1; ECF No. 100-3 at 3). In January 2010, Plaintiff lost his job and his family experienced significant medical expenditures. (ECF No. 100-1 ¶ 8). Plaintiff became delinquent on his mortgage debt, which was owed to the mortgage servicer, Bank of America, N.A.[1] (ECF No. 100-1 ¶¶ 7–8). Despite signing an Open-Ended Restoring Stability Mortgage in

---

[1] The Note was executed for $181,936.00 payable to The American Eagle Mortgage Company ("AEMC"), and the mortgage was executed in favor of AEMC. On or around June 10, 2009, AEMC endorsed the Note to Taylor, Bean & Whitaker Mortgage Company, who then endorsed the Note without Recourse to Bank of America, N.A. (ECF No. 100-1 ¶¶ 4–7). On or around August 21, 2012, Mortgage Electronic Registration Systems, as nominee for AEMC, executed a document showing an assignment of the Mortgage on the Property to Bank of America, N.A. (ECF No. 100-1 ¶ 19).

March 2011, Plaintiff and his family were unable to overcome their financial difficulties. (ECF No. 100-1 ¶ 9).

On May 29, 2012, Mr. McNamee and his wife jointly filed a voluntary Chapter 7 petition. (ECF No. 100-1 ¶ 11; *see also* ECF No. 100-5). At the time of the bankruptcy filing, Plaintiff also filed a Statement of Intention pursuant to 11 U.S.C. § 521(a)(2)(A) to inform Bank of America, N.A., of his intention to surrender the Property. (ECF No. 100-1 ¶¶ 12–13; ECF No. 100-6). By the end of June 2012, Plaintiff and his family had physically vacated the Property. (ECF No. 100-1 ¶ 15). Bank of America, N.A. was duly scheduled as a secured creditor, received notice of Plaintiff's bankruptcy case, and appeared via counsel in the matter. (ECF No. 100-1 ¶¶ 13, 17; ECF No. 100-7 at 3; ECF No. 100-8). Bank of America, N.A. secured relief from the automatic order of stay in the bankruptcy proceeding in the form of an agreed order dated August 30, 2012. (ECF No. 100-9).

On September 25, 2012, Plaintiff received his Chapter 7 discharge. (ECF No. 100-1 ¶ 21; ECF No. 100-12). Upon request from Bank of America, N.A., the Chapter 7 Trustee formally abandoned the bankruptcy estate's interest in the Property on October 3, 2012. (ECF No. 100-13). On or around December 17, 2012, Bank of America, N.A. assigned the Mortgage on the Property to Defendant Nationstar Mortgage, LLC ("Nationstar"). (ECF No. 100-1 ¶ 22; ECF No. 100-14).

Following Plaintiff's Chapter 7 discharge and the assignment of the Mortgage to Nationstar, Nationstar began sending Mr. McNamee mortgage statements and other correspondence.  (ECF No. 100-1 ¶¶ 23–37). On December 31, 2012, Nationstar sent Plaintiff a letter providing "formal notice" that Plaintiff was in default on his loan for the Property and that Nationstar was contacting him on behalf of Government National Mortgage Association. (ECF No. 100-14 at 1). The letter also explained that Nationstar "intend[ed] to enforce the provisions of

2

the Note" and that Plaintiff "must pay the full amount of this default" within 35 days of the letter, or Nationstar would accelerate the entire sum of the principal and interest due. (*Id.*). The letter continued: "If you received a bankruptcy discharge which included this debt, this notice is not intended and does not constitute an attempt to collect a debt against you personally[.]" (*Id.*). In bold typeface, the letter then reads "the amount of debt that we are seeking to collect is $22,439.32." (*Id.*). The letter continued to explain how a letter recipient could cure the default and that, if requested in writing, Nationstar would not contact the recipient by phone, at place of employment or in any other manner, except to send "statutorily and/or contractually required legal notice." (*Id.* at 2). Near the end of the letter, Plaintiff was "notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies" by the Defendant. (*Id.*). Upon receiving the letter, Plaintiff contacted Nationstar to notify them of his Chapter 7 discharge and made a verbal request for Nationstar to cease contact with him. (ECF No. 100-1 ¶¶ 25–26; ECF No. 100-15 at 2–3).

As early as January 2013, Plaintiff also received monthly Mortgage Loan Statements ("Statement(s)") from Nationstar. (ECF No. 100-1 ¶¶ 27–28; *see also* ECF Nos. 100-17–20). Directly beneath the text "Mortgage Loan Statement," the Statement reads "Detach coupon below and return with your payment. Retain top portion for your records." (ECF No. 100-16). The top section on the first page then lists a statement date, a payment due date, a loan number, phone numbers for the recipient, and the address of the property at issue. (*Id.*). The second section of the Statement is labeled "Explanation of Amounts Payable," and shows the principal and interest balance, the escrow amount, the unpaid monthly payments, unpaid late charges, the lender paid expenses, the amount due, and the interest rate. (*Id.*). The third and final section of the first page is labeled "Important Messages." In this section, the following language appears:

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a, or demand for payment from, any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for information purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.
>
> If you do not wish to receive this monthly information Statement in the future, or if you have any questions regarding this account, please call 877-782-7612.

(*Id.*). The reverse side of the Statement contains sections labeled "Important Payment Information," "Payment Options," "Notice to Customers Making Payments by Check," "Contact Information," and a form for "Change of Address or Telephone Number." (*Id.*). In October 2013, Plaintiff provided the Statements to his bankruptcy counsel. (ECF No. 100-1 ¶ 29).

On March 20, 2013, Nationstar filed a Complaint for Foreclosure *In Rem* in the Court of Common Pleas in Champaign County, Ohio to foreclose on the Property. (ECF No. 100-21). On October 8, 2013, Defendant obtained a "Final Judgment Entry *In Rem*" decreeing the foreclosure of the Property. (*Id.*). Defendant sold the property on March 9, 2018. (ECF No. 100-1 ¶ 35).

During the ongoing bankruptcy adversary proceeding and this litigation, Mr. McNamee received at least two letters informing him of "Force-Placement of Insurance" in September 2016 and October 2016. (ECF No. 100-1 ¶¶ 36–37). On September 7, 2016, Plaintiff received a letter from Nationstar informing him that Nationstar had no evidence that Mr. McNamee had hazard insurance on the property listed above and that Nationstar "bought insurance on [his] property and added the cost to [his] mortgage loan account." (ECF No. 100-23 at 1). The letter continues that "hazard insurance is required" on the property and indicated that Nationstar "intend[s] to maintain insurance" on the property by renewing or replacing the insurance it had purchased. (*Id.*). The letter then provided an estimate of the annual cost of insurance. It then informed the recipient that

she should immediately provide insurance information if the recipient decided to purchase such insurance herself. (*Id.*). The letter also included a "supplement" to the "Notice" on the first page of the document, with sections labeled "Purchasing Your Own Insurance," "Escrowing for Insurance," "The Insurance We Obtain," "Important Bankruptcy Information," and  "Fair Debt Collection Practices Act Disclosure." (*Id.* at 2–3). In the "Important Bankruptcy Information" section, the letter reads: "If you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this letter is for informational purposes only and is not an attempt to collect a debt." (*Id.* at 3).

Mr. McNamee also received a letter from Nationstar dated October 31, 2016, labeled "Notice of Placement of Insurance." (ECF No. 100-24 at 1). This letter informed the recipient of the renewal policy/certificate for hazard insurance on the property, including the annual premium for the policy. The letter then sets forth a section entitled "Important Facts to consider about Lender Placed Insurance." (*Id.*). The letter later indicates "This is an attempt to collect a debt, and any information obtained will be used for that purpose." (*Id.* at 2). The letter continues with the following language:

> IF THIS DEBT IS IN OR HAS BEEN DISCHARGED IN A BANKRTUPCY PROCEEDING, BE ADVISED THIS COMMUNICATIONN IS NOT AN ATTEMPT TO COLLECT THE DEBT AGAINST YOU. PLEASE NOTE, HOWEVER, WE RESERVE THE RIGHT TO EXERCISE THE LEGAL RIGHTS ONLY AGAINST THE PROPERTY SECURING THE ORIGINAL OBLIGATION.

(*Id.*). The letter than details the property insurance requirements before attaching a procured insurance policy for the Property, issued by Standard Guaranty Insurance Company. (*Id.* at 3–16).

### B.    Procedural Background

Plaintiff Charles M. McNamee brought a class action complaint against Defendant Nationstar on October 17, 2014, alleging violations of the Fair Debt Collection Practices Act

("FDCPA"). (ECF No. 1). The complaint sought class certification, a finding that Nationstar's conduct violated the FDCPA, and a civil judgment for statutory damages, costs, and attorney's fees. (ECF No. 1 at 11–12). Nationstar filed a Motion to Dismiss Count II of the Complaint as duplicative; Nationstar also filed its Answer on January 12, 2015. (ECF Nos. 2, 3). This Court dismissed Count II for failure to state a claim on September 4, 2015. (ECF No. 20).

On July 28, 2017, Plaintiff filed a motion for class certification and Defendant filed its response in opposition on October 2, 2017. (ECF Nos. 48, 51). Following a hearing on the motion for class certification, this Court granted the motion and certified four classes. (ECF No. 62). On May 22, 2019, this Court issued a supplemental order modifying the class definitions for Class 1 and Class 2; Classes 3 and 4 remained unchanged. (ECF No. 83). Plaintiff filed a Motion for Partial Summary Judgment on July 28, 2020. (ECF No. 100). On July 30, 2020, Defendant filed its Motion for Summary Judgment. (ECF No. 101). This Court held oral argument on the Motions for Summary Judgment on November 24, 2020. The Motions for Summary Judgment are now ripe for decision.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also*

*Anderson*, 477 U.S. at 251.

The Court's standard of review does not change when the parties file cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, a court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## III.    ANALYSIS

Both parties have brought motions for summary judgment in this matter. In his motion, Plaintiff seeks partial summary judgment on the following issues:

1. **Defendant Violated the Law as to Plaintiff:** Defendant's December 31, 2012 letter, the Mortgage Loan Statements, and the Force-Placed Insurance Letters were governed by and violated the FDCPA as to the Plaintiff;

   - **Plaintiff's Entitlement to Damages:** Plaintiff is entitled to actual damages, costs, and reasonable attorney fees to be determined in subsequent proceedings and is summarily entitled to statutory damages not to exceed $1,000.00;

   - **Defendant Violated the Law as to Class 1:** Defendant's Mortgage Loan Statements were governed by and violated the FDCPA as to Class 1;

   - **Class 1's Entitlement to Damages:** Each member of Class 1 is entitled to actual damages, costs, and reasonable attorney fees to be determined in subsequent proceedings and is summarily entitled to share *pro rata* statutory damages of $500,000.00;

   - **Defendant Violated the Law as to Class 2:** Defendant's Force-Placed Insurance Letters were governed by and violated the FDCPA as to Class 2;

   - **Class 2's Entitlement to Damages:** Each member of Class 2 is entitled to actual damages, costs, and reasonable attorney fees to be determined in subsequent proceedings and is summarily entitled to share *pro rata*

statutory damages of $500,000.00;

- **Discharge Injunction Issues**: Plaintiff sought specific findings and conclusions related to the discharge injunction.

(ECF No. 100). Defendant Nationstar also moved for summary judgment on the following grounds: Defendant argues that Plaintiff is precluded from bringing his claims under the FDCPA because he elected to file a contempt proceeding under the Bankruptcy Code, that any FDCPA claim pertaining to the December 31, 2012 letter is time-barred, and that Plaintiff's claims under the FDCPA fail because the Mortgage Loan Statements and Force-Placed Insurance Letters were not attempts to collect a debt and because none of the communications was deceptive, confusing, or abusive. (ECF No. 102). This Court will address the potential grounds for recovery in turn.

### A.    Applicable Statutory Scheme

Plaintiff seeks relief under the provisions of the FDCPA. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Sixth Circuit has adopted the "least sophisticated consumer test" to analyze claims under the FDCPA. *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611–12 (6th Cir. 2009) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 332–33 (6th Cir. 2008)). This standard aims to protect "the gullible as well as the shrewd" while still preventing "liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Hartman*, 569 F.3d at 611–12 (quoting *Barany-Snyder*, 539 F.3d at 332–33). The FDCPA is a strict liability statute, so a plaintiff need not prove knowledge or intent, nor must a plaintiff show actual damages. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 448–49 (6th Cir. 2014).

To show a violation of the FDCPA under 15 U.S.C. § 1692e, a plaintiff must satisfy the following elements: (1) he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3); (2) the

debt arose "out of transactions which are 'primarily for personal, family or household purposes'";

(3) the defendant meets the FDCPA definition of a "debt collector";[2] and (4) the defendant violated

the prohibitions set forth in 15 U.S.C. § 1692e. *See Bauman v. Bank of America, N.A.*, 808 F.3d

1097, 1100 (6th Cir. 2015) (quoting *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326

(6th Cir. 2012)). Plaintiff contends that the first three elements are not in dispute at this stage of

the proceeding (ECF No. 100 at 26), and Defendant's pleadings primarily address procedural

barriers to Plaintiff's claims and whether the Plaintiff can allege a violation of 15 U.S.C. § 1692e.

This Court finds that Mr. McNamee has sufficiently alleged that he is a "consumer," that the debt

arose for personal, family, or household purposes, and that Nationstar is a "debt collector" under

the FDCPA. (ECF No. 100 at 26–30). Accordingly, the contested conduct falls within the scope

of the FDCPA and the core question remaining is whether either party is entitled to summary

judgment on the issue of whether a violation of 15 U.S.C. § 1692e has occurred.

Section 1692e of the FDCPA prohibits debt collectors from making "false, deceptive, or

misleading communications in connection with the collection of any debt." 15 U.S.C. § 1692e.

This provision provides a non-exhaustive list of violations, including prohibiting a false

representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

To violate Section 1692e, a statement must be "materially false or misleading, that is, the statement

must be technically false, and one which would tend to mislead or confuse the reasonable

unsophisticated consumer." *Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-698, 2014

WL 340414, at *6 (S.D. Ohio Jan. 30, 2014). To fall within the ambit of the FDCPA, a

---

[2] Whether the correspondence in this case is an attempt to collect a debt is not determinative of whether Nationstar is
a "debt collector" under the FDCPA. The FDCPA identifies a "debt collector" as someone who "regularly collects
or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §
1692a(6)  The Sixth Circuit has instructed that "debt collector" status is tied "not to what the defendant specifically
did in a given case, but to what the defendant generally does." *Bates v. Green Farms Condo. Ass'n*, 957 F.3d 470,
480–81 (6th Cir. 2020).

communication regarding debt collection must also have the "animating purpose" of inducing payment by the debtor. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011).

Before determining whether summary judgment on the 15 U.S.C. § 1692e claims is proper for either party, this Court must first address a preliminary issue raised in Defendant's Motion for Summary Judgment: whether Plaintiff is precluded from bringing claims under the FDCPA.

### B. Preclusive Effect of Contempt Proceedings under the Bankruptcy Code

In support of its Motion for Summary Judgment, Defendant Nationstar argues that Plaintiff is precluded from bringing claims under the FDCPA because he has already chosen to file a contempt proceeding under the Bankruptcy Code. (ECF No. 102 at 15). Nationstar insists that a contempt proceeding under the Bankruptcy Code is the sole remedy for any violations of the discharge injunction. (ECF No. 102 at 15). Plaintiff counters that the Bankruptcy Code does not repeal the FDCPA and that Defendant may be subject to liability under both the FDCPA before this Court and under 11 U.S.C. § 524(a)(2) before the Bankruptcy Court. (ECF No. 100 at 32–33; ECF No. 106 at 4–5).

The Sixth Circuit has not yet weighed in on whether FDCPA claims are precluded or otherwise superseded by the availability of contempt proceedings under the Bankruptcy Code and a circuit split has arisen among the courts of appeal to consider this question. Repeals by implication are "not favored," but an implied repeal may be found where provisions in two statutes are in "irreconcilable conflict." *See Branch v. Smith*, 528 U.S. 254, 273 (2003); *see also Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936) ("Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."). An implied repeal may also be found where "the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Radzanower v. Touche Ross & Co.*, 426

11

U.S. 148, 154 (1976). Additionally, "the intention of the Legislature to repeal must be clear and manifest" when there has been an alleged implied repeal. *Id.* The majority of appellate courts have found that FDCPA claims following a discharge and contempt proceedings in Bankruptcy Court are not mutually exclusive mechanisms for relief.

The Seventh Circuit found no implicit repeal of the FDCPA because "overlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both" and that "[i]t is easy to enforce both statutes, and any debt collector can comply with both simultaneously." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 731, 733 (7th Cir. 2004). In *Randolph*, the Seventh Circuit was confronted with alleged conduct that could violate both the FDCPA and Section 362 of the Bankruptcy Code, which "tracks that for other proceedings in the nature of contempt of court." *Id.* at 731. The Seventh Circuit also noted that the FDCPA specifically addresses matters such as class actions, maximum recovery, and attorneys' fees, in a way that the allegedly conflicting bankruptcy provision did not. *Id.* It found that only allowing the Bankruptcy Code to apply would "eliminate all control of negligent falsehoods," because of the varying scienter requirements between the FDCPA and the Bankruptcy Code. *Id.* at 732. The Seventh Circuit determined that allowing remedies for negligent falsehoods "would not contradict any portion of the Bankruptcy Code, which therefore cannot be deemed to have repealed or curtailed § 1692e(2)(A) by implication." *Id.* at 732–33. The overlapping remedies under the Bankruptcy Code and the FDCPA were thus allowed to coexist.

At least two other circuits have followed the lead of the Seventh Circuit in *Randolph*. In *Garfield v. Ocwen Loan Servicing, LLC*, 811 F.3d 86 (2d Cir. 2016), the Second Circuit was confronted with a district court opinion that held that Bankruptcy Code was the exclusive remedy as "the appropriate means to redress conduct that violates the discharge injunction is a motion for

contempt filed in the bankruptcy court under 11 U.S.C. §105(a)." 811 F.3d at 89 n.4. Relying on the analysis of the *Randolph* decision, the Second Circuit held that none of the Plaintiff's individual FDCPA claims regarding post-discharge conduct, including under Section 1692e, conflicted with the discharge injunction under the Bankruptcy Code. *Id.* at 93. The Third Circuit has likewise found that where "FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims." *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274 (3d Cir. 2013). In finding no categorical preclusion, the Third Circuit characterized the Supreme Court as "reluctant to limit the FDCPA because other, preexisting rules and remedies may also apply to the conduct alleged to violate the Act." *Id.* at 276.

The Ninth Circuit is the lone appellate court to find these mechanisms to be mutually exclusive, and its decision precedes those of other circuits to the contrary. In *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), the Ninth Circuit found that the plaintiff's FDCPA claim was precluded because "[t]he Bankruptcy Code provides its own remedy" for violations of a discharge injunction: civil contempt proceedings. 276 F.3d at 510. The *Walls* court explained that "permit[ting] a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door-a private right of action." *Id.* In *Walls*, however, the plaintiff did not initiate contempt proceedings in the bankruptcy court while also pursuing an FDCPA claim. Instead, plaintiff was attempting to pursue both matters in a single action in the federal district court, arguing that she could assert an implied right of action for contempt under the Bankruptcy Code. *Id.* at 510. The Ninth Circuit then found the plaintiff's claim precluded because the same conduct served as the basis for her claim under the Bankruptcy Code as under

the FDCPA. *Id.* Absent from the Ninth Circuit's discussion was whether a debt collector could actually comport themselves with the Bankruptcy Code and the FDCPA simultaneously.

Defendant also asserts that the Supreme Court overruled the Eleventh Circuit's finding that a "debt collector could be liable under the FDCPA for filing a proof of claim on a time-barred debt." (ECF No. 102 at 18). While the Supreme Court in *Midland Funding, LLC v. Johnson*, 137 S.Ct. 1407 (2017), did find that a claim could not be brought under the FDCPA where debt collectors had commenced civil suits to collect debts that were time-barred, the Supreme Court did not reach the question of whether the FDCPA and the Bankruptcy Code were mutually exclusive remedies in every instance where FDCPA claims implicated bankruptcy issues. 137 S.Ct. at 1411. The Court did note that the FDCPA and the Bankruptcy Code "have different purposes and structural features." *Id.* at 1414. In *Midland Funding*, the Court ultimately reached a narrow holding that the alleged conduct was not "unfair" or "unconscionable" within the meaning of the FDCPA. *Id.* at 1415. Importantly, the Court did not hold that the Bankruptcy Code wholly displaces the FDCPA as a mechanism for consumer relief. The dissent also noted that the majority opinion favorably relied on its earlier decision, *Kokoskza v. Belford*, in its analysis, a decision in which the Supreme Court noted that the "provisions and the purposes" of the Bankruptcy Code and the FDCPA were intended to "coexist." *Id.* at 1419 (Sotomayor, J., dissenting) (quoting *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974)). Accordingly, the decision in *Midland Funding* does not resolve the circuit split or provide support for one approach over the other.

Because a defendant can comply with both the FDCPA and the Bankruptcy Code, this Court finds the rationale set forth in *Randolph* to be more compelling. Both the FDCPA and the Bankruptcy Code remain available to a plaintiff who has received a discharge in a bankruptcy proceeding for post-discharge conduct that she alleges violates the FDCPA. This Court notes that

14

it joins other district and bankruptcy courts within this circuit who have addressed this issue in rejecting *Walls*. *See, e.g.*, *Davis v. Weinstein & Riley, P.S.*, No. 5:12-cv-2489, 2013 WL 5428740, at *4 (N.D. Ohio Sept. 26, 2013) (collecting cases). The court in *Davis* adopted the rationale in *Randolph* and found that the Bankruptcy Code did not preclude a claim under the FDCPA. *Id.* An "overlap" between the remedies available to a plaintiff, resulting from differences in the Bankruptcy Code and the FDCPA, does not rise to the level of "irreconcilable conflict" and thus, the FDCPA has not been repealed by implication. *See, e.g.*, *Garfield*, 811 F.3d at 91.

While it may be that certain sections of the FDCPA have been repealed by the Bankruptcy Code, there is no implied repeal as to Section 1692e's prohibition on the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Simply because one's attempt to collect a debt may violate both the Bankruptcy Code and the FDCPA does not create a conflict between the statutes. *See id.* at 93. This is not like the situation confronted by the Third Circuit in *Simon*, where an entity was presented with two conflicting choices: it could send a letter with a notice and violate the Bankruptcy Code or send a letter without a notice and violate the FDCPA. *Simon*, 732 F.3d at 279–80. As a result, the *Simon* court did find that the Bankruptcy Code precluded an FDCPA claim under Section 1692e(11) to be precluded. In *Davis*, the district court also specifically determined that "an FDCPA claim can lie for alleged violation of a discharge injunction" and support for the opposing proposition was "scant." *Davis*, 2013 WL 5428740, at *5. Where a plaintiff chooses to bring a cause of action for liability under the FDCPA and does not seek simultaneously to hold Defendants in contempt for violation of a bankruptcy discharge order *in the same proceeding*, she is not barred from doing so. *See, e.g.*, *Evans v. Midland Funding, LLC*, 574 F. Supp. 2d 808, 817 (S.D. Ohio 2008) (finding Bankruptcy Code does not preclude a plaintiff who seeks to establish only FDCPA liability and citing cases

for the proposition that Bankruptcy Code is not the "exclusive remedy" for conduct may violate both the FDCPA and a discharge order). Accordingly, this Court finds that the Plaintiff's suit is not precluded under the FDCPA merely because he has also chosen to bring a contempt proceeding under the Bankruptcy Code.

## C. December 31, 2012 Letter

Both parties have moved for summary judgment regarding FDCPA liability for the December 31, 2012 letter (the "Letter") disseminated by Defendant. Plaintiff argues that the Letter's contents "overwhelmingly establish that the [L]etter's animating purpose was to induce Plaintiff to make payment" on a mortgage that had been discharged and that the Letter therefore violates the FDCPA. (ECF No. 100 at 36). In Response, Nationstar argues that any liability for the Letter fails as a matter of law because the Letter is time-barred. (ECF No. 105 at 22). Plaintiff argued in a Reply that the Letter may be properly considered by this Court under the doctrines of equitable tolling and relation back. (ECF No. 110 at 13).

Under 15 U.S.C. § 1692k(d), a litigant has one year from the date on which an FDCPA violation occurs to bring suit in federal court. Nationstar argues that Plaintiff filed this action ten months after the statute of limitations ran as to the Letter, thus any claim regarding the Letter is time-barred. (ECF No. 105 at 22). Nationstar also contends that equitable tolling cannot apply because Plaintiff was represented by an attorney during the period in which he failed to make this FDCPA claim regarding the Letter. (*Id.*). In response, Plaintiff raises two arguments. First, he argues that he filed actions with the Bankruptcy Court within the statute of limitations, and because Defendant's motion to consolidate the Discharge Injunction case with the case *sub judice* was granted, the relation back doctrine cures any untimeliness in the FDCPA suit regarding the Letter. (ECF No. 110 at 15). Second, Plaintiff argues that equitable tolling should extend the statute of

16

limitations in this case. (ECF No. 110 at 15–16).

The statute of limitations is an affirmative defense, and the burden rests first on the defendant to show that the statute of limitations has run; if the defendant meets that requirement, the plaintiff must then establish an exception to the statute of limitations. *See Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). Defendant Nationstar has sufficiently established that the December 31, 2012 Letter falls outside the one-year statute of limitations, as the complaint in this case was filed on October 17, 2014. The burden thus shifts to Plaintiff to establish that an exception should apply, and Plaintiff has failed to meet his burden here.

Plaintiff first argues that the statute of limitations should not bar a claim arising from the Letter because of the application of the relation back doctrine. Plaintiff details a history of litigation against Nationstar regarding the Letter, beginning with the filing of the Discharge Injunction case in the Bankruptcy Court on November 27, 2013, prior to the running of the FDCPA's one-year statute of limitations. (ECF No. 110 at 14). Plaintiff notes that the Defendant successfully sought consolidation of the Discharge Injunction with this case on April 2, 2015. (ECF No. 110 at 15). Plaintiff argues that Defendant was "made aware of the Letter during the litigation commenced on November 27, 2013," and that Defendant should not be entitled to the protection of the statute of limitations because the November 2013 litigation and this litigation both deal, in part, with the Letter. In the alternative, Plaintiff insists that the doctrine of equitable tolling should be applied to find that the statute of limitations had not yet run on any claim involving the Letter at the time he filed his litigation in October 2014. (ECF No. 110 at 16). In support of this argument, Mr. McNamee explains that Defendant has known of this Letter since the filing of the Discharge Injunction and that he has been "pursuing his rights diligently since that original filing." (ECF No. 110 at 16).

"Relation back" arises from Federal Rule of Civil Procedure 15(c)(1)(B), which instructs that an amendment to a pleading relates back to the date of an original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." This rule is grounded in the notion that "once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 516 (7th Cir. 2007) (quoting *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999)). A court considering whether relation back is proper under Rule 15(c)(1)(B) must consider "whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *Zundel v. Holder*, 687 F.3d 271, 283 (6th Cir. 2012).

The plain text of Rule 15(c) defeats Plaintiff's argument. Rule 15(c) allows relation back only for an "amendment to a pleading," not a newly-filed complaint in a separate action. The consolidation of the two actions in this case does not convert the later-filed complaint into an amended complaint, and Plaintiff never filed any amended complaint seeking to tie the two complaints together post-consolidation. Plaintiff has also failed to produce any relevant case law supporting the application of Rule 15(c) in this procedural context. To the contrary, the Sixth Circuit has found that where plaintiffs failed to amend their complaint, but rather filed a new, separate lawsuit, the district court did not commit error in finding that the relation back under Rule 15(c) was inapplicable. *State Bank of Coloma v. Nat'l Flood Ins. Program*, 851 F.2d 817, 820 (6th Cir. 1988) (noting that lower court applied "the Federal Rules of Civil Procedure as written"); *see also O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006) (finding no relation back where

a litigant chose to file a new second complaint, rather than amending an earlier complaint in a separate action); *Morgan Distrib. Co., Inc., v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989) (observing that Rule 15's "plain language makes clear that it applies not to the filing of a new complaint, but to the filing of an amendment stating a claim which arose 'out of the conduct set forth in the original pleading'") (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). Plaintiff's FDCPA claim regarding the Letter is thus not excused from the statute of limitations under Rule 15(c)'s "relation back" principle for amendments to complaints.

The doctrine of equitable tolling may also toll of the statute of limitations when certain conditions are satisfied. At the outset, it must be recognized that the Supreme Court has yet to "decide whether the text of 15 U.S.C. § 1692k(d) permits the application of equitable doctrines," *Rotkiske v. Klemm*, 140 S.Ct. 355, 361 n.3 (2019), and the Sixth Circuit has also declined to answer this question thus far, *see Fillinger v. Lener Sampson & Rothfuss*, 624 F. App'x 338, 340 (6th Cir. 2015) (citing *Ruth v. Unifund*, 604 F.3d 908, 914 (6th Cir. 2010)). The doctrine of equitable tolling "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Baden–Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007) (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). The "equitable tolling doctrine is read into every federal statute." *Id.* (citing *United States v. $57,960.00 in U.S. Currency*, 58 F. Supp. 2d 660, 664 (D.S.C.1999)). A plaintiff may be entitled to equitable tolling only if she shows "(1) that [s]he has been pursuing [her] rights diligently; and (2) that some extraordinary circumstance stood in [her] way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (establishing that plaintiff bears the burden of demonstrate entitlement to equitably toll the statute of limitations). The decision to invoke equitable tolling in a particular

case, therefore, lies solely within the discretion of the trial court. *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 846 (S.D. Ohio 2013) (citing *Baden-Winterwood*, 484 F. Supp. 2d at 826). It is also well-established that equitable tolling should be granted only "sparingly." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

While Plaintiff has been diligently pursuing his rights since his original filing in the Bankruptcy Court, he has not met his burden of demonstrating that an extraordinary circumstance stood in his way and prevented timely filing of the FDCPA action. Typically, courts have found equitable tolling appropriate when a factor beyond the plaintiff's control has prevented him from filing his action within the statute of limitations. *See Graham-Humphreys*, 209 F.3d at 560–61 ("Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."); *see also Johnson v. U.S. Postal Serv.*, 64 F.3d 233, 238 (6th Cir. 1995) (finding that "garden variety neglect" resulting in a failure to meet filing deadline cannot be excused by equitable tolling). In his filing, Plaintiff properly sets forth the standard for equitable tolling, but makes no arguments that any extraordinary circumstance prevented his timely filing of the FDCPA claim. (ECF No. 110 at 15–16). At oral argument, the Plaintiff conceded that he had not met this requirement for equitable tolling to apply. As it remains the Plaintiff's burden to establish his entitlement to equitable tolling, and Plaintiff has set forth no reasons to suggest he has met the second condition required for this Court to equitably toll the statute of limitations, this Court finds that equitable tolling does not apply here.

### D.  Mortgage Loan Statements

Both parties have moved for summary judgment on the issue of whether the Mortgage

Loan Statements ("Statements") violate the FDCPA. Defendant argues first that the Statements were not an attempt to collect a debt, and therefore do not fall under the ambit of the FDCPA. (ECF No. 102 at 27). The Defendant also argues that, if the Statements can be viewed as an attempt to collect a debt, that the Statements are not false or misleading such that FDCPA liability can be found. (ECF No. 102 at 34). The Plaintiff also moves for summary judgment related to the Statements, both individually and as to Class 1, and argues that the Statements were governed by and violate the FDCPA. (ECF No. 100 at 40–43).

The question of whether a given communication is sent in connection with the collection of a debt, so as to fall under Section 1692a of the FDCPA, is a question of fact. The parties here dispute whether the Statements were sent in connection with an attempt to collect a debt. Defendant Nationstar argues that the inclusion of two disclaimers on the Statements remove these documents from the purview of the FDCPA. (ECF No. 102 at 27–28). Defendant cites *Helman v. Bank of America*, 685 F. App'x 723 (11th Cir. 2017), in support of its argument, claiming that the Eleventh Circuit considered an identical mortgage statement and found that the presence of the informational disclaimer language meant that it was not an attempt to collect a debt. (*See, e.g.*, ECF No. 102 at 28). In response, Plaintiff argues that "the disclaimer falls under the weight of the numerous conflicting and overwhelming debt-repayment messages in the document themselves," such that any informational animating purpose that could be gleaned from the disclaimer is "overshadowed" by the other messages in the document. (ECF No. 106 at 8).

The Sixth Circuit employs the "animating purpose" test, which inquires whether the "animating purpose of the communication [is] to induce payment from the debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). The animating purpose of communication is a question of fact "generally committed to the discretion of the jurors, not the court." *Estep v.*

21

*Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir.2014) (citing *Grden*, 643 F.3d at 173). Only where "a reasonable jury could not find that an animating purpose of the statements was to induce payment" should a court grant summary judgment. *Grden*, 643 F.3d at 173. Plaintiff has advocated for using the factors set forth in *McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 370–71 (E.D. Mich. 2011), to analyze whether the animating purpose of the Statements is for debt collection or something else. Some courts in the Sixth Circuit have followed *McDermott* and, in an unpublished opinion, the Sixth Circuit has used this test at least once, *see Goodson v. Bank of America, N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015). In *Goodson*, the Sixth Circuit applied the following factors from *McDermott* to the "language and structure" of the communication at issue to determine the animating purpose of the communication:

> (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

*Goodson*, 600 F. App'x at 431 (quoting *McDermott*, 735 F. Supp. 2d at 370–71).[3]

Defendant asserts that the Eleventh Circuit has ruled on "almost identical disclaimer language" and found that the statement at issue was not an attempt to collect a debt under the FDCPA in *Helman v. Bank of America*, 685 F. App'x 723 (11th Cir. 2017). The *Helman* decision differs from the situation here in several fundamental aspects. First, the Eleventh Circuit's holding rested primarily on the fact that Bank of America was the originator of the loans, and so it could not be considered a "debt collector" within the meaning of the FDCPA. 685 F. App'x at 726.

---

[3] Plaintiff analyzes the different factor at ECF No. 106 at 9–10. In it Reply, Defendant does not address whether or not this test is appropriate, but notes that in *McDermott*, the court dismissed the Plaintiff's FDCPA claims because the plaintiff knew that he did not owe the debt in question, which Defendant submits would settle the matter under the "least sophisticated consumer" test. (ECF No. 109 at 8).

Second, and most importantly here, because Bank of America was not a "debt collector" under the FDCPA, the Eleventh Circuit did not even address the "almost identical" disclaimer language under the FDCPA, as suggested by Defendant. *See id.* Instead, the Eleventh Circuit analyzed whether the statements violated the Florida Consumer Collection Practices Act (or the "FCCPA"). *Id.* at 727–29. The Eleventh Circuit's analysis of the FCCPA has no bearing here. Finally, the disclaimer at issue in *Helman* differs from the disclaimer in the case *sub judice* because the *Helman* disclaimer explicitly informs the recipient that the company's records indicated that the recipient had received a bankruptcy discharge. *Id.* at 728. The disclaimer further explains the impact of the specific recipient's discharge as follows:

> Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone to collect this discharged debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan documents are not met.

*Id.* The disclaimer in *Helman* informed the recipient that the company was aware of the recipient's bankruptcy charge and explained in plain language the effect of the discharge. This language is not "almost identical" to the disclaimer in the Statements sent by Nationstar. The Eleventh Circuit's decision in *Helman* thus provides little helpful insight here.

On their face, the Statements could reasonably be viewed as sending conflicting messages to a consumer, such that this Court cannot hold as a matter of law whether they violate the FDCPA. In form, they resemble a statement one might receive when one owes a balance on a credit card or a loan. It lists a statement date, a payment due date, the principal and interest balance in a section titled "EXPLANATION OF AMOUNTS PAYABLE," and an "Amount Due" by a certain date. (*See, e.g.*, ECF No. 102-1 at 2). The bottom of the first page of the Statements instructs the recipient to detach a portion and return it with a payment, again reflecting the "total amount due." (*Id.*). The

disclaimer at issue is placed between these two portions, which arguably appear to be an attempt to collect a debt. The disclaimer appears under the header "IMPORTANT MESSAGES" and states that it is sent for "informational purposes only" and that is not "not an attempt to collect a debt" if the individual has received a discharge in bankruptcy. The reverse side of the Statements contains more details about "Important Payment Information," "Late Charges and Overdraft Fees," "Payment Options," "Notice to Customers Making Payments by Check," as well as contact information for Nationstar and a change of address form. (ECF No. 102-1 at 3). Given the volume of payment information included on the Statements, the formatting of the Statements, and the presence of the disclaimer, whether the animating purpose of this communication is for debt collection or information disclosure is a disputed question of fact properly left for resolution by a jury and summary judgment is inappropriate.

Even if this Court were to find at this stage that the "animating purpose" of the Statements here was to collect a debt, the issue of whether the Statements were deceptive and/or misleading is also a disputed question of fact that must be left to a jury. The Sixth Circuit has adopted the "least sophisticated consumer test" to analyze claims under the FDCPA. *See Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611–12 (6th Cir. 2009) (quoting *Barany-Snyder v. Weiner*, 539 F.3d 327, 332–33 (6th Cir. 2008)). In assessing a claim under Section 1692e of the FDCPA, this Court must ask whether, to the least sophisticated consumer, the Statements at issue are "materially false or misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer." *Newton v. Portfolio Recovery Assocs., LLC*, No. 2:12-CV-698, 2014 WL 340414, at *6 (S.D. Ohio Jan. 30, 2014). This standard aims to protect "the gullible as well as the shrewd" while still preventing "liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and

presuming a basic level of understanding and willingness to read with care." *Hartman v.*, 569 F.3d at 611–12 (quoting *Barany-Snyder*, 539 F.3d at 332–33). In *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015), the Sixth Circuit explained that "whether a letter is misleading raises a question of fact" for a jury. 776 F.3d at 397. The Sixth Circuit has also found that a district court erred in granting summary judgment where conflicting aspects within a single document could give rise to more than one interpretation. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008); *see also Hartman*, 569 F.3d at 613 (finding there to be a genuine issue of material fact as to whether a document would "mislead the least sophisticated consumer" without consulting extrinsic evidence beyond the face of the letter itself).

The Defendant urges that the Statements are neither false nor misleading. In support of its argument, Nationstar notes that the Plaintiff does not challenge that the principal balance listed is incorrect and that there is "anything false about the statement that Nationstar 'may report information about your account to credit bureaus.'" (ECF No. 102 at 34–35). Nationstar also argues that the Statements are not misleading because "although the Mortgage Statement does include the loan balance, amounts due, and a payment coupon," it also includes a disclaimer on the first page under a heading titled "IMPORTANT MESSAGES." (ECF No. 102 at 35). According to Nationstar, the least sophisticated consumer would read the disclosure and understand that the Statement was for informational purposes only, that it was not an attempt to collect a debt, and was not intended as a demand for payment. (ECF No. 102 at 35). Nationstar also contends that, even if this Court finds that the Statements are ambiguous such that they have the "potential to be misleading or confusing," it is still entitled to summary judgment because of the presence of the Disclaimer. (ECF No. 102 at 36–37). Nationstar closes by insisting that Plaintiff needs to submit extrinsic evidence to create a genuine issue of material fact, but has not identified

any Sixth Circuit precedent setting forth this requirement.[4]

In support of his Motion for Partial Summary Judgment, Plaintiff argues that the Statements violate the FDCPA because a debt collector "misrepresents the character, amount and legal status" of a debt when it "attempts to collect on a discharge debt in bankruptcy," and the Statements were an attempt to collect a debt, not convey information. (ECF No. 100 at 41–42). Plaintiff relies on a number of decisions by courts which were confronted with similar monthly mortgage loan statements in other jurisdictions. (ECF No. 100 at 43–44). Plaintiff argues that the Statements violate the FDCPA because they misrepresent the discharge debt as still being due to Nationwide, threatened unlawful action such as late charge, and threatened the reporting of "false" credit information to local and national credit reporting agencies. (ECF No. 100 at 45–46).[5]

Just as the "animating purpose" of the Statements is a genuine issue of material fact best left to the jury, so too is the issue of whether the least sophisticated consumer would find the Statements misleading. The Statements, on their face, can give rise to conflicting interpretations, and neither party is entitled to summary judgment on this issue.

### E.     Insurance Letters

Both parties have moved for summary judgment on the issue of whether the correspondence regarding lender-placed insurance purchased by Nationstar ("Insurance Letters") violates the FDCPA. Defendant argues first that neither of the Insurance Letters were an attempt

---

[4] In *Buchanan v. Northland Group, Inc.*, 776 F.3d 393 (6th Cir. 2015), the Sixth Circuit cautioned that not every claim will go to a jury simply for implicating a question of fact and noted that claims of this type may be resolved at the summary judgment stage. 776 F.3d at 397. The Sixth Circuit did not set forth any standard to assess whether an FDCPA claim involving a misleading letter should be resolved as a matter of law, and neither party has presented sufficient evidence at this stage to entitle them to summary judgment as a matter of law on the Statements. Defendant is correct that the Seventh Circuit has found that, in cases where "debt collection language is not deceptive or misleading on its face, a plaintiff cannot prevail without producing extrinsic evidence." *Johnson v. Enhanced Recovery Company, LLC*, 961 F.3d 975, 982–83 (7th Cir. 2020). The Sixth Circuit, however, has not adopted such a standard.

to collect a debt, and therefore do not fall under the ambit of the FDCPA. (ECF No. 102 at 20–26). The Defendant also argues that, if the Insurance Letters can be viewed as an attempt to collect a debt, then the Insurance Letters are not false or misleading such that FDCPA liability can be found. (ECF No. 102 at 31). The Plaintiff also moves for summary judgment related to the Letters, both individually and as to Class 2, arguing that the Letters are governed by and violate the FDCPA. (ECF No. 100 at 46–49).

The analytical framework for the Insurance Letters is the same as used for the Statements: first, determining whether the animating purpose of the Insurance Letters was in connection with an effort to collect a debt, and second, whether the Insurance Letters would be materially false or misleading from the perspective of the least sophisticated consumer. Both parties raise similar arguments as were raised in the Statement section *supra*, but the parties raise the following distinct arguments with regard to the Insurance Letters.

### 1. September 7, 2016 Insurance Letter ("Insurance Letter I")

Nationstar argues that Regulation X, promulgated by the Consumer Financial Protection Bureau ("CFPB"), required Nationstar to send Insurance Letter I to Plaintiff and also required the inclusion of certain statements within these letters. (ECF No. 102 at 23–24).[6] Nationstar further argues that the animating purpose of these letters was not to collect a debt but to solicit information from Plaintiff as to whether Plaintiff had already purchased insurance on the Property. (ECF No. 102 at 23–24). In support of its argument, Nationstar identifies a number of precedents from other district courts that have ruled that the animating purpose of letters such as Insurance Letter I was to comply with Regulation X, "which required it to provide notice to Plaintiff before purchasing renewal hazard insurance and adding it to the loan balance." (ECF No. 102 at 25–26). Plaintiff

---

[6] In its response to Plaintiff's Motion for Partial Summary Judgment, Nationstar argues that the body of Insurance Letter I "tracks exactly the CFPB's model force-placed insurance notice form MS-3(D)." (ECF No. 105 at 30–31).

argues that the animating purpose of these letters was not informational, but rather "to make the recipients perfectly aware that they were going to ultimately be the ones to foot the bill" either "by allowing Defendant to escrow premiums from future loan payments, by having the recipient obtain at his or her own cost separate coverage . . . or by having the recipient reimburse Defendant for the cost." (ECF No. 100 at 47). Plaintiff further argues that Insurance Letter I violates the FDCPA because it misrepresented that Plaintiff and members of Class 2 had to pay money through reimbursement or escrow on "discharged mortgage loan amounts." (ECF No. 100 at 48).

The subject line of the Letter is "Please Provide Insurance Information for" and then lists the relevant loan number and property address. (ECF No. 100-23 at 1). The Letter advises that Nationstar "bought insurance on [recipient's] property and added the cost to [recipient's] mortgage loan account." (ECF No. 100-23 at 1). In addition, the Letter advises that the policy is set to expire, that Nationstar intends to maintain coverage, and provides the recipient with the estimate annual cost of the premium, which it characterizes "may be more expensive than insurance" that the recipient can purchase. (ECF No. 100-23 at 1). It further notes that the policy may not provide as much coverage as one that can be purchased by a recipient. (ECF No. 100-23 at 1). The Letter next instructs a recipient to send insurance information in writing if the recipient purchases hazard insurance, and provides detailed instructions on how to do so. Following Nationstar's signature, the Letter advises: "Please review the additional important information contained on the following pages." (ECF No. 100-23 at 1). The next two pages contain a variety of information and disclosures. (ECF No. 100-23 at 2–3). In the middle of the final page, there is a section entitled "Important Bankruptcy Information" in boldface, capital letters. (ECF No. 100-23 at 3). This section informs the recipient that the letter is for informational purposes if he or she is in pending bankruptcy proceedings or have received a bankruptcy discharge, "and is not an attempt to collect

28

a debt." (ECF No. 100-23 at 3). The disclosures otherwise provide details about the insurance policies purchased by Nationstar, escrow for insurance, and FDCPA disclosures that do note that Nationstar is "attempting to collect a debt," unless the individual has received a discharge for bankruptcy. (ECF No. 100-23 at 2–3).

The Insurance Letter differs significantly from the Statements in form and purpose, as on its face, the Insurance Letter does not send conflicting messages to a recipient about the purpose of the communication. In order to determine if the "animating purpose" of the Insurance Letter is debt collection, this Court will utilize the test employed by the Sixth Circuit in *Goodson v. Bank of America, N.A.*, 600 F. App'x 422 (6th Cir. 2015). In *Goodson*, the Sixth Circuit applied the following factors to determine the animating purpose of the communication:

> (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

600 F. App'x at 431. The majority of factors here counsel that the Insurance Letter's animating purpose is not to collect a debt. The first factor—the nature and relationship of the parties—does tip in favor of debt collection, as under the FDCPA, Nationstar can be considered a debt collector. Nationstar's status as a debt collector is also relevant to the fifth factor. The communication does not either expressly demand payment or state a balance due, and so the second factor weighs against finding the communication to be a debt collection. While the recipient did not submit any inquiry or request, the third factor neither weighs in favor of finding the Letter is not a debt collection, nor does it weigh against it.

The fourth *Goodson* factor—whether the statements were part of a strategy to make payment more likely—is perhaps the most important here. Unlike the Statement, the Insurance

Letter does not contain both payment-inducing features as well as disclosures. Rather, the Insurance Letter seeks to collect insurance information from the recipient and to advise the recipient of the Defendant's plan to place insurance on the property in which it holds an interest. Nationstar is correct that federal law does require mortgage servicers to provide written notice to a borrower before it can attempt to charge a borrower for force-placed insurance. *See* 12 C.F.R. § 1024.37(c)(1). Federal law also requires specific information to be provided in such communications, including that the servicer lacks evidence that insurance coverage has been purchased for the property, a statement requesting such information, a statement that a servicer will purchase such insurance "at the borrower's expense," and a statement that the insurance the servicer may purchase "[m]ay cost significantly more than hazard insurance purchased by the borrower" and may "[n]ot provide as much coverage as hazard insurance purchased by the borrower." 12 C.F.R. § 1024.37(c)(2). In light of the governing federal regulations and the lack of any payment-inducing features on the face of the document, the fourth factor weighs in favor of finding that the "animating purpose" of the Letter is not a genuine issue of material fact and that no reasonable juror could find that the purpose of the Letter was debt collection.

The sixth and seventh factors in *Goodson* also support a finding that, as a matter of law, the Insurance Letter is not an attempt to collect a debt. The Letter does note that Nationstar is "attempting to collect a debt," unless the individual has received a discharge for bankruptcy. (ECF No. 100-23 at 2–3). Unlike the Statements, however, this disclosure is not located between other conflicting elements that may confuse the least sophisticated consumer as to whether the Letter is in fact actually attempting to collect a debt. Thus, the sixth factor supports a finding that the "animating purpose" of the Letter is not debt collection. Finally, and importantly, the Letter does not threaten any consequences should the recipient fail to pay—first, because there is no demand

for payment, and second, because there are not consequences threatened for non-payment. Instead, the Letter's title informs the recipient that Nationstar is seeking information about insurance coverage, and follows the CFPB regulation's requirements for disclosures to recipients.

The Letter does not feature a payment stub to be detached or show a balance due, but does show the amount that it will cost Nationstar to insure the property. The Letter instructs a recipient to send insurance information in writing if the recipient purchases hazard insurance, and provides detailed instructions on how to do so. Following Nationstar's signature, the Letter advises: "Please review the additional important information contained on the following pages." (ECF No. 100-23 at 1). The only potential consequence is that the cost may be added to the loan balance, but the Letter includes a clear disclosure to the recipient of a bankruptcy discharge (that has not been otherwise muddled by conflicting, payment-inducing elements, as in the Mortgage Statements).

Accordingly, this Court finds that no reasonable juror could find that the "animating purpose" of the Insurance Letter II is "to induce payment from a debtor" and thus it is not an effort by Nationstar to collect a debt. *See, e.g.*, *Grden*, 643 F.3d at 173. Nationstar is thus entitled to summary judgment on the issue of whether Insurance Letter I violated the FDCPA, because the Letter is not subject to the FDCPA.

### 2. October 31, 2016 Insurance Letter ("Insurance Letter II")

While the analytical framework and some of the parties' arguments with regard to Insurance Letter II again track that for the other correspondence, the parties have also raised some distinct arguments regarding this correspondence. Nationstar argues that Insurance Letter II, like Insurance Letter I, did not have an animating purpose of debt collection and that Insurance Letter II "even more plainly was not an attempt to collect a debt." (ECF No. 102 at 26). Rather, Insurance Letter II was sent for the purpose of delivering the hazard insurance policy purchased by Nationstar

to Plaintiff and members of Class 2. (ECF No. 102 at 26). Nationstar emphasizes that the title of the Letter contains "Notice," that the Letter closes an actual insurance policy, and that the Letter makes "no reference to a loan balance, amount due, request or demand for payment." (ECF No. 102 at 26). Similar to its argument concerning the Statements, Nationstar also highlights that Insurance Letter II contains a disclosure printed in all capital letters informing the recipient that if they have received a discharge in a bankruptcy proceeding, the communication is not an attempt to collect a debt and that Nationstar reserved its right to exercise its legal rights only against the Property. (ECF No. 102 at 27).

In support of his Motion for Partial Summary Judgment, Plaintiff takes issue with the language used throughout Insurance Letter II. Like Insurance Letter I, Plaintiff argues that Insurance Letter II misrepresented that recipients like Plaintiff and members of Class 2 "had to pay Defendant money through reimbursement, and/or through monthly escrow payments on discharged mortgage loan accounts." (ECF No. 100 at 48–49). First, Plaintiff highlights the fact that the Letter contains a dollar amount for the insurance policy and characterizes it as an amount "advanced on [the recipient's] behalf" by Nationstar. (ECF No. 100 at 48).[7] Second, Plaintiff takes issue with the Letter's suggestion that purchasing one's own insurance would be cheaper than the insurance procured by Defendant. (ECF No. 100 at 48). Third, Plaintiff characterizes the disclaimers contained in the letters as "not prominent, contradictory, and at best confusing to the least sophisticated consumer." (ECF No. 100 at 48).

Insurance Letter II bears the label "Notice of Placement of Insurance." In the header, it provides the loan number, the policy/certificate number, the coverage amount, the effective date, and the property address. (ECF No. 100-24 at 1). The Letter opens by informing the recipient that

---

[7] In its Response, Nationstar argues that the "disclaimers make it clear that Nationstar will recover the premium – if at all – from a sale" of the properties, in which it holds a mortgage interest. (ECF No. 105 at 31).

Nationstar has purchased a policy for the property "to protect [Nationstar's] interest in [the recipient's] property," and lists the annual premium for the insurance, which Nationstar characterizes as being "advanced on [recipient's] behalf." (ECF No. 100-24 at 1). It then informs the recipient that the policy will either be taken from their escrow account or added to the cost of his monthly mortgage payment. (ECF No. 100-24 at 1). The Letter includes a section labeled "Important Facts to consider about Lender Placed Insurance," a section "strongly encourag[ing]" the recipient the obtain a "policy that provides adequate coverage," and a section informing the recipient of payment assistance options. (ECF No. 100-24 at 1–2). At the bottom of the second page, in all capital letters, Insurance Letter II contains a disclaimer that for those in in bankruptcy proceedings or who have received a discharge, "this communication is not an attempt to collect the debt." (ECF No. 100-24 at 2). The Letter closes with a set of Property Insurance Requirements and then attaches a policy from Standard Guaranty Insurance Company. (ECF No. 100-24 at 3–4).

Like Insurance Letter I, Insurance Letter II does not have the "animating purpose" of inducing a debtor to pay a debt under *Goodson*. The analysis for the Letter's "animating purpose" tracks that of Letter I, because the relationship between the entities is the same, the communication again does not expressly demand payment or state a balance due, the recipient did not request the communication, and Nationstar is still a "debt collector." The analysis under *Goodson* does differ on the remaining factors, each of which favors the finding that Insurance Letter II does not have the "animating purpose" of debt collection. First, the statements were not part of a strategy to make payment more likely. Like Insurance Letter I, Insurance Letter II does not contain conflicting elements that may mislead the least sophisticated consumer into making a payment on debt she does not owe. The Letter instead provides notice to the recipient that insurance for the property has been purchased. While the Letter does note that the policy amount may be taken from an

escrow account or added to the monthly payment, the Letter does not state any balance due or in other ways induce a payment. It also contains a disclosure to those who have received bankruptcy discharge that it is not attempting to collect a debt, among other purely informational statements. Finally, the Letter attaches a copy of the policy acquired. These elements all support a finding that the Letter's purpose was not animated by debt collection, but instead to convey certain information to the consumer. Finally, this Letter does not threaten consequences to the recipient for a failure to pay because it neither demands any sort of payment nor lays out threatened consequences for any failure to pay. The Letter instead provides an update on the insurance coverage from the prior communication, and provides a copy of the Policy to the recipient.

Just as with Insurance Letter I, this Court finds that no reasonable juror could find that the "animating purpose" of the Insurance Letter II is "to induce payment from a debtor" and thus it is not an effort by Nationstar to collect a debt. *See, e.g.*, *Grden*, 643 F.3d at 173. Nationstar is thus entitled to summary judgment on the issue of whether Insurance Letter II violated the FDCPA, because the Letter is not subject to the FDCPA.

## F.    Discharge Injunction

In his Motion for Partial Summary Judgment, Plaintiff also sought summary judgment "[a]s to Plaintiff, and the Class Members of CLASSES 3 and 4, concerning the Discharge Injunction issues under 11 U.S.C. 524(a)(2)" regarding several "findings of fact and legal conclusions." (ECF No. 100 at 3–5). The Defendant does not clearly address this section of Plaintiff's request for relief. Based on the reasoning and analysis contained in the above sections, this Court cannot make a number of the findings of fact and legal conclusions sought by Plaintiff because they hinge on genuine issues of material fact that must be resolved by a jury. The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter"

but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Plaintiff's request is asking this Court to do what *Anderson* specifically prohibits: to weigh the evidence and determine the truth of the matter.

## IV.    CONCLUSION

For the reasons discussed above, genuine issues of material fact exist concerning the Mortgage Statements. Plaintiff's Motion for Partial Summary Judgment (ECF No. 100) should be **DENIED** and Defendant's Motion for Summary Judgment (ECF No. 101) should be **GRANTED IN PART**, to the extent that any claim for the December 31, 2012 Letter is time-barred and that the Insurance Letters are not within the ambit of the FDCPA, and **DENIED IN PART**.[8]

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  January 20, 2021**

---

[8] Both parties have moved for summary judgment on the issue of actual and statutory damages under the FDCPA, but because Plaintiff has not been successful on any of his claims on summary judgment, he has not succeeded in proving actual damages or statutory damages. Because Defendant has not wholly defeated Plaintiff at summary judgment, the issue of any damages remains for trial.