IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHARLES D. MCNAMEE, : | |
| : | Case No. 14-1948 |
| Plaintiffs, : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Vascura |
| NATIONSTAR MORTGAGE LLC, : | |
| : | |
| Defendant. : | |

**OPINION & ORDER**

This matter is before the Court on Defendant Nationstar Mortgage, LLC's ("Nationstar") Motion in Limine to Exclude Plaintiff's Expert Report and Testimony. (ECF. No. 135). For the following reasons, Defendant's Motion is **GRANTED in part and DENIED in part**.

I. BACKGROUND

Plaintiff Charles M. McNamee brought this class action complaint against Nationstar on October 17, 2014, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). (*See generally* ECF No. 1). The complaint sought class certification, a finding that Nationstar's conduct violated the FDCPA, and a civil judgment for statutory damages, costs, and attorney's fees. (*Id*. at 11–12). Plaintiff claims that Nationstar improperly sent him, and those similarly situated, mailings relating to mortgages that had been discharged in bankruptcy. (*See generally* ECF No. 1).

Relevant to the instant Motion, these mailings included Mortgage Loan Statements, Nationstar sent Plaintiff every month beginning in January 2013. (ECF No. 100-1 ¶¶ 27–28; *see also* ECF Nos. 100-17–20). The first page of the Mortgage Loan Statement contains a significant amount of information including, but not limited to: a statement date, a payment due date, a loan number, the principal and interest balance, the escrow amount, the lender paid expenses, the amount due, and the interest rate. (*Id*.). At the end of the first page is a section labeled "Important

1

Messages." (*Id.*). The section contains the following language (the "Disclaimer Language"):

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a, or demand for payment from, any individual protected by the United States Bankruptcy Code. If this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is for information purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

(*Id.*). Among other things, the parties dispute whether these Mortgage Loan Statements were sent in connection with an attempt to collect a debt. More specifically, they dispute whether the language quoted above is deceptive and/or misleading within the meaning of Section 1692e of the FDCPA. *See* 15 U.S.C. § 1692e.

Nationstar filed a partial Motion to Dismiss along with its Answer on January 12, 2015. (ECF Nos. 2, 3). This Court granted Nationstar's Motion and dismissed Count II for failure to state a claim on September 4, 2015. (ECF No. 20). Thereafter, on July 28, 2017, Plaintiff moved for class certification. (ECF Nos. 48). After that Motion was fully briefed, this Court held a hearing on March 29, 2020. (ECF No. 56). The next day, this Court granted Plaintiff's Motion and certified four classes. (ECF No. 62). Following the conclusion of discovery, each party moved for summary judgment. (ECF Nos. 100,101). After holding oral argument on November 24, 2020, the Court denied Plaintiff's Motion and granted in part Defendant's. (ECF No. 117). In so ruling, and as relevant to the instant Motion, this Court determined that whether the Mortgage Loan Statements were deceptive and/or misleading was a disputed question of fact that must be left to a jury." (*Id.* at 24).

Following its ruling, on March 4, 2021, this Court issued an Order setting a trial date and settlement conference, as well as associated deadlines for disclosures, witness lists, designation of deposition portions, exhibits, and trial motions. (ECF No. 121). That Order was subsequently

amended on June 16, 2021. (ECF No. 134). In the interim, Plaintiff moved to extend the deadline for expert disclosures by thirty-five (35) days. (EFC No. 126). This Court granted Plaintiff's Motion, continuing trial and other deadlines to ensure there was no harm to Defendant from Plaintiff's requested extension. (ECF No. 133). Accordingly, the trial date was reset to October 25, 2021, with a settlement conference set for September 15, 2021. (ECF. No 134).

Prior to the settlement conference, Defendant raised an issue with this Court regarding Plaintiff's expert, Dr. Martin Saperstein. Dr. Saperstein was engaged by Plaintiff to aid in proving that the Disclaimer Language would mislead or confuse the reasonable unsophisticated consumer. In the course of his engagement, Dr. Saperstein conducted a 1000-person online survey. (*See* ECF 137-7). Defendant represents that upon reviewing Dr. Saperstein's report, its own expert realized the report, and accompanying survey, did not include the Disclaimer Language. (ECF No. 136 at 2–3). Rather, the survey conducted by Dr. Saperstein was "predicated upon the survey participant's review" of an entirely different Mortgage Loan Statement, with entirely different disclaimer language.[1] (ECF No. 137 at 3). Given this mistake, Defendant represented it planned to file a motion to exclude this report as irrelevant, and any subsequent supplemental report as untimely. Upon receiving notice of this error, Plaintiff directed Dr. Saperstein to conduct a corrective survey and report (the "Corrective Report"). (ECF No. 137 at 6). Plaintiff's counsel provided Defendant's counsel with the Corrective Report on August 18, 2021. (*Id*. (citing ECF No. 137-1 at 6)). Defendants filed the instant Motion that same day. (ECF Nos. 135, 136).

In its Motion, Defendant ask this Court to "strike Plaintiff's current expert disclosure and

---

[1] The disclaimer language in Dr. Saperstein's first survey read as follows: "At the time this statement was sent, we had not received a payment from you since 05/25/2012. If you are facing financial difficulty, please know that there may be options available to you and that we are committed to working with you regarding making your monthly payment more affordable. Our representatives are standing by and can be reached at 1-877-448-5053. Please call us today so we can discuss your available options and which one may be right for you." (ECF. 136 at 13).

3

report and, pursuant to Fed. R. Civ. P. 37(c)(1), any new expert disclosure and report produced by Plaintiff." (ECF No. 136 at 20). Defendant also requests that this Court award it fees and expenses incurred in preparing its rebuttal expert report and the instant Motion. (*Id*.). Regarding Plaintiff's current expert disclosure and report—as prepared by Dr. Saperstein—Defendant argues that because it "uses the wrong mortgage statement, [it] [] flunks the *Daubert* test's requirement that an expert opinion be relevant to a material issue in the case." (*Id*.). Accordingly, Defendant contends, that this "expert report and any testimony based on it should [] be excluded under Rule 702 of the Federal Rules of Evidence." (*Id*. at 4). Furthermore, Defendant asserts that the Corrective Report fails to comply with Fed. R. Civ. P. 26(a)(2)(B), as it is not a proper supplementation. (*Id*. at 15). Should the Court determine the supplement is proper, Defendant alternatively argues that the Corrective Report remains untimely, and Plaintiff has not shown either "substantial justification" or "harmlessness," pursuant to Rule 26. (*Id*.).

For his part, Plaintiff acknowledges the error in Dr. Saperstein's original report. (*See* ECF No. 137 at 11 ("Regrettably the original study and analysis were based upon [a] faulty assumption due to an unintentional error in processing the PDF image.")). Accordingly, Plaintiff has withdrawn this report and analysis as expert-based evidence in this case. (*Id*. at 19). However, Plaintiff argues that the data underlying Dr. Saperstein's original report, separate from the expert analysis, "should not be excluded under *Daubert*." (*Id*. at 12). Furthermore, Plaintiff contends that Corrective Report is a proper supplementation under Fed. R. Civ. P. 26(e), and therefore, should not be excluded. (*Id*. at 16–18). In reply, Defendant maintains its arguments that Dr. Saperstein's original report, including the corresponding data, is irrelevant and that the Corrective Report should be excluded as an improper supplement. (*See generally* EFC No. 138). Additionally, Defendant argues that because Plaintiff had access to the Disclaimer Language from the outset of

4

this case, their failure properly to include it in Dr. Saperstein's original report is not substantially justified and harmful. (*Id*. at 2). Defendant's Motion to Exclude (ECF No. 135, 136) is now fully briefed and ripe for this court's consideration.

## II. STANDARD OF REVIEW

There are two standards of review this Court must consider in resolving Defendant's Motion. The Court begins with the *Daubert* standard, as relevant to Defendant's argument that Dr. Saperstein's original report, including the corresponding data, should be excluded as irrelevant. (ECF No. 136 at 20). Next, the Court turns to the standard governing the supplementation of expert disclosures under Rules 26 and 37, as relevant to Defendant's contention that the corrective report should be excluded as improper and untimely.

### A. *Daubert* Standard

Pursuant to Federal Rule of Evidence 702, an expert's opinion is admissible, at the discretion of the trial court, if: (1) the expert is qualified as such by knowledge, skill, experience, training, or education; (2) the testimony is relevant, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony is reliable, meaning it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that while the evaluation of expert testimony is generally left to juries, district courts must serve in a "gatekeeping" capacity, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597–98 (1993). Determining the admissibility of expert testimony pursuant to Rule 702, however, entails a flexible inquiry. *Daubert*, 509 U.S.

5

at 594. The burden on a party proffering expert testimony is to "show by a preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008) (citing Pride v. BIC *752 Corp., 218 F.3d 566, 578 (6th Cir. 2000)) (internal quotation marks omitted).

### B. Exclusion of Witnesses Under Rules 26 and 37

Under Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a) governs the disclosure of expert testimony, as well as other discovery responses. Fed. R. Civ. P. 26. Under Rule 26(a)(2), a party must disclose the identity of any expert witness to other parties and this disclosure must be accompanied by a written report if the witness is one retained or specifically employed to provide expert testimony in the case. Fed. R. Civ. P. 26(a)(2)(A–B). This report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them," as well as other information about exhibits, qualifications, past testimony, and compensation. Fed. R. Civ. P. 26(a)(2)(B).

A party must supplement these disclosures when required by Rule 26(e), *see* Fed. R. Civ. P. 26(a)(2)(E), which in turn requires a party to supplement disclosure as to both information in the report and information given during the expert's deposition. Fed. R. Civ. P. 26(e)(2). Any additions or changes to an expert witness's report must be disclosed by the time the party's pretrial disclosures are due. *Id*. At a more general level, a party must supplement any disclosure made under Rule 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

6

otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) requires compliance with Rules 26(a) and (e), unless a party shows "that the failure to comply was substantially justified or harmless." *Oster v. Huntington Bancshares, Inc.*, No. 2:15-cv-2746, 2017 WL 3208620, at *10 (S.D. Ohio July 28, 2017) (quoting *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). Under Rule 37(c) "the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010). A non-movant bears the burden of proving harmlessness. *See Oster*, 2017 WL 3208620, at *4. In addition to or instead of exclusion, this Court may, "on motion and after giving an opportunity to be heard," order payment of reasonable expenses caused by the failure, inform the jury of the party's failure, or impose other appropriate sanctions. Fed. R. Civ. P. 37(c)(1). A district court's decision on whether and how to sanction a party for discovery violations is reviewed for an abuse of discretion. *See Phillips v. Cohen*, 400 F.3d 388, 396 (6th Cir. 2005) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642–43 (1976)).

### III. LAW & ANALYSIS

#### A. Dr. Saperstein's Original Report

The Federal Rules of Evidence permit an expert witness to testify if: (1) the expert is qualified to give that testimony; (2) the testimony is relevant; and (3) the testimony is reliable. Fed. R. Ev. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). Defendant does not contest that Dr. Saperstein is qualified or that his report and testimony is reliable, it does, however, argue that his original report is not relevant and must be excluded. This Court agrees.

7

To be considered relevant under the *Daubert* standard, expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id*. "Expert testimony which does not relate to any issue in the case is not relevant, and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. "This requirement has been interpreted to mean that scientific testimony must 'fit' the facts of the case, that is, there must be a connection between the scientific research or test result being offered and the disputed factual issues in the case in which the expert will testify." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 592). "Whether an opinion "relates to an issue in the case' or helps a jury answer a 'specific question' depends on the claims before the court." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020).

There is no debate that Dr. Saperstein's original report relies on the incorrect Mortgage Loan Statement and is therefore, irrelevant. (*See* ECF No. 137 at 18 (Plaintiff withdrawing Dr. Saperstein's June 29, 2021 report and analysis as expert-based evidence in this case)). While Plaintiff does not dispute this contention, he does argue that the survey data *underlying* Dr. Saperstein's original report "provides *potentially* . . . useful [] information[,]" and is therefore relevant. (*Id*. at 7). Specifically, he alleges that this underlying data shows survey participants' perception of a non-bankruptcy Mortgage Loan Statement, albeit not the one at issue in this case. (*Id*.). Plaintiff's argument, however, is misplaced. The *data* is just as irrelevant as Dr. Saperstein's analysis of it.

As this Court detailed when ruling on the parties' summary judgment motions, the relevant inquiry here is "whether, to the least sophisticated consumer, *the Mortgage Loan Statements at issue* are 'materially false or misleading[.]'" (ECF No. 117 at 24 (quoting *Newton v. Portfolio Recovery Assocs.*, LLC, No. 2:12-CV-698, 2014 WL 340414, at *6 (S.D. Ohio Jan. 30, 2014)) (emphasis added). The question is not whether *any* Mortgage Loan Statement language is false or

8

misleading; it is whether this *specific* Mortgage Loan Statement language is false or misleading. The survey respondents' perception of this other Mortgage Loan Statement language does not have any bearing on how those same respondents perceived the Mortgage Loan Statement at issue here. Said differently, there is no connection between the Survey respondents' perception of this other Mortgage Loan Statement language, and the disputed factual issue on which Dr. Saperstein is expected to testify. *Pride*, 218 F.3d at 578 (6th Cir. 2000). Accordingly, because Dr. Saperstein's original report *and* the data underlying it cannot assist the trier of fact to understand the evidence or to determine a fact in issue, they are irrelevant. As a result, Defendant's request to exclude this evidence is **GRANTED**.

### B. The Corrective Report

To resolve Defendant's request to exclude the Corrective Report, this Court must first resolve the threshold issue of whether the corrective report is a proper supplement within the meaning of Rule 26(e). If a party does not comply with the requirements of Rule 26(a) or (e), then it is subject to the automatic and mandatory sanction of exclusion under Rule 37(c)(1). *See Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004). "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. Bic Corp.*, 218 F.3d 566, 578 (6th Cir. 2000). Federal Rule of Civil Procedure 26(e) requires parties to supplement an expert report prior to the deadline for pretrial disclosures when the party learns that in some material respect, the disclosure is "incomplete or incorrect." This Court has previously interpreted Rule 26(e) as being "limited to 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, No. 2:18-md-2846, 2020 WL 1154809, at *4 (S.D. Ohio. Mar. 10, 2020) (quoting *Winter Enters., LLC v. W.*

*Bend Mut. Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019). When confronted with an alleged "supplementation" made under Rule 26(e), district courts must ascertain whether the report is in fact a true supplement or an impermissible revision of the earlier report. *See id*. (quoting *Gallagher v. S. Source Packaging, LLC*, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008)) ("Courts distinguish 'true supplementation' (*e.g.*, correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to . . . 'supplement[]' an expert report with a 'new and improved' expert report.").

In its Motion, Defendant alleges that "[t]he new survey and report are not intended to supplement the prior report but to replace it." (ECF No. 136 at 14). As a result, argues Defendant, the Corrective Report cannot be considered a supplementation within the meaning of Rule 26(e). (*Id.*). Defendant further maintains that Plaintiff failed to exercise diligence in catching the error in Dr. Saperstein's original report nor has he shown "'an honest mistake . . . coupled with sufficient knowledge on the part of [Defendant].'" (*Id.* (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920, at *5 (6th Cir. 1999)). Defendant asserts that "Plaintiff cannot show any substantial justification for failing to meet the Court's extended expert disclosure deadline or prove the failure is harmless[.]" (*Id.* at 15). Finally, Defendant argues that because the corrective report cannot be considered a supplement, it must be considered a new expert report. (*Id.* at 17–18). Defendant emphasizes that the deadline for expert disclosures has passed, and any attempt to alter that deadline would be prejudicial. (*Id.* at 19–20).

Plaintiff responds that the Corrective Report is precisely the type of supplement envisioned by Rule 26(e). Plaintiff argues that it was in fact under a duty to supplement its expert report by the terms of Rule 26. (ECF No. 137 at 10–11). Plaintiff represents to this Court that, "[a]fter learning of the errors here, Dr. Saperstein immediately took steps to conduct his corrective study

10

and provided Defendant with the Corrective Report on August 18, 2021." (*Id*. at 11). According to Plaintiff, because the Corrective Report is a proper supplementation that was timely disclosed, an extension of the expert disclosure deadline is unnecessary. (*Id*. at 16). Alternatively, even if the corrective report were deemed untimely, Plaintiff maintains that the Court may not exclude it if there is "substantial justification" or "harmlessness." (*Id*. (citing *Howe v. City of Akron*, 801 F.3d 718, 747–748 (6th Cir. 2015) (setting forth a five-factor analysis for determining whether an untimely expert disclosure is "substantially justified" or "harmless"))). Ultimately, Plaintiff argues that to the extent they apply here, the factors in *Howe*, weigh in favor of allowing him to present the Corrective Report at trial. (*Id*. at 17).

Defendant replies, emphasizing that Plaintiff has been in possession of the correct Mortgage Loan Statement since the outset of litigation, so by issuing the Corrective Report, Plaintiff is not merely correcting an error, but attempting to alter improperly the original expert report. (ECF No. 138 at 9). Defendant relies on *Am. Nat'l Property & Cas. Co. v. Stutte*, wherein the district court disallowed an "amended" expert report because the evidence underpinning the report was in the non-moving party's possession since the case commenced. No. 3:11-CV-219, 2015 WL 2095868, *5 (E.D. Tenn. May 5, 2015) ("Rule 26's duty to supplement is not a declaration of open season for experts to undertake new analyses or to evolve their opinions."). The Court in *Stutte*, found that because the non-moving party could have provided their expert with the evidence underpinning the "amended" expert report, and choose not to, their failure was not substantially justified, and exclusion was required. *Stutte*, 2015 WL 2095868 at *5.

If the Corrective Report is a required supplement under Rule 26(e), this Court need not consider whether it was substantially justified or what harm it may cause to Defendant because it would not be subject to exclusion under the Federal Rules of Civil Procedure. Rule 26 requires a

11

party to supplement or correct initial disclosures, including the disclosure of expert reports, if that party later learns that "in some material respect" the disclosure is incomplete or incorrect. Fed. R. Civ. P. 26(e)(1). This duty to supplement encompasses both information in the expert's report and any information given during the expert's deposition. Fed. R. Civ. P. 26(e)(2). A party must share any "additions or changes" to this information before the party's pretrial disclosures under Rule 26(a)(3) are due, unless the court has set an alternative deadline. *See id.*; *see also Bentley v. Highlands Hospital Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *6 (E.D. Ky. Oct. 6, 2016) (noting that Rule 26 imposes default rules for supplementing disclosures, which can be altered by courts). A court must look beyond the label affixed by a party and determine whether a filing is an initial disclosure or a supplement. *See, e.g., Bentley*, 2016 WL 5867496, at *4 (noting that "substance triumphs over form" in a court's analysis of supplemental reports).

      This Court finds that the Corrective Report falls within the bounds of a proper supplement under Rule 26(e). Rule 26(e) is triggered when the party learns that, in some material respect, a disclosure that it has made is incomplete or incorrect. *See* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (3d ed. 2010). In its filing, Plaintiff represents that, "[a]fter learning of the errors here, Dr. Saperstein immediately took steps to conduct his corrective study and provided Defendant with the supplement and corrective report on August 18, 2021." (ECF No. 137 at 11). Under the Ohio Rules of Professional Conduct, counsel has a duty of candor and may not knowingly make a false statement of fact to a tribunal. Ohio Prof. Cond. Rule 3.3(a)(1). Counsel has submitted that it was an inadvertent error, and Defendant has alleged no facts to cast doubt on Plaintiff's representation of how the Corrective Report came to be. This Court will take Plaintiff at his word as to the genesis of the Corrective Report.

      In substance, the Corrective Report and accompanying survey correct the deficiency in the

original survey and report, by relying on the correct Mortgage Loan Statement language. In his affidavit, Dr. Saperstein represents that "the only way to meaningfully correct the mistake . . . and to simultaneously serve the intended purpose of the original engagement was to run a corrective study where 1000 participants looked at and read the proper Mortgage Loan Statement[.]" (ECF No. 137-7 at 4). Once the survey went live, Dr. Saperstein represents that he and Plaintiff's counsel "checked and rechecked" that the survey contained the correct Mortgage Loan Statement language. (*Id*. at 5). The survey closed after 1000 participants completed it—the same amount as had completed the original survey. (*Id*.). Dr. Saperstein then reviewed and analyzed the data himself, utilizing the same techniques as were used initially, and sent the Corrective Report to Plaintiff's counsel on August 18, 2021, at which point Plaintiff's counsel sent it to Defendant. (*Id*.).

Rule 26(e) supplements exist for the purpose of correcting inaccuracies in a report. *See In re Davol*, 2020 WL 1154809, at *4. Supplementation allows for the correction of "inadvertent errors or omissions," but does not extend to failures in which the expert did an "inadequate or incomplete preparation." *Id*. at *5 (quoting *Rush v. City of Mansfield*, 2009 WL 454347, at *5 (N.D. Ohio. Feb. 24, 2009)). Correction of even a "late-in-the-day error or inaccuracy" in a party's reasoning falls properly within the narrow reasons for supplementation. *See Ullman v. AutoOwners Mut. Ins. Co.*, No. 2:05-cv-1000, 2007 WL 1057397, at *4 (S.D. Ohio Apr. 5, 2007). The Corrective Report is similar to the issue considered by the court in *Hamilton County Emergency Communications District v. Level 3 Communications, LLC*, where the data the expert "used in his first two reports were inaccurate" and the expert corrected the inaccuracy by substituting in new calculations and estimates based on excluded information. *See* No. 1:14-cv376-CLC-SKL, 2019 WL 5445295, at *4 (E.D. Tenn. Oct. 23, 2019).

This is not an instance where a party has provided a supplementary expert report that

13

actually aims to "cure [] deficient testimony, respond to criticisms of [an expert's] methodology, [or] to provide new and additional opinions to buttress his claims." *See In re Davol*, 2020 WL 1154809, at *6. The purpose of the survey as well as Dr. Saperstein's method of analysis has not changed. The only difference is that the Corrective Report and accompanying survey relate to the correct Mortgage Loan Statement language. Furthermore, while the fact that a party may have possessed the information underlying the supplement throughout the litigation is relevant, it is not dipositive. *See id*. at *4 (quoting *Winter Enters., LLC v. W. Bend Mut. 11 Ins. Co.*, No. 1:17-CV-360, 2019 WL 3413907, at *8 (S.D. Ohio July 29, 2019)) (noting that Rule 26 supplementation is limited to "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure"); *see also Matilla v. S. Ky. Rural Elec. Cooperative Corp.*, 240 F. App'x 35, 43 (6th Cir. 2007) (excluding supplementary report that was filed after the deadline for supplementation and party had possessed supplementary information throughout litigation in part because submitting party had been dilatory during discovery and there existed past evidence of inexcusable delay). This is simply not a case where a party disregarded an initial duty to disclose and sought to "evade the resulting consequences by asserting supplementation of reasoning that was never there to begin with." *Ullman*, 2007 WL 1057397 at *5. Nor is it an instance of "seeking to transform a conclusory report and its unexplained opinion via supplementation" or "'lying in wait' to express new opinions at the last minute." *See id*. (quoting in part *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)).

      This Court is cognizant of the danger that supplementation may be abused such that Rule 26's requirement of expert disclosures becomes illusory if it allows an expert to continue revising his report long past the deadline. Where a change in the report falls on the side of error correction, as opposed to a substantive transformation in theories of liability, methodology, conclusion, or the

14

report in its entirety, as has previously been attempted by litigants, this change falls within the bounds of Rule 26(e).

Even if the Amended Report was not a proper supplement, this Court finds the Amended Report would be harmless under *Howe*. A violation that is "harmless" is one which involves "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *See id*. at 747 (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920, at *5 (6th Cir. 1999)). Courts in the Sixth Circuit utilize the following factors in considering whether a disclosure is substantially justified or harmless: 1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Id*. at 748.

These factors favor the inclusion of the corrective report. The course of this litigation has not yet concluded: the original report, albeit inaccurate, was produced at the appointed time; the Corrective Report was produced before the deadline for pretrial disclosures; and Defendants still have the opportunity to depose Dr. Saperstein should they wish to, as the trial date is still a month away. As such, Defendant can cure the surprise, to the extent there is any. Furthermore, allowing this evidence will not disrupt trial, as any curative measures are not substantial. Indeed, this evidence is important because none of Plaintiff's other experts addresses the alleged misleading nature of the Mortgage Loan Statement language.

Thus, even if the Corrective Report is not treated as a supplement, the resulting prejudice to Defendant is limited and this Court would not exclude the corrective report under Rule 37(c)(1) because the violation is ultimately harmless. Accordingly, Defendant's request to exclude the Corrective Report, and any corresponding testimony, is **DENIED**.

### C. Fees

This the Court addresses Defendant's request that the Court award it fees and expenses incurred in preparing its rebuttal expert report and the instant Motion. (ECF No. 136 at 20). Notably, in neither its Motion nor Reply brief, does Defendant make a substantive argument in support of its request for fees. (*See generally id*; ECF No. 138).

An award of fees under Rule 37(c)(1) is discretionary. *See* Fed. R. Civ. P. 37(c)(1) (recognizing that a Court *may* order payment of the reasonable expenses, including attorney's fees, caused by a failure to properly supplement). Furthermore, such an award is only appropriate where the non-moving party failed to properly supplement. That did not occur here. As detailed above, the Corrective Report was a timely and appropriate supplement. Accordingly, Defendant's request for fees and expenses is **DENIED**.

### IV.  CONCLUSION

For the foregoing reasons, Defendant Nationstar's Motion in Limine to Exclude (ECF No. 135) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: September 24, 2021**