IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES D. MCNAMEE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. C2:14CV1948 |
| | : | |
| NATIONSTAR MORTGAGE, LLC, | : | JUDGE ALGENON L. MARBLEY |
| | : | Magistrate Judge Vascura |
| Defendant. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
CORRECTED MOTION IN LIMINE [ECF 157] TO EXCLUDE WITNESSES
ALLEGEDLY NOT IDENTIFIED DURING DISCOVERY**

Now comes Charles D. McNamee ("Plaintiff") and sets forth below his Response in OPPOSITION to Defendant's Corrected Motion in Limine ("MIL") (ECF 157) to exclude Plaintiff's witness disclosed on October 4, 2021.

As to the portion of Defendant's MIL (ECF 157 at 1-6) that argues for exclusion because of Plaintiff's alleged failure to disclose his witnesses during discovery, Defendant's MIL has not been made with honest evidentiary support. Plaintiff has done his level best to get Defendant to withdraw this part of the MIL, but Defendant has demurred, making this response necessary. Plaintiff believes that Defendant presented (and did not withdraw) this aspect of this MIL to harass Plaintiff and to needlessly increase the cost of this litigation.

As to Defendant's arguments that the testimony of certain recipients of the same form Mortgage Loans Statements is not relevant or is unfairly prejudicial, Plaintiff wholly disagrees with Defendant's legal analysis, and Defendant's MIL as to this issue should be DENIED.

# ARGUMENT

A. **Defendant's Frivolous Argument As To Exclusion Of Witnesses Because Of Non-Disclosure**

   1. **Pertinent Background**

On October 4, 2021, Plaintiff provided Defendant with his Statement of Witnesses, disclosing 44 witnesses, including Plaintiff and his spouse, his expert, Martin D. Saperstein, PhD, and A.J. Loll, Defendant's Vice President. ECF 151. The remaining witnesses on Plaintiff's list are recipients of the same Mortgage Loan Statements with circumstances almost identical to Plaintiff. Plaintiff's list was timely filed and served in accordance with the Court's Order Resetting Trial Date and Settlement Conference. ECF 134.

Not long after its filing that evening, Defendant filed its original MIL suggesting that these witnesses must be excluded because Plaintiff failed to disclose them during "initial disclosure" procedures pursuant to Fed. R. Civ. P. 26(a)(1), and/or that Plaintiff failed to supplement Plaintiff's initial disclosures in the case. ECF 154 at 1-7. Nowhere set forth in Defendant's original MIL did Defendant state that Plaintiff's witnesses needed to be excluded because Plaintiff allegedly failed to supplement specific responses given to Defendant's actual discovery requests. It was clear that before filing the original MIL, counsel for Defendant knee-jerked the filing and did not conduct a reasonable inquiry to determine the facts.

On October 5, 2021, Plaintiff's counsel alerted Defendant's that its MIL was not properly supported by the facts. Exhibit A (Email) attached. Therein, Plaintiff's counsel noted that the aspects of the MIL dealing with the relevance of the testimony of the class members and others who received the Mortgage Loan Statements was not objectionable and would be addressed. However, because the parties stipulated not to provide "initial disclosures" – [referring to ECF 8 at 1 # 3], Plaintiff's counsel informed Defendant's counsel that Defendant's arguments that Rule

26(a)(1) was operative or controlling were not proper. Plaintiff respectfully requested that Defendant withdraw, amend or delete the filing. Within a half hour of receiving the email, Defendant's counsel responded stating: "Thank you for your email. We have reviewed and will be filing an Amended Motion to address the issue you note below. Thank you". Exhibit B (email) attached.

On October 6, 2021, Defendant filed the Corrected MIL. ECF 157. Defendant's corrected filing did abandon the notion that Plaintiff did not properly make or supplement initial disclosures under Rule 26(a)(1). However, instead of leaving it that, Defendant double-downed and crafted an entirely new specious argument that was not timely raised in its original filing. In the Corrected MIL, Defendant states that Plaintiff was somehow obligated to disclose his trial witnesses in response to, or supplementation of, his answers to an interrogatory presented in connection with Defendant's discovery requests regarding class certification. ECF 157 at 1-6. Defendant's interrogatories and Plaintiff's answers thereto are attached. Exhibit C.

If the Court will recall, discovery in this case was bifurcated. ECF 8-1. The Court adopted the parties' stipulations and bifurcated discovery schedule. ECF 12; ¶s E, H. Defendant served discovery relating to the case's first phase regarding class certification in mid-2016. Therein, Defendant asked as follows (emphasis added):

> 7. With respect to the purported class, provide the following: (a) the number of persons in the purported class you seek to represent, including an explanation of how you calculated the number and whether this number excludes individuals who have filed individual actions against Nationstar; (b) <u>identify all persons known to you or your attorneys who are or may be members of the class</u>; (c) describe all procedures you or your attorneys have used or will use to identify the members of the class; (d) state the time and expense you estimate will be required to identify the members of the class; and (e) identify any experts, consultants, and other individuals whom you have employed to assist you in identifying members of the class.

Exhibit C at 7 (Plaintiff's Objections and Responses to Defendant's Discovery) attached.

In 2016, there was no reasonable way for Plaintiff to independently know or even determine the identities of the class members with the exception of Scott and Stacey Marple who were originally companion complainants with Plaintiff in U.S. Bankruptcy Court. Defendant was always aware of the Marples' existence. What Plaintiff did know was that Defendant had an expensive and searchable database that contained the information necessary to determine the identities of the class members. Plaintiff, at the time, was formulating the objective criteria to be a member the proposed class or classes, and preparing discovery requests aimed at causing Defendant to review its records to reveal their identities. In addition, Plaintiff conducted a review of available PACER bankruptcy records in Ohio and found approximately 1,000 potential cases – sources of information. Plaintiff's findings were shared with Defendant. Accordingly, Plaintiff posited the following OBJECTION to Defendant's Interrogatory.

> OBJECTION. Impossible to ascertain without information from Nationstar. Nationstar has objected to Plaintiff's discovery requests aimed at obtaining this information. Without waiving this objection Plaintiff states that (a) he intends to represent all members who have similarly situated FDCPA claims on a nationwide basis, and all similarly situated discharge injunction claims for members in the S.D. Ohio; (b) **the members of each group are currently being ascertained**; (c) procedures used include discovery of Nationstar's business records and; independent searching of PACER/CM records for Ohio identified 1000 cases for the relevant time period through May 2016; (d) the time and expense related to the search is ongoing; Plaintiff cannot estimate without first entering into an agreement with Nationstar to use Ohio as the analogue for the FDCPA Nationwide Class, but expects that it will be substantial and will involve a comprehensive review of Nationstar's business/account records; (e) Plaintiff has not employed any experts to identify the class members; only Plaintiff's counsel is actively determining and/or identifying the class members.

Plainly, Defendant's interrogatory did not ask Plaintiff to identify his trial witnesses. Nevertheless, Defendant never sought to resolve Plaintiff's Objection. The deadline to complete class-related discovery expired on November 18, 2016. ECF 32; *accord* ECF 125 at 2. The Court entered its opinion and order on class certification on March 30, 2018. ECF No. 62. And, the Court issued a Supplemental Order modifying the class definitions following appellate

proceedings on May 22, 2019. ECF No. 83. It must be noted further that all discovery, class-related or otherwise closed on April 15, 2020. ECF 94; *accord* ECF 125 at 6-7. However, immediately following the class-certification decision, Defendant engaged in various efforts challenging it in this and the Court of Appeals, and specifically sought to stay case prosecution while the Court resolved the issues it raised.[1] It took more than 18 months following the Court's decision on class certification for Defendant to finally be compelled to produce the class member identification information – which occurred the day before a show cause hearing on October 24, 2019. Defendant was held in contempt for failing to produce the information.

Remarkably, Defendant now makes the argument that after <u>it</u> was compelled to produce the class member identification information on October 24, 2019, Plaintiff was under a discovery obligation to supplement his prior "answer" to Defendant's Interrogatory #7 (sub-item b) by re-delivering the provided list? According to Defendant's logic, because Plaintiff did not give Defendant back a copy of the same list it already produced and had in its possession, the Court should exclude all witnesses called by Plaintiff for trial. ECF 157 at 4-6. Defendant actually states:

> Plaintiff obtained the class information from Nationstar in October 2019 and, apparently, began contacting the members of the class. However, he did not supplement his response to Interrogatory No. 7. See Fed. R. Civ. P. 26(e) (a party is under a duty seasonably to amend a prior response to an interrogatory if the party learns that the response is in some material respect incomplete).

ECF 157 at 4.

Finally, Defendant did not conduct any discovery, written or otherwise after November 18, 2016 and between April 15, 2020. Defendant never presented Plaintiff with any interrogatories designed to require Plaintiff to specifically disclose his trial witnesses. Plaintiff was required to

---

[1] All of these facts were attested to in connection with Plaintiff's Motion To Compel filed this April 2021. ECF 122 and accompanying JEN Declaration and Exhibits.

make his disclosures therefore, on or before October 4, 2021 according to the Court's Order Resetting Trial Date and Settlement Conference. ECF 134 at 4; Fed. R. Civ. P. 26(a)(3)(A)(i), and (B). Defendant's argument in this Corrected MIL that Plaintiff was required to make this disclosure sooner in time is frivolous.

### 2. Bases For Finding Defendant's Argument Frivolous

a. Prior to October 4, 2021, Defendant never asked Plaintiff in discovery or otherwise to produce a list of anticipated trial witnesses.

b. Interrogatory No. 7 plainly does not ask Plaintiff to disclose his trial witnesses. Nor does the question imply that Plaintiff disclose his anticipated trial witnesses.

c. Plaintiff clearly objected to Interrogatory No. 7. Before the expiration of the discovery deadline (before November 18, 2016 or April 15, 2020), Defendant did not seek to resolve Plaintiff's objection. Further, Defendant never sought court intervention to resolve the objection or compel some response if Defendant truly believed it concerned trial witness disclosure.

d. The notion that Plaintiff should supplement Interrogatory No. 7 with the same information Defendant provided under threat of contempt is patently ludicrous. There is a certain level of intellectual dishonesty in this particular argument that deserves a strong rebuke.

e. The presentation of the new argument is untimely. The deadline to file pretrial motions was October 4, 2021. Plaintiff takes no issue with an appropriate amendment, but here, Defendant was forced to recognize the clear misstatement of facts which it falsely claimed supported the original MIL and instead of simply moving on, it made a new argument past the deadline – and a dubious one at that.

f.  After receiving the Corrected MIL, Plaintiff's counsel asked that this part of it be withdrawn. Exhibit D (10/6/2021 email attached). Defendant's counsel demurred. Exhibit E (10/7/2021 email attached).

For these reasons, this aspect of the Corrected MIL should be DENIED, and Plaintiff asks the Court to require Defendant and its counsel to appear and show cause as to why they should not be sanctioned pursuant to Fed. R. Civ. P. 11, at a time and date convenient to the Court.

**B.     Mortgage Loan Recipient Witness Testimony – Completely Relevant**

**1.     Defendant's Position Re: FDCPA Standards And "Extrinsic Evidence"**

As a preliminary matter, Defendant has clearly adopted a "heads I win tails you lose" strategy. Throughout the course of these proceedings, Defendant has championed the Seventh Circuit's reasoning for requiring "extrinsic evidence" to prove whether a communication is "false, deceptive or misleading" under the FDCPA. The Seventh Circuit employs a different standard from the Sixth Circuit – that of the "unsophisticated debtor" as opposed to the "least sophisticated consumer". *Johnson v. Enhanced Recovery Company, LLC*, 961 F. 3d 975, 982 (7th Cir. 2020); compare, *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); citing *Harvey v. Great Seneca Fin. Corp.*, 453 F. 3d 324, 329 (6th Cir. 2006). In the main, the standards are similar in describing the characteristics of a hypothetical interpreter of the communication. And, both legal standards are intended to be objective in nature. Id. See, also, *DeGroot v. Client Services, Inc.*, 977 F. 3d 656, 660 (7th Cir. 2020).

The difference between the two standards[2] lies in the evidence needed to prove an FDCPA case dealing with false, deceptive or misleading representations, where there is some reasonable

---

[2] This is not to mention that at least one other circuit, the Fourth Circuit, employs a "commonsense inquiry" as a seeming adaptation to the Seventh Circuit's "unsophisticated debtor" standard. *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016); citing (citing *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010)).

ambiguity in the communication. *Johnson*, 961 F.3d at 982-83. ("The second category includes those cases where the debt collection language is not deceptive or misleading on its face, but could be construed so as to be confusing or misleading to the unsophisticated consumer. We have held that in these cases, a plaintiff cannot prevail without producing extrinsic evidence, such as consumer surveys, tending to show that unsophisticated consumers are in fact confused or misled by the challenged language".) Id.  While the issue remains factual in nature, even in the Seventh Circuit no extrinsic evidence is needed to show a violation if a communication is clearly misleading. *Pantoja v. Portfolio Recovery Assoc., LLC*, 852 F.3d 679, 686 (7th Cir. 2017); citing *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012), citing *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999).

In the case of ambiguity, the Seventh Circuit requires "extrinsic evidence" as a departure and a "shield" from the "least sophisticated consumer" standard with which it disagrees. *Pantoja*, 852 F. 3d at 983, citing *Gammon v. GC Services, L.P.*, 27 F. 3d 1254, 1257 (7th Cir. 1994) ("We have rejected the `least sophisticated debtor' standard used by some other circuits because we don't believe that the unsophisticated debtor standard should be tied to `the very last rung on the sophistication ladder.'"). Thus, in the Seventh Circuit, if the court found sufficient ambiguity Plaintiff would maintain the burden of proving beyond his own testimony (which could serve as "mere speculation") that he was misled or confused by the Mortgage Loan Statements. Plaintiff would be required to introduce evidence, like a consumer survey, examining the language of the letters to show that they unacceptably increases the level of confusion. *Durkin v. Equifax*, 406 F.3d 410, 415 (7th Cir. 2005) (quoting *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)).

The Sixth Circuit does not employ the Seventh Circuit's methodology. Nonetheless, the Sixth Circuit clearly agrees with the Seventh Circuit that certain FDCPA communications deserve little attention beyond the inspection of the District Judge (e.g. that for those communications clearly not deceptive and those clearly so, such may be resolved as matters of law); see, *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015). But, differing from the Seventh Circuit, the Sixth Circuit states only that: "Generally speaking, "a jury should determine whether the letter is deceptive and misleading." *Buchanan*, 776 F. 3d at 397; citing *Kistner v. Law Offices of Michael P. Margelefsky*, LLC, 518 F.3d 433, 441 (6th Cir.2008); and *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 613 (6th Cir. 2009).

What evidence the jury or fact finder may consider is not narrowly defined in the Sixth Circuit. Beyond questions of admissibility, the Sixth Circuit would, for example, appear to permit evidence that will "materially inform the inquiry". *Buchanan*, 776 F. 3d at 398. Indeed, the Sixth Circuit noted the problem and highlighted that the issue of evidence is being studied by the Consumer Financial Protection Bureau ("CFPB"), but also clearly disabused the idea that "expert testimony" is the "only piece of relevant evidence".[3] Id. The Sixth Circuit's standard of evidence should be interpreted as being broad and inclusive because, unlike the Seventh Circuit, it uses the "least sophisticated standard" not the "unsophisticated debtor" standard. The factfinder should therefore be freely able to view the allegedly offending documents (Mortgage Loan Statements) and come to their own conclusions after measuring the material from the perspective of the least sophisticated consumer. Moreover, the factfinder should be permitted to draw reasonable

---

[3] Most likely because of the nearly prohibitive cost of obtaining it. The Court noted in *Buchanan,* for example as to time-barred debts, that the according to the work of the CFPB "consumers, in some circumstances, may infer from a collection attempt the mistaken impression that a debt is enforceable in court even in the absence of an express or implied threat of litigation". Id. The CFPB anticipates establishing empirical data and analysis that will assist fact finders. Thus, evidence in the form of CFPB studies, bulletins and commentary may be come useful. Id.

9

inferences from the testimony of witnesses who actually received the Mortgage Loan Statements. And, finally, the factfinder should be freely permitted to see, hear and weigh the survey results and testimony of Plaintiff's expert in coming to a conclusion. Each of these "pieces" of evidence "materially inform the inquiry". *Buchanan*, 776 F. 3d at 398.

Defendant however would limit "extrinsic evidence" to only the testimony of an expert or a "responsible survey". ECF 157 at 10. Defendant even ignores or "does not concede" the Seventh Circuit's clarifications regarding the types of permissible "extrinsic evidence" required. ECF 157 at 10; FN 5. Judge Posner, one of the most respected and recognized jurists in the Seventh Circuit, could not have been more clear when he explained:

> When it is neither clear that a challenged statement is misleading nor clear that it is not, the question whether it is misleading is one of fact, e.g., *Evory v. RJM Acquisitions Funding L.L.C.*, supra, 505 F.3d at 776; *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1059-61 (7th Cir.1999); *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501, 503-04 (7th Cir.1999), and ordinarily, as these cases explain, the best evidence is a responsible survey. **But it is not the only possible evidence**. *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414-15 (7th Cir.2005); *Johnson v. Revenue Management Corp.*, supra, 169 F.3d at 1060-61. **Recipients of an allegedly misleading dunning letter can testify that they were misled, and if they are shown to be representative unsophisticated (or, a fortiori, sophisticated) consumers**, the trier of fact may be able to infer from their testimony that the letter is misleading within the meaning of the Fair Debt Collection Practices Act. *Evory v. RJM Acquisitions Funding L.L.C.*, supra, 505 F.3d at 774; *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 948 (7th Cir. 2004).

*Muha v. Encore Receivable Management, Inc.*, 558 F. 3d 623, 628 (7th Cir. 2009) (emphasis added).

Yet remarkably and incorrectly, Defendant would suggest that Judge Posner intended to require a consumer to present such recipient-witness testimony only after her or she has first obtained a survey or expert. ECF 157 at 10; FN 5. While the Sixth Circuit requires no such strict requirements for evidence, the Seventh Circuit does not confine evidence simply to surveys or

experts – the Seventh Circuit finds value, as it should, in the perception testimony of the recipients who received the letters.

Here, Plaintiff's evidence is relevant. The jury should be permitted to be informed by all of the sources of evidence identified because they are "material to the inquiry" – whether a least sophisticated consumer would view the Mortgage Loan Statements as collection and would, at least, be confused by the conflicting statements contained in them. The anticipated testimony of the recipients of the Mortgage Loan Statements will be purely relevant because it will be of consequence to the action and will have the tendency to make the fact that such communications were in the nature of collection and misleading much more probable than without it. Fed. R. Evid. 401.

Aside from Dr. Saperstein and A.J. Loll (Defendant's representative), the testimony of each of the other listed witnesses is based upon the each person's actual receipt of the same Mortgage Loan Statements. For the reasons set forth below they should not be excluded pursuant to Fed. R. Evid. 403.

### 2. Testimony of the Recipients of Mortgage Loan Statements

Defendant breaks down Plaintiff's witness disclosures into three (3) categories, (i) Class Members; (ii) Kim Vanamann; and (iii) Henry Farrin. ECF 157 at 6-12. Yet, each of the persons identified are people who simply received the same form Mortgage Loan Statements under the same or similar circumstances as Plaintiff. Plaintiff will start with the members of the class and then address the circumstances of Kim Vanamann and Henry Farrin

Plaintiff disclosed many persons who Defendant identified as being members of the Class or Classes, and who maintain a residence in Ohio. Plaintiff's counsel reached out to each of these persons. It is currently undetermined how many will actually participate at the trial. Plaintiff did

11

not issue subpoenas to compel anyone's appearance. At this point, Plaintiff expects no less than four (4) people to testify (not including Ms. Vanamann and Mr. Farrin), but is continuing to make arrangements for more – but only from those witnesses disclosed.

Even under the Seventh Circuit's standard of evidence, the testimony of these actual recipients of the Mortgage Loan Statements can allow a jury to infer from their testimony that the Mortgage Loan Statements were in the nature of collection and misleading. *Muha*, 558 F. 3d at 628. Their testimony will not present any of the circumstances which might necessitate exclusion under Fed. R. Evid. 403.

Their testimony concerns the same actual Mortgage Loan Statement in question. The jury will not be confused or misled because they will be shown the same forms as each person received them. Plaintiff expects to probe only the facts, and focus on each witnesses' impressions and perceptions about the Mortgage Loan Statements at the times he or she received them. Plaintiff does not intend to explore the effects the Mortgage Loan Statements had on each witness, or seek to inflame the emotions of the jury as Defendant figures. The jury will simply hear testimony that will consistently reveal that to each of these persons at the time they received them, the Mortgage Loan Statements were perceived as billing statements and caused, at the very minimum, confusion as to whether payments needed to or should be made in light of each's witness' bankruptcy discharge. Thus, any prejudice to Defendant will only come from the straight-forward, probative factual application and not from some inflamed sense of emotion and therefore is not unfair. Unfair prejudice" . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *U.S. v. Whittington*, 455 F. 3d 736, 739 (6th Cir. 2006), citing, *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L.Ed.2d 574 (1997) (quoting Fed. R. Evid. 403, advisory committee note).

### 3. Kim Vanamann

Ms. Vanamann's case is well-chronicled in the reported decision of *In re Vanamann*, 561 B.R. 106 (Bankr. D. Nev. 2016). Technically, Ms. Vanamann is not a member of the class[4], but she undisputedly received the same form Mortgage Loan Statements in circumstances similar to Plaintiff's case. Contrary to Defendant's assertions, much of the factual scenario giving rise to Ms. Vanamann's complaint against Nationstar was identical to Plaintiff's. Defendant would suggest that there is a distinction because Ms. Vanamann did not "own" the property in question at the time she received the Mortgage Loan Statements – because the bankruptcy trustee in her bankruptcy case recognized equity in the property and sought to sell it. ECF 157 at 9. Defendant points to a factual difference that has no bearing on the matter. The bankruptcy estate simply recognized the equity in the property, and eventually sold the bankruptcy estate's interest in it for $3,000.00 subject to all liens. *Vanamann*, 561 B.R. at 110. Nevertheless, Ms. Vanamann surrendered and vacated the property. The fact that Ms. Vanamann's property was sold by the estate does not detract from the fact that she received the same form Mortgage Loan Statement, or that she can testify as to her impressions and perceptions of the same. Moreover, Mr. Loll testified in the case that Defendant did not know that the property was sold when it sent Ms. Vanamann the communications. *Vanamann*, 561 B.R. at 117. The fact that it was sold and that Defendant contacted her after, was not determinative as to whether Defendant violated Ms. Vanamann's discharge because Defendant was charged with knowledge of Ms. Vanamann's bankruptcy filing, and the court ruled that the statements sought collection of money. Id., at 125-26.

Ms. Vanamann will testify factually, and unless permitted, will not discuss the effect the statements had on her. The concentration will be on her perceptions and impressions of the content

---

[4] For unknown reasons, Ms. Vanamann or her counsel did not file a statement of intention. She did surrender and leave the property.

of the Mortgage Loan Statements she received. Ms. Vanamann is not testifying because she is seeking inflame the emotions of the jury. She understands that many people were affected by Defendant's actions and is willing to provide her testimony to share her impressions. For the reasons stated, her testimony is relevant and not unfairly prejudicial.

### 4. Henry Farrin

In 2015, Henry Farrin sued Defendant for substantively similar violations of the FDCPA after his bankruptcy discharge and after he surrendered and left his residence in New Hampshire. Mr. Farrin received the same Mortgage Loan Statements. *Farrin v. Nationstar Mortgage, LLC*, 1:15-cv-00102 (D. N.H. 2015). Mr. Farrin settled his case, but for unexplained reasons, he did appear on the class list generated by Defendant. The settlement agreement and release does not, in any way prevent him from freely discussing his perceptions and impressions of the Mortgage Loan Statements. The parties' agreement simply requires that he keep the amount of the settlement payment confidential. No testimony will go to that issue. Like Ms. Vanamann, Mr. Farrin recognizes that Defendant's use of the Mortgage Loan Statements was widespread and he is willing to provide his testimony of his impressions and perceptions of them. His testimony is relevant and not unfairly prejudicial and should not be excluded.

WHEREFORE, Plaintiff requests that Defendant's Corrected MIL (ECF No. 157) be DENIED, and for any other relief applicable in reference to Defendant's argument that exclusion is warranted because of Plaintiff's alleged nondisclosure.

Respectfully submitted,

/s/ James E. Nobile
James E. Nobile (0059705)
Eric E. Willison (0066795)
NOBILE & THOMPSON CO., L.P.A.
285 S. Liberty St. Suite 1D
Powell, Ohio 43065
(614) 529-8600 PH1
(614) 300-2764 PH2
jenobile@ntlegal.com
Class Counsel

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and authentic copy of the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S CORRRECTED MOTION IN LIMINE [ECF 157] was served upon the below listed individuals by email and through the ECF/CM system on this 11th day of October 2021.

D. Kyle Deak    kyle.deak@troutman.com

Stephen A Weigand    sweigand@ficlaw.com

/s/ James E. Nobile
James E. Nobile (0059705)
Eric E. Willison (0066795)
NOBILE & THOMPSON CO., L.P.A.
285 S. Liberty St. Suite 1D
Powell, Ohio 43065
(614) 529-8600 PH1
(614) 300-2764 PH2
jenobile@ntlegal.com
Class Counsel