**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES D. MCNAMEE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. C2:14CV1948 |
| | : | |
| NATIONSTAR MORTGAGE, LLC, | : | JUDGE ALGENON L. MARBLEY |
| | : | Magistrate Judge Vascura |
| Defendant. | : | |

## PLAINTIFF'S TRIAL BRIEF

Pursuant to this Court's Order Resetting Trial Date and Settlement Conference (ECF 134), Plaintiff, CHARLES D. MCNAMEE ("Mr. McNamee") provides the following Trial Brief.

Respectfully submitted,


/s/     James E. Nobile
James E. Nobile (0059705)
Eric E. Willison (0066795)
NOBILE & THOMPSON CO., L.P.A.
285 S. Liberty St. Suite 1D
Powell, Ohio 43065
(614) 529-8600 PH1
(614) 300-2764 PH2
jenobile@ntlegal.com
Class Counsel

## I. STATEMENT OF MATERIAL FACTS

The facts are not in dispute. Most of the facts have been considered and applied to elements of Plaintiff's case through the parties' respective motions for summary judgment. The facts and citations therefor are found in the multitude of a papers, declarations, documents and affidavits filed in this case. As noted below, the jury trial has been reduced to three (3) issues. As such, the below recitation is abbreviated and simplified for the sake of clarity and scope.

For a host of personal and medical reasons, Mr. McNamee and his spouse filed for Chapter 7 bankruptcy in May 2012 seeking a fresh start. One major problem for Mr. McNamee was that his family could no longer afford to pay for what they described as their "dream home". The decision to file bankruptcy and move was, to say the very least, extremely difficult. After filing his bankruptcy case, Mr. McNamee informed his mortgage lender, Bank of America, N.A., of his intention to surrender what was his former residence. By the end of June 2012, Mr. McNamee and his family moved from the property. Mr. McNamee received his bankruptcy discharge on September 25, 2012.

As many Chapter 7 debtors are instructed, the discharge of debts secured by property (real or personal) surrendered in the case does not extend to the lien on the property. Liens and mortgages on surrendered property pass through unaffected. In other words, a bankrupt debtor does not get surrendered secured property for free. Generally speaking, a disposition of the property occurs at some point. If there is equity in the property, a bankruptcy trustee may even dispose of it to pay off the liens and mortgages and pay over the remainder to the unsecured creditors. For assets not disposed of by the trustee, in the case of real estate, depending on the state in which the real estate is located, the mortgage creditor will cause the property to be sold by

foreclosure or similar proceedings. In Mr. McNamee's case, his former residence had no realizable equity, and he expected his mortgage lender to eventually foreclose.

By mid-December 2012, Mr. McNamee learned that Bank of America, N.A. assigned its mortgage on the property to Defendant, Nationstar Mortgage, LLC ("Nationstar"). Mr. McNamee saw this development in a somewhat positive light, because progress was being made towards his former property being sold in foreclosure. Like anyone, Mr. McNamee placed value on finality. At about that time, Mr. McNamee and his spouse were beginning to feel the positive effects of their fresh start, and were on the financial mend.

However, at the beginning of January 2013, Mr. McNamee's mending upended and his life was thrown into turmoil.

Mr. McNamee received a letter dated 12/31/2012 that informed him that Nationstar was seeking to collect $22,439.32 in past-due payments. In immediate response, Mr. McNamee called Nationstar at the number listed on 1/7/2013 to understand why he received the letter. Mr. McNamee was given the run-around, leaving Mr. McNamee emotionally distraught. Mr. McNamee specifically informed Nationstar that day that he did not want any further contact and nothing to do with Nationstar. The simple fact of this telephone conversation and its meaning is found in Nationstar's own business records.

Yet, for the next 24 months, Mr. McNamee received documents entitled "Mortgage Loan Statement". Among other things, each of the statements had the following observable characteristics:

    a.    Provides a breakdown of "Amounts Payable";
    b.    Informs the recipient about "Unpaid Monthly Payments";
    c.    Informs the recipient about "Unpaid Late Charges";
    d.    Expresses an "Amount Due" with a caveat that the "amount does not include any payments made, or fees and charges that may have been incurred and/or added to your account after the date of this statement";

e. Provides a "Payment Due Date";
f. Provides a "Lender Paid Expense Summary" that includes legal fees, property inspections and maintenance charges;
g. Provides a detachable payment coupon that further states a "Total Amount Due"; an increased amount for a "Payment Due If Received On Or After" another date; and a fill-in box to disclose the "Total Amount Of Your Check";
h. Provides a return payment envelope;
i. Provides on the reverse side of the statement an entire section labeled "Important Payment Information" with a capitalized statement "DO NOT DELAY PAYMENT";
j. Provides on the reverse side of the statement a warning that "late payments, missed payments or other defaults may be reflected on your credit report"; and "we may report information about your account to credit bureaus; and
k. Provides on the reverse side of the statement another entire section labeled "Payment Options" to describe how payments may be made by mail, auto-pay, online, speed pay by phone, Moneygram, and Western Union.

While Mr. McNamee received many other types of communications from Nationstar following January 2015 until his former home was sold in July 2018, nearly five (5) years following the commencement of his first legal action, Mr. McNamee's trial is about the statements contained in the Mortgage Loan Statements, and the conduct of Nationstar in sending them. Mr. McNamee sued Nationstar for relief under the Fair Debt Collection Practices Act ("FDCPA") found at 15 U.S.C. §1692 et seq.

These Mortgage Loan Statements were in the nature of collection, and falsely represented that money was still owed after Mr. McNamee surrendered and vacated the property, and after he received his bankruptcy discharge. As a result of receiving them each month for two (2) years, Mr. McNamee suffered emotional distress.

Nationstar maintains that the Mortgage Loan Statements are only informational in nature because they included a passive disclaimer buried in the center of the first page. The so-called disclaimer ("Disclaimer") says:

> This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a, or demand for payment from, any individual protected by the United States Bankruptcy Code. If this account is active or

has been discharged in a bankruptcy proceeding, be advised this communication is for informational purposes only and is not an attempt to collect a debt. Please note, however Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation.

The effect of this Disclaimer, says Nationstar, makes the Mortgage Loan Statements not actionable under the FDCPA. Even if they are, Nationstar argues that Mr. McNamee did not suffer recoverable emotional distress damages.

The following brief argues Plaintiff's position on the three (3) issues that will come before the jury, and covers certain areas Plaintiff believes may require additional Court consideration or decision.

## II. ISSUES PRESENTED

### A. At Least One Purpose Of The Mortgage Loan Statements Was To Make It More Likely That Mr. McNamee Would Send Nationstar Money

The threshold issue is whether the monthly Mortgage Loan Statements sent to Mr. McNamee constitute actionable communications for the purpose of 15 U.S.C. §1692e. First, however, it must understood that the FDCPA broadly defines what a "communication" is in the statute. Under the statute, a "communication" means the <u>conveying of information</u> regarding a debt directly or indirectly to any person through any medium. 15 U.S.C. §1692a(2)(emphasis added). Every letter that concerns a debt technically conveys "information". Id. However, in order to get to the step of determining whether the information conveyed is false, deceptive or misleading under 15 U.S.C. §1692e, the communication must be one that is sent "in connection with the collection of a debt".

Controlling law in this jurisdiction resolves this issue by examining the "animating purposes" of the communication to determine if at least one of them is to make payment on the debt more likely. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). In

2014, the Sixth Circuit clarified the standard by stating that, stating that it is necessary "to look beyond the letter's general purpose and ask **whether it is plausible that <u>any</u>** animating purpose of the letter was to induce some form of payment". *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 505 (6th Cir.2014) (emphasis added).

The following additional tenets inform the understanding and guide the decision:

1. A communication may have many purposes. *Estep*, 552 F. App'x at 505.

2. A communication who purpose is to make payment more likely is dual in nature in that it also provides information. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012).

3. A communication need not seek collection of a debt, it need only be connected to one. (For example, a communication could refer to a different communication that is in the nature of collection). *Grden*, 643 F.3d at 173.

4. Animating purpose does not require a showing of an "express demand for payment". *Grden*, 643 F.3d at 173.

5. A communication that is not itself a collection attempt, but that aims to make payment more likely to succeed, is one that has the requisite connection. Grden, 643 F.3d at 173, agreeing with *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir.2010)

The communications at issue (Mortgage Loan Statements) contain a Disclaimer that self-servingly states that if the recipient's debt has been discharged in bankruptcy the communication is to only be viewed as informational. Given the multitude of other messages in the communication that give the clear and unambiguous impression that money is due, the Disclaimer is rendered ineffective. Stated another way, the Disclaimer falls under the weight of the collection aspects and/or is wholly overshadowed by such messages. Nevertheless, because the Disclaimer exists, there is *some* argument, however frail it might be, that a purpose of the communication is informational. While it should be equally clear on observation alone that at least one purpose of the Mortgage Loan Statements is to make payment more likely given the weight of the payment related messaging contained in the documets, the question is one of fact for the jury. The jury in

6

this case, in addition to understanding the above tenets, may engage in an analysis of certain factors to further assist their decision-making process. *McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 370–71 (E.D. Mich. 2011), cited favorably in *Goodson v. Bank of America, N.A.*, 600 F. App'x 422, 431 (6th Cir. 2015). The following factors may be considered:

> (1) the nature of the relationship of the parties;
> (2) whether the communication expressly demanded payment or stated a balance due;
> (3) whether it was sent in response to an inquiry or request by the debtor;
> (4) whether the statements were part of a strategy to make payment more likely;
> (5) whether the communication was from a debt collector;
> (6) whether it stated that it was an attempt to collect a debt; and
> (7) whether it threatened consequences should the debtor fail to pay

Here, Plaintiff evidence will consist of the testimony of Mr. McNamee, a 1000 person objective survey, the testimony of actual recipients of the Mortgage Loan Statements, and the jury's own view of the documentation.

Mr. McNamee's only relationship with Nationstar was consumer – debt collector. The Mortgage Loan Statements clearly state that amounts are due in several places. Mr. McNamee never asked Nationstar to send them, and to the contrary, he informed Nationstar that did not want any further contact <u>before</u> Nationstar sent him 24 monthly Mortgage Loan Statements. Mr. McNamee was of course under no legal obligation to even make such a call. But, given the weight of the payment inducing messaging, and the fact that Nationstar ignored Mr. McNamee's demand to be left alone, the sending of the Mortgage Loan Statement were part of a strategy to attempt to make Mr. McNamee pay. Nationstar is by all accounts a debt collector. The Mortgage Loan Statements contain a Disclaimer that states that it is not in the nature of collection, but in addition to the many "payment due" messages contained on both sides of the communication, the Mortgage Loan Statements also threaten consequences for delaying payment such as accumulation of late

7

charges, application of money received only to accumulating interest, and reporting the recipient to the consumer credit bureaus for late payments and being delinquent. These factors overwhelmingly favor Mr. McNamee's position.

Based upon all of these considerations when read as whole, at least one "animating purpose" of the Mortgage Loan Statements was in the nature of collection. They are therefore actionable as communications under the FDCPA. They violate the statute, if, when viewed from the objective perspective of the "least sophisticated consumer", they make false, deceptive and misleading statements. 15 U.S.C. §1692e.

### B. In Personam / In Rem Rights

In their simplest interpretation, the Mortgage Loan Statements falsely represent that Mr. McNamee still personally owed money on the debt described in them. In several places, the communications sent to him state that there are "Total Amounts Due" in significant dollar amounts (e.g. $29,111.05 described as "past due"). The communications provide a payment coupon and a return payment envelope. However, Mr. McNamee's personal financial obligations on the debt are $\underline{\$0.00}$ by virtue of his lawful Chapter 7 bankruptcy discharge. This contradiction should be considered inescapable even from the eyes of the most sophisticated person. Yet, Nationstar, relying on the Disclaimer, states that information is somehow necessary to inform Mr. McNamee that money is still owed *in rem*. Nationstar's argument is and has been a corruption of U.S. Bankruptcy law.

Before getting into the standards and evidence which establish that Nationstar violated the FDCPA under §1692e, Nationstar's long-made argument needs to be disabused because it will likely come up during the trial.

### 1. In Rem "Obligation" Is Limited Solely To Proceeds Recovered From Disposition Of Surrendered Property

In its efforts to lend legitimacy to the argument that the Mortgage Loan Statements are only informational as suggested in the Disclaimer, Nationstar has consistently posited that bankruptcy debtor who surrendered his residence needs to be informed of what Nationstar suggests is his personal "*in rem* obligation" which, according to Nationstar, further continues to exist after discharge.

The problem with Nationstar's argument is that it falsely impresses a personal obligation on the debtor (*vis a vis* former money owed) that simply no longer exists. Only the property itself has an obligation, *in rem*, to retire, wholly or partially, the once existing monetary debt – there is no lawful connection to the debtor unless the debtor has reaffirmed the obligation. 11 U.S.C. §524(c). As any regular U.S. Bankruptcy law practitioner knows, liens do generally pass through bankruptcy unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). Surrendered property that is not otherwise disposed by a bankruptcy trustee will revert as *in rem* ownership (title) to the debtor after stay relief, abandonment and/or case closing. 11 U.S.C. §§362, 541, and 554. Holding *in rem* title to the property does not create, in any way, further financial obligation <u>to a mortgagee or lien holders</u>. 11 U.S.C. §524. Until the property is sold, a bankrupt debtor holding *in rem* title may have certain property ownership obligations to take care of the property, but such property obligations do not extend to paying amounts once owed to the lien holders, or even being informed as to what money was formerly owed. Id.

The suggestion otherwise is sophistry. This is made clear in the seminal decision of *Johnson v. Home State Bank*, 501 U.S. 78 (1991)[1]. *Johnson* states succinctly the nature of a mortgagees "*in rem*" rights:

> Section 502(b)(1) contemplates circumstances in which a "claim," like the mortgage lien that passes through a Chapter 7 proceeding, may consist of <u>nothing more than an obligation enforceable against the debtor's property</u>

*Johnson*, 501 U.S. at 85 (emphasis added). While such an *in rem* claim exists and is considered an enforceable obligation <u>of the debtor</u> under the broad interpretation of the term claim under the Bankruptcy Code, the Supreme Court put to rest any notion that a mortgagee's rights extends to anything beyond recovery of foreclosure proceeds from the property itself. The Court held:

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" <u>in the form of its right to the proceeds from the sale of the debtor's property</u>. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation.

*Johnson*, 501 U.S. at 84 (emphasis added).

Nationstar's need to provide information to Mr. McNamee about the amounts that were once due on the debt is not fairly supported by reference to *Johnson* or its progeny. Nationstar's sole remedy to recover was disposition of the property itself. If that disposition (such as through foreclosure) required notice to Mr. McNamee there is no objection unless the notice gave the false impression that Mr. McNamee continued to personally owe money. See, for example, *Rainier v. Law Offices of John D. Clunk Co., L.P.A.*, No. 2:13-CV-1173, 2017 WL 9439263 (S.D. Ohio Sept. 22, 2017).

---

[1] *Johnson* concerned the definition and scope of a mortgage creditor's "claim" in bankruptcy for the purposes of serial bankruptcy filings. In discussing the attributes of a claim, the Court ruled that "it must allow the claim if it is enforceable against either the debtor <u>or his property</u>"; making the distinction between *in personam* and *in rem* rights. *Johnson*, 501 U.S. at 85.

Nationstar will likely continue to attempt to find cover by arguing that it was only providing information as to Mr. McNamee's so-called "in rem obligation". But, again, there can be no refuge because Nationstar's sole remedy was and always has been limited to the proceeds it would recover in foreclosure which does not require that Mr. McNamee be personally informed that amounts (in any number) are or were once due.

This argument dispensed with, the evidence will establish that the statements contained in the Mortgage Loan Statements were false, deceptive and misleading. The jury will be instructed on certain standards to inform and guide their decision.

### C. FDCPA §1692e Standards To Determine If Statements Contained In The Mortgage Loan Statements Are False, Deceptive or Misleading.

#### 1. Materiality

While not expressly stated in the statute, the Sixth Circuit has clarified its interpretation of §1692e to require a finding of materiality. *Wallace v. Washington Mutual Bank, F.A.*, 683 F. 3d 323, 326-27 (6th Cir. 2012). "Whether a debt collector's actions are false, deceptive, or misleading under §1692e is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006). In addition, in applying this standard, we have also held that a statement must be materially false or misleading to violate Section 1692e. *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596-97 (6th Cir. 2009) (applying a materiality standard to a §1692e claim that was based on alleged misstatements in legal pleadings). The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer.

Plaintiff's evidence consists of the perceptions of several actual recipients of the same Mortgage Loan Statement forms and 1000 person real-world survey. The survey offers the

viewpoints of a statistically broad and diverse group of actual consumers about whether the communications stated that money was due or simply provided information. At least 70% said both, which at first blush, may appear to go solely to the issue of "animating purpose". However, the survey switched to open-end questioning for those who stated that the communications indicated that money was owed or were in the nature of both collection and provided information. There are nearly 700 sets of comments that suggest that, at best, the Mortgage Loan Statements are confusing and at worst, were an intentional scam perpetrated by Nationstar to trick people like Mr. McNamee in making payments when he did not have to.

## 2. "Least Sophisticated Consumer Test"

The question of whether statements contained in collection communications are false, deceptive or misleading is not, ultimately, subjective. *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 756 (6th Cir. 2020). While a jury may make reasonable inferences from the testimony of recipients who actually received the Mortgage Loan Statements, the judgement must be objectively determined from the perspective of the "least sophisticated consumer". *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir.2006); *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008).

> As noted in the Sixth Circuit:
>
> The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.' [Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.1993).] `This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes.' Id. at 1319. The standard thus serves a dual purpose: `it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.' Id. at 1320.

*Gionis v. Javitch, Block, Rathbone, LLP*, 238 Fed.Appx. 24, 28 (6th Cir.2007).

A least sophisticated consumer is someone with a rudimentary or basic level of understand about the world and who is willing to read a document with some care. As held in *Federal Home Loan Mortgage Corp. v Lamar*, 503 F. 3d 504, 509-510 (6th Cir. 2007) (emphasis added):

> The least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor. *Computer Credit*, 167 F.3d at 1054 (internal punctuation and citation omitted). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993). "[A]lthough this standard protects naive consumers, it also `prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir.2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir.1996)).

### 3. A "Least Sophisticated Consumer" Does Not Take On Additional Knowledge Or Attributes Of The Actual Recipient

One major aspect of Nationstar's argument against liability is that because Mr. McNamee (and perhaps the 31,000 class members) went through bankruptcy and possibly had attorneys, they should therefore have "known" that they did not owe the money. As such Nationstar claims, it would be irrational or bizarre for them to conclude that they were deceived by the statements in the Mortgage Loan Statements. Nationstar relies heavily on the theory that a "least sophisticated consumer" takes on the attributes and knowledge of the consumer. Logically, this stands in contradiction to the reasoning for having an objective standard. After all, Mr. McNamee's or another Class member's knowledge could be far ranging and exceptional by anyone's standards, but the reality is that imputation of such knowledge alters the test to a subjective one.

But, simply put, Nationstar's argument that this set of additional attributes is required is found nowhere in Sixth Circuit law. To the contrary, the Sixth Circuit has recently cautioned against attempting to add attributes to the objective standard. In *Cagayat*, the Court reversed a District Court for attempting to impute into the standard, certain actual knowledge to the actual

13

consumer in visualizing (unreasonably in the District Court's mind) certain terms that appeared upside down an glassine window of collection letter envelope. *Cagayat*, 952 F. 3d at 756-757. The Court held:

> Indeed, no outside research, consultation, special knowledge, or significant effort would be required to know the nature of the Letters. *DeCraene*, 300 F. Supp. 3d at 981-82 (rejecting an attempt to add a research element to the least sophisticated consumer analysis, as it would require courts to look beyond what is "on the envelope").

Id.

Having covered the preliminary standards for making a liability determination, the question becomes whether Nationstar, under such standards, violated provisions of §1692e. The evidence will establish that by using and disseminating the Mortgage Loan Statements, the statements contained therein were false, deceptive or misleading.

### D.  Violations of Section 1692e(2)(A), (5) and (8)

#### 1.  Representing That Money Is Owed On A Debt That Has Been Discharged Is False Because It Misrepresents The Character, Amount And Legal Status Of The Debt

The evidence will show that the Mortgage Loan States are in the nature of collection and make multiple statements that money, in varying, but large dollar amounts is owed or due. Under §1692e(2)(A), statements contained in communications made in connection with collection of a debt are false, deceptive or misleading if they falsely represent the character, amount, or legal status of any debt. 15 U.S.C. §1692e(2)(A). As discussed above, Mr. McNamee owes $0.00 by virtue of his legal bankruptcy discharge. Yet, the monthly Mortgage Loan Statements sent to him states that significant dollar amounts are due. It is unlawful for a debt collector to falsely represent the character, amount or legal status of a debt during collection. Id.

Stating that a consumer continues to owe money on a debt that has been discharged in bankruptcy is simply, false. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("A demand

for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is "false" in the sense that it asserts that money is due…."); *Ross v. RJM Acquisitions Funding, LLC*, 480 F.3d 493, 495 (7th Cir. 2007) ("Dunning people for their discharged debts would undermine the "fresh start" rationale of bankruptcy (bankruptcy as a system of debtors' rights as well as creditors' remedies), and is prohibited by the Fair Debt Collection Practices Act, which so far as relates to this case prohibits a debt collector (a defined term) from making a "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Although not aimed specifically at efforts to collect debts that have been discharged in bankruptcy, this provision fits that practice to a T").

> **2. The Mortgage Loan Statements Inform That They Are Charging Late Fees Which Is False Deceptive And Misleading Because It Is No Longer Legal To Make Such Charges Against Mr. McNamee**

The evidence will further show that the Mortgage Loan Statements mean what they say. They each provide an "Amount Payable" section that states that late charges are unpaid and are due. Late charges for each successive month are set forth on the Mortgage Loan Statements and tacked on to the total balance.

But §1692e(5) makes it a violation to take any action that cannot be legally taken. These Mortgage Loan Statements represent that they are charging late fees. Because Mr. McNamee's personal financial obligations under the Note have been discharged, he is no longer liable for the debt much less accruing late fees which would otherwise be contractually due under the Note. At the time of the Mortgage Loan Statements, Nationstar had no legal right to apply late charges under the Note because they were sent after Mr. McNamee's discharge. Simply, Nationstar has no further legal right to enforce the Note. *Rainier v. The Law Offices of John D. Clunk Co., L.P.A.*, Case No. 2:13-cv-01173-MHW-KAJ, ECF 84 (S.D. Ohio 2017).

Because the Mortgage Loan Statements state that they are charging late fees when Nationstar has no right to them under the Note, such statements are false.

### 3. The Mortgage Loan Statements Improperly Threaten That Nationstar May Report Late Payments And Other Defaults To Credit Bureaus

As with threatening to take actions that cannot be legally supported, it is considered false, deceptive and misleading to threaten to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. §1692e(8). Nationstar knew or should have known that payments were no longer due as set forth above. However, the reverse side of each of the Mortgage Loan Statements states specifically in a highlighted box that "**Late Payments, missed payments or other defaults may be reflected on your credit report**". This gives the least sophisticated consumer the false impression that Nationstar is communicating with the credit bureaus this information. The information suggested is absolutely false. There are no late payments, missed payments or other defaults to lawfully report to the credit bureaus, thus such reports cannot legally reflect such statements.

### E. Actual Damages For Emotional Distress

Mr. McNamee suffered actual damages in the form of emotional distress. His distress was severe and more than transitory because he was made to relive it for more than 24 months. Under controlling Sixth Circuit precedent, Mr. McNamee testimony alone may suffice to permit a verdict in favor.

The FDCPA does not require a plaintiff to satisfy the state law elements of emotional distress in order to recover damages. *Rainier v. Law Offices of John D. Clunk Co., L.P.A.*, No. 2:13-CV-1173, 2017 WL 9439263, at *11 (S.D. Ohio Sept. 22, 2017). If Mr. McNamee offers a reasonable explanation about the circumstances of the distress and not just conclusory statements to establish that his distress is connected to the Mortgage Loan Statements. Id. *Miller v. Prompt*

*Recovery Servs., Inc.*, No. 5:11CV2292, 2013 WL 3200659, at *13 (N.D. Ohio June 24, 2013) (quotations and citations omitted). As noted for many years in this jurisdiction, the FDCPA's drafters were greatly concerned about emotional harms inflicted by abusive debt collectors. The Congressional findings note that abusive debt collection causes "marital instability" and "invasions of individual privacy" along with economic harms like "personal bankruptcies" and "loss of jobs." 15 U.S.C. § 1692(a). *Davis v. Creditors Interchange Receivable Mgt.*, 585 F. Supp. 968, 973 (N.D. Ohio 2008). Congress expressed great concern for emotional harms caused by the communications and acts of debt collectors. Id.

Mr. McNamee will provide a detailed and honest account of his emotional state for the two year period during which he was made to receive and read the monthly Mortgage Loan Statements. The jury considering his testimony may freely award him any sum it deems fit to compensate him for Nationstar's actions.

### III.     ANTICIPATED ISSUES

Many of Plaintiff's concerns were addressed and ruled upon in pretrial motion practice and need not be considered further in this brief. However, it does appear that Nationstar may be permitted to explore its internal reasons or intentions for disseminating the subject Mortgage Loan Statements.

Plaintiff concludes by stating that he did not engage in discovery aimed at Nationstar's defenses related to bona fide error under 15 U.S.C. §1692k(c) or other state and Federal laws. Nationstar waived these arguments in lieu of providing the discovery. Accordingly, to the extent there is latitude given to Nationstar to explore these areas during its presentation, Plaintiff asks that care be given to avoiding jury confusion or conflict with the Court's charging instructions. Nationstar should not be seen to advance a legal defense around its internal working or intentions

because it has waived such defenses. Moreover, the bona fide error defense found in 15 U.S.C. §1692k(c) requires a finding of liability before such information becomes relevant. Plaintiff asks the Court to monitor this area of inquiry with Plaintiff as the trial progresses.

## IV. **CONCLUSION**

For the reasons stated herein, Plaintiff seeks a verdict finding Nationstar liable under the FDCPA based upon its monthly dissemination of the Mortgage Loan Statements, inclusive of a monetary judgment commensurate with Plaintiff's emotional distress damages.

Respectfully submitted,

/s/ James E. Nobile
James E. Nobile (0059705)
Eric E. Willison (0066795)
NOBILE & THOMPSON CO., L.P.A.
285 S. Liberty St. Suite 1D
Powell, Ohio 43065
(614) 529-8600 PH1
(614) 300-2764 PH2
jenobile@ntlegal.com
Class Counsel

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and authentic copy of the foregoing PLAINTIFF'S TRIAL BRIEF was served upon the below listed individuals by email and through the ECF/CM system on this 15th day of October 2021.

D. Kyle Deak    kyle.deak@troutman.com

Stephen A Weigand    sweigand@ficlaw.com

                              /s/     James E. Nobile
                              James E. Nobile (0059705)
                              Eric E. Willison (0066795)
                              NOBILE & THOMPSON CO., L.P.A.
                              285 S. Liberty St. Suite 1D
                              Powell, Ohio 43065
                              (614) 529-8600 PH1
                              (614) 300-2764 PH2
                              jenobile@ntlegal.com
                              Class Counsel