IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES D. MCNAMEE, et al.,** | : | |
| | : | **Case No. 14-1948** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **NATIONSTAR MORTGAGE LLC,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER ON MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT & FEE AWARD

This matter is before this Court on the parties' Joint Motion for Settlement and Entry of Scheduling Order – Preliminary Approval. (ECF No. 181). A preliminary fairness hearing was held on November 12, 2021. (ECF No. 182). For the following reasons, this Court **GRANTS with modifications** the parties' Motion and preliminarily **APPROVES** the Settlement Agreement (ECF No. 181-1). Furthermore, Class Counsel's Application for Fees and Expenses (ECF No. 183) is preliminarily **GRANTED with modifications**.

## I.    BACKGROUND

Named Plaintiff Charles McNamee brought this class action against Defendant Nationstar Mortgage LLC ("Nationstar") on October 17, 2014, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"). (*See generally* ECF No. 1). The Complaint sought both a finding that Nationstar's conduct violated the FDCPA as well as a judgment for statutory damages, costs, and attorney's fees. (*Id*. at 11–12). Mr. McNamee claims Nationstar improperly sent him, and those similarly situated, mailings relating to mortgages that had been discharged in bankruptcy. (*See generally id*.).

Nationstar filed a partial Motion to Dismiss along with its Answer on January 12, 2015. (ECF Nos. 2, 3). On September 4, 2015, this Court granted Nationstar's Motion and dismissed Count II of the Complaint. (ECF No. 20). Plaintiff then moved for class certification, and this Court held a hearing on March 29, 2020. (ECF Nos. 48, 56). The next day, this Court granted Plaintiff's Motion and certified four classes.[1] (ECF No. 62). Following the conclusion of discovery, each party moved for summary judgment. (ECF Nos. 100, 101). After holding oral argument, the Court granted in part and denied in part Defendant's Motion[2] and denied Plaintiffs'. (ECF No. 117). In so ruling, this Court determined that whether the Mortgage Loan Statements were deceptive, or misleading was a disputed question of fact that must be left to a jury. (*Id*. at 24).

Following its ruling, this Court issued an Order setting dates for trial, a settlement conference, as well as for disclosure of witnesses and exhibits, designation of deposition portions, and trial motions. (ECF No. 121). That Order was subsequently amended on June 16, 2021. (ECF No. 134). In the interim, Plaintiff moved to extend the deadline for expert disclosures by thirty-five (35) days. (EFC No. 126). This Court granted Plaintiffs' Motion, continuing trial and other deadlines to ensure there was no harm to Defendant from Plaintiffs' requested extension. (ECF No. 133). Accordingly, the trial date was reset to October 25, 2021, with a settlement conference set for September 15, 2021. (ECF. No 134).

The settlement conference did not produce a resolution and the parties prepared for trial, filing numerous motions in limine, witness lists, exhibit lists, and proposed final pretrial orders. Days before the trial was scheduled to begin, however, the parties again engaged in settlement

---

[1] This Court certified two nationwide FDCPA classes and two Southern District of Ohio bankruptcy classes, each based on the receipt of lender-placed insurance letters and the Mortgage Loan Statement. (*See* ECF No. 62).

[2] The Court granted Defendant's Motion only as to the lender-placed insurance letters, leaving the two Mortgage Loan Statement classes (Class 1, the nationwide FDCPA class, and Class 3, the Southern District of Ohio bankruptcy class) remaining. (*Id*.).

discussions, finally reaching a settlement on October 21, 2021. Now the parties ask this Court to preliminarily approve that settlement pursuant to Fed. R. Civ. P. 23(e). This Court held a preliminary fairness hearing on November 12, 2021, after which it ordered supplemental briefing on Class Counsel's fee calculation. The parties have now submitted their supplemental briefs, and their Motion is ripe for review.

## II.    LAW & ANALYSIS

The parties jointly request this Court enter an Order: (1) preliminarily approving the proposed Settlement Agreement (the "Settlement Agreement"); (2) appointing Plaintiff as class representative and appointing and affirming Plaintiff's counsel as class counsel; (3) approving the form and manner of class notice; (4) establishing a schedule to complete the tasks necessary to effectuate the proposed settlement; and (5) preliminarily enjoining all members of the Settlement Classes from commencing, prosecuting, or maintaining any of the Settled Claims against Defendant Nationstar Mortgage LLC.

Rule 23(e)(1) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class," which turns on a determination as to whether the Court will likely be able to approve the proposal under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1). "The approval of a proposed settlement ordinarily involves a two-stage procedure. 'First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation . . . once the judge is satisfied . . . and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a final Rule 23(e) fairness hearing is given to the class members.'" *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 928 (E.D. Mich. 2007) (quoting Manual for Complex Litigation § 21.632–.633 (4th ed.)).

## A. Material Terms of Settlement

Under the parties proposed Settlement Agreement Defendant are to pay Plaintiffs, and their counsel, a total of $1,015,00.00. (ECF No. 181 at 6). This amount is effectively comprised of two "common funds[,]" with separate allocations for Plaintiffs' award, and for Class Counsel's compensation and expense reimbursement. (ECF No. 183 at 5). The first "common fund," totaling $405,000, is to be paid out to members of Class 1, the FDCPA class, Class 3, the Bankruptcy class, and to the Named Plaintiff. (*Id*.). Class 1, the FDCPA Class, consists of:

> [A]ny person who (i) received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts on or after January 1, 2012 and on or before January 31, 2015; (ii) who filed and served a Statement of Intention therein pursuant to 11 U.S.C. § 531(a)(2)(A) stating an intention to surrender real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar, one or more Mortgage Loan Statements, except that this class excludes individuals whose debt Nationstar acquired before it went into default.

(ECF N0. 181-1 at 10). The FDCPA Class, prior to confirmation of any exclusions, is comprised of 31,811 individuals who will share in a settlement fund of $300,000. (*Id*.). This comes out to a payment of $13.51 per account. (*Id*.). Notably, statutory damages under the FDCPA are capped at $500,000. *See* 15 U.S.C.A. § 1692k(a)(B). Meanwhile, Class 3, the Bankruptcy Class, consists of:

> [A]ny person who received a Chapter 7 bankruptcy discharge in a bankruptcy case filed in the U.S. Bankruptcy Courts for the Southern District of Ohio between January 1, 2012 and January 31, 2015; (ii) who filed and served a Statement of Intention pursuant to 11 U.S.C. § 521(a)(2)(A) to surrender real property that was/is security for a debt serviced by Nationstar; and (iii) who, after vacating the real property, were mailed by Nationstar one or more Mortgage Loan Statements.

(ECF N0. 181-1 at 10). The Bankruptcy Class, prior to confirmation of any exclusions, is comprised of 352 individuals who will share in a settlement fund of $100,000. (*Id*.). This works out to a payment of $403.23 per account. (*Id*.). The final $5,000 of this "common fund" is Named Plaintiff McNamee's Incentive Award. (*Id*.).

Members of both classes will receive a single, per-account payment by check as consideration for fully resolving their settled claims. (ECF No. 181 at 6). Co-borrowers on a single loan will receive one check. (*Id*.). The Settlement Agreement fully protects the rights of class members to make objections to the settlement or to opt out of the settlement. (*Id*. at 7). Moreover, as the FDCPA provides for actual damages *in addition to* statutory damages, *see* 15 U.S.C.A. § 1692k(a)(B), the Settlement Agreement preserves the right of FDCPA Class members to bring individual claims for actual damages. (*Id*. at 7) (emphasis added).

To effectuate the Settlement, Defendant will "select a Settlement Administrator, who will process claims, field calls and correspondence from Settlement Class Members, and disburse amounts from the Settlement Fund. The [] Administrator's fees and costs will be paid solely by Nationstar and are in addition to the sums provided by Nationstar to fund the Settlement." (*Id*.).

The second "common fund," capped at $610,000, encompasses Class Counsel's fees and expenses. (ECF No. 183 at 2). Class counsel represents they have spent roughly 1,650 hours litigating this case at a blended average hourly rate of $349 per hour. (*See id*.; ECF No. 92). Class Counsel represents their combined outstanding fees and expenses total $654,970.91. (ECF No. 183 at 3). From this amount, they have deducted $35,306.00 Defendants were ordered to pay after being sanctioned for contempt in 2019, as well as an additional $9,664.91[3], to arrive at a total of $610,000. (ECF No. 92). This amount is further divided, with $118,048.70 allocated as expenses and $491,951.30 constituting fees. (ECF No. 183 at 9). This request for attorney's fees was calculated utilizing the lodestar method. As percentage of the fund, excluding expenses, this amount represents approximately 48% of the total settlement amount. (*Id*. at 14).

---

[3] Class Counsel represents that it agreed to this additional deduction "as a compromise to bring finality to the cases and to ensure a reasonable distribution to the members of the two classes." (ECF No. 183 at 3–4).

### B.  Fairness, Reasonableness and Adequacy of Settlement

To determine whether a settlement is "fair, reasonable, and adequate," the Court balances the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." *Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016). At the preliminary approval stage, however, the Court need not make a determination as to every factor, but rather should grant preliminary approval of a settlement if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (quoting Manual for Complex Litig. § 30.44 (2d ed. 1985)).

This Court finds the parties have adequately demonstrated the proposed Settlement is fair, reasonable, and adequate. The parties maintains negotiations were conducted at arm's length and the Court finds no reason to believe the settlement involves collusion. (ECF No. 181 at 12). The Settlement treats class members equally and distributes proceeds on a per-account bases. (*Id*. at 5). Class counsel further testify they are experienced in consumer class action litigation and have conducted the necessary discovery to confirm the amount of potential damages. (*Id*. at 11). The Court gives weight to the judgment of experienced counsel that the settlement is in the best interests of the class. *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). This Court has noted that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with

them." *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d at 1013 (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). As such, there is a "public interest favoring settlement . . . . as the proposed settlement ends potentially long and protected litigation." *Kritzer*, 2012 WL 1945144, at *6 (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006)). The Court therefore finds the parties have demonstrated the proposed Settlement appears to be fair, adequate, and reasonable and is likely to meet the final approval requirements of Rule 23(e)(2).

### C.  Sufficiency of Notice

Pursuant to Rule 23(e), Class Counsel must direct notice "in a reasonable manner to all class members who would be bound by the [proposed settlement] . . . " Fed. R. Civ. P. 23(e)(1)(B). "[T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173 (1974) ("Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 624 (N.D. Cal. 2014) (quoting *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004)).

Upon review, and with several modifications to be discussed forthwith, this Court finds the parties' proposed Class Notice satisfies the requirements of Rule 23(e). The proposed Notice (*see* ECF No. 181-1 at 34–36), provides a full description of the nature of the action, proposed settlement and requested attorneys' fees.[4] (*See id.*). While the Notice describes the terms and

---

[4] As will be discussed, the Court modifies Class Counsel's fee award. As instructed, an alteration of the proposed Notice to reflect this modification will ensure the Notice complies with the requirements of Rule 23(e).

operation of the settlement, as the parties acknowledge, the manner in which it does so may cause some confusion among class members. (*See* ECF No. 183 at 4–6). Specifically, "[t]he definitional provision at Section 3 at ¶ 3.29 and Section 7 at ¶ 7.1 in tandem suggest that any amount of the $610,000.00 allocation not approved by the Court for payment of Class Counsel's fees and expenses could be distributed to the Settlement Classes, and in particular, the FDCPA Settlement Class." (*Id*. at 6 (citing ECF No. 183-1 at ¶ 11)). This is not the case, and Class Counsel did not intend as such. (*Id*.). Rather, the Notice should clarify both that Defendant has agreed to separately pay Class Counsel's fees, subject to a cap of $610,000.00, and that Class Counsel is not sharing in any of the funds created for payment of the claims of the Bankruptcy Settlement Class or the statutory claims of the FDCPA Settlement Class. Courts have recognized that such organization is permissible so long as the fee award remains reasonable. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 791 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010) (recognizing that a "settlement agreement is [not] unfair, unreasonable, or inadequate simply because the [parties] negotiate an independent fund as the source of any attorneys' fee award"). This Court finds that such a change will better ensure the Notice "describes the terms of the settlement in sufficient detail[.]" *Bellinghausen*, 303 F.R.D. at 624.

Accordingly, Class Counsel is **ORDERED** to alter the language in the Notice so that it clarifies the total settlement amount, the scope of each allocation as well as the alterations to Class Counsel's fee award detailed below. With these change, this Court **APPROVES** the Notice.

### D.  Attorney's Fees

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). There are two methods for

determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). The lodestar figure represents the number of reasonable hours expended multiplied by a reasonable rate, while percentage-of-the-fund calculates fees relative to the total settlement amount. *Reed*, 179 F.3d at 471. In some cases, "using the percentage of the fund method to cross-check the lodestar figure" can be "effective." *Lonardo*, 706 F. Supp. 2d at 814 (N.D. Ohio 2010). Ultimately, a district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and [] the unique circumstances of the actual case[] before [it]." *Van Horn*, 436 F. App'x at 501.

Class Counsel seeks an award of $610,000—$118,048.70 allocated as expenses[5] and $491,951.30 constituting fees. (ECF No. 183 at 9). The latter is based on a lodestar calculation of roughly 1,650 hours expended, at a blended average hourly rate of $349 per hour. (*Id.*). This represents roughly 48% of the total settlement amount. (*Id.* at 13). Defendants do not oppose Class Counsel's fee application. (*See* ECF No. 184).

This Court agrees that the lodestar approach is the appropriate method in this case. This is particularly true given both the "strong presumption" that this calculation is reasonable, as well as Congressional intent underpinning the FDCPA. *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009); *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir.1995)("Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law.")). Furthermore, the percentage of the fund method is inappropriate here

---

[5] As explained at the hearing, this Court expresses no concern over the Class Counsel's expenses. Class Counsel represents that this amount is actually a significant decrease on amount of expenses they initially anticipated, as they received an updated invoice days before the hearing. (ECF No. 183 at 2, n. 3). Expenses were originally estimated at $139,000.00. (*Id.*).

because, as detailed above, "the attorney's fees are not being deducted from the Plaintiffs' recovery." *Cerrato v. All. Material Handling, Inc.*, No. CIV. WDQ-13-2774, 2014 WL 7190687, *4 (D. Md. Dec. 16, 2014). Once the lodestar amount is calculated, a court may adjust the lodestar amount as necessary to ensure the award is reasonable. *Van Horn*, 436 F. App'x at 501.

### 1. Lodestar Amount

This Court will start by examining counsel's representation of the lodestar amount in this case. In a Declaration, Class Counsel represents that 1650.06 hours total have been billed on this case, at a blended average rate of $347/hour.[6] This represents a cumulative lodestar of $572,228.21. (ECF No. 183-1 at ¶ 25). Class Counsel has subtracted from this amount, the $35,306.00 Defendants paid previously after being sanctioned for contempt in 2019, for an adjusted total of $536,922.21. (*Id.*; *see also* ECF No. 183 at 3, n. 3). The Settlement Agreement caps Class Counsel's fees and expenses at $610,000.00. (*See* ECF No. 181-1). Given this cap, as well as the expenses incurred, totaling $118,048.70, Class Counsel's final fee application totals $491,951.30. (ECF No. 183 at 9). Defendants do not dispute this amount. (*See* ECF No. 184). Given the forthcoming analysis, this Court finds that this amount does not represent "a reasonable attorney's fee," and an across-the-board reduction is appropriate.

To begin, this Court finds Class Counsel's rate of $347 to be a reasonable hourly rate. To determine what constitutes a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004). However, the court retains broad discretion to determine what constitutes a reasonable hourly rate.

---

[6] Class Counsel's Motion (*see* ECF Nos. 181, 183) represents this "blended average hourly rate" is $349.00/hour. However, in his Declaration, James Nobile clarifies that the rate is $347.00 (*see* ECF No. 183-1 at ¶ 29). This Court will use the latter of these two rates in its analysis.

*Id*.; *Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995).

This Court has previously found this rate reasonable, during both the contempt proceedings in this case (*see* ECF No. 92 (finding Class Counsel's $350 per hour rate reasonable)), as well as in other FDCPA consumer class action cases litigated by Class Counsel, *see Geary v. Green Tree Servicing, LLC*, No. 2:14-cv-522 (S.D. Ohio Dec. 6, 2017) (finding Class Counsel's $325 per hour rate reasonable). Furthermore, in at least one other case not involving Class Counsel, this Court has also approved this rate. *See Johnson v. Cheek L. Offs., LLC*, No. 2:11-CV-1130, 2015 WL 542189 (S.D. Ohio Feb. 10, 2015) (approving counsel's rate of $350 per hour for litigating FDCPA class action). "[T]his Court, being generally familiar with prevailing rates in the local community, finds the requested rate to be reasonable." *Mann v. Acclaim Fin. Servs., Inc.*, 348 F. Supp. 2d 923 (S.D. Ohio 2004). Next, this Court "must assess the number of hours reasonably expended in this litigation." *Shields v. Merchants & Med. Credit Corp.*, No. 08-14999, 2011 WL 3566485, *4 (E.D. Mich. June 30, 2011).

Class Counsel bears the burden of demonstrating that the hours they seek are reasonable. *Morse v. Specialized Loan Servicing, LLC*, No. 2:16-cv-689, 2018 WL 549372, at *3 (S.D. Ohio Jan. 25, 2018). In their Fee Application, Class Counsel represents they expended 1650:06 hours over the past seven years litigating this case. (ECF Nos. 183, 183-1). This encompasses the work of three attorneys: James E. Nobile, Eric E. Willison and Michael B. Zieg. (ECF No. 183-1 at ¶ 26). In support of this calculation, Class Counsel offers numerous billing statements from each attorney (*see* ECF Nos. 183-2, 183-3), as well as a Declaration from James Nobile (*see* ECF No. 183-1). Upon review of these records, and for the reasons detailed below, this Court finds an across-the-board reduction of Class Counsel's hours expended is appropriate.

"The Supreme Court has instructed district courts to exclude fees not 'reasonably

11

expended,' such as 'hours that are excessive, redundant, or otherwise unnecessary.'" *King v. Whitmer*, No. CV 20-13134, 2021 WL 5711102, * 2 (E.D. Mich. Dec. 2, 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Similarly, the Sixth Circuit has "repeatedly upheld reductions in attorney's fees for duplicative or excessive billing." *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014). This can include both "vague billing entries" as well as impermissible "block billing." *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005). Such billing practices "make it impossible for the Court to evaluate the reasonableness of the hours expended on the litigation." *Id*.

First, this Court finds Class Counsel repeatedly billed for non-compensable work. Counsel should generally "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . ." *Hensley*, 461 U.S. 424, 434 (1983). Furthermore, "'[p]urely clerical or secretarial' tasks are not compensable." *Miller v. Davis*, 267 F.Supp. 3d 961, 996 (E.D. Ky. 2017) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)). Preforming such tasks, including "filing motions, preparing or reviewing summons, and receiving and filing correspondence[,]" does "not require legal knowledge[.]" *Id*. at 996–97. Upon review, Class Counsel's billing records show numerous billing entries for work that was "purely clerical" and thus, non-compensable. For example:

| Date | Description | Hours | Amount | Lawyer |
|------|-------------|-------|--------|--------|
| Jan-28-2014 | Finalized PDF packet to Atty. Folland with additional document | 2.00 | $610.00 | James Nobile |
| Dec-10-2015 | Rev'd Court Decision Denying as Moot FTF and Granting in Part W/D Reference Motion | 1.30 | $457.50 | James Nobile |
| Dec-10-2015 | Forwarded copy of decision as to FTF motion to Atty Hilicki | 0.15 | $76.25 | James Nobile |
| May-15-2019 to May-22-2019 | [scheduling mediation dates/times] | 1.83 | $885.00 | James Nobile Eric Willison |
| June-16-2021 | Remotely reviewed Court decision on [expert] final report; extended various dates including trial; conf . . . to make calendar adjustments | 1.00 | $375.00 | James Nobile |

| Oct-11-2021 | Preparation of Appendices to PTO; filing of same; email to Attys Deak re same | 1.15 | $468.75 | James Nobile |
|---|---|---|---|---|

(*See* ECF Nos. 183-2, 183-3). These entries represent just a small sample of what this Court has determined to be a persistent practice of billing for work that was "purely clerical." Moreover, this Court counted forty-three (43) billing entries solely for scheduling and reviewing emails. (*See generally id*.). Ultimately, as these tasks "do not require legal knowledge" and may be included in office overhead, they should not be counted toward determining compensable hours. *Wesley v. Rigney*, No. CV 10-51-DLB-JGW, 2016 WL 6787235, * 4 (E.D. Ky. May 18, 2016)(recognizing that clerical work, including time spent "receiving and filing correspondence[,]" is not compensable).

Additionally, this Court finds that Class Counsel impermissibly used excessive, impermissible "block billing[,]" so much so that it cannot "'verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given task.'" *Gratz*, 353 F. Supp. 2d at 939 (quoting *In re Samuel R. Pierce, Jr.*, 190 F.3d 586, 593–94 (D.C.Cir.1999)). While this practice is permissible, where counsel's "block billing" is vague or prevents the Court from ascertaining the amount of time expended on specific tasks, "across-the-board percentage cuts in the hours billed . . ." is appropriate. *King v. Whitmer*, No. CV 20-13134, 2021 WL 5711102, * 4 (E.D. Mich. Dec. 2, 2021) (citing *Gratz*, 353 F. Supp. 2d at 939). Additionally, "[a] court may reduce fees where block-billed entries include non-compensable tasks." *Benoist v. Titan Med. Mfg., LLC*, No. 2:19-CV-02704-SHM, 2021 WL 4477084 (W.D. Tenn. Sept. 29, 2021).  As detailed below, this Court finds that such impermissible block entries are pervasive in Class Counsel's billing records, and seriously limit this Court's ability to ascertain the amount of time expended on specific tasks. This is all the more troubling given that often times these entries include tasks that are clerical and thus not compensable.

13

For example, on June 16, 2021, Class Counsel billed eight (8) hours for "[reviewing] Order denying seal motion; additional information needed; refiled same with additional information; [telephonic conference] with Judge Vascura; several emails to[] and from Atty Deak [regarding] concerns over seal motion; [reviewed] order granting subject to filing redacted version." (ECF No. 183-2 at 15). Given the five separate tasks identified in this entry, this Court cannot determine how much time was spent on which task, so as to ascertain whether the hours expended were reasonable. Even more troubling, there are clerical, non-compensable tasks included in this entry, from which this Court cannot accurately distinguish Class Counsel's legal work. Similarly, on June 16, 2021, Class Counsel billed six (6) hours for "prepar[ing] Witness and Exhibit lists for 2/4 hearing [and] PDF binder preparation email to [opposing counsel]." (*Id*. at 2). Here again, this Court cannot separate the time billed for the preparation of the witness and exhibit list, a legal task, and preparing a PDF binder, a decidedly clerical task. As such, this Court cannot determine whether these hours were reasonably expended. These billing entries represent just a small sample of what this Court has determined to be a persistent practice. In fact, this Court detailed close to forty (40) billing entries with at least three separate tasks grouped together, with some including as many as five separate tasks in one single entry. (*See generally id*.).

This practice inhibits this Court's duty to evaluate the reasonableness of Class Counsel's hours expended, and to exclude from that calculation any hours that were "excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434. Accordingly, and consistent with precedent in this Circuit, this Court finds that an across-the-board reduction of Class Counsel's hours by 25% is appropriate here. *See Richard v. Caliber Home Loans, Inc.*, No. 2:15-CV-02647, 2019 WL 4751741, *11–12 (S.D. Ohio Sept. 30, 2019), *aff'd*, 832 F. App'x 940 (6th Cir. 2020) (reducing fee award in an FDCPA case by 50%, given counsel's "billing deficiencies"); *see also*

*Clark v. W. Iris Transp., Inc.*, No. CV 18-168-DLB-CJS, 2020 WL 2781601 (E.D. Ky. Feb. 27, 2020) (recommending a 75% across-the-board reduction in FDCPA class counsel's fee request where "the time billed is excessive, some of the work was overstaffed, and some of the records are inadequately described"); *Currier v. PDL Recovery Grp., LLC*, No. 14-12179, 2017 WL 3581181 (E.D. Mich. Aug. 18, 2017) (instituting a 40% reduction to the overall lodestar award, where plaintiff's counsel in an FDCPA case recorded "excessive, duplicative [and] unnecessary hours . . ."); *Lundsted v. JRV Holdings, LLC*, No. 14-CV-13981, 2016 WL 1665154, *7 (E.D. Mich. Apr. 27, 2016) (reducing FDCPA plaintiff's fee award by 15%, where counsel failed to "describe the work performed in sufficient detail . . ."); *Tikan v. Asset Acceptance, LLC*, No. 13-12173, 2016 WL 1212641, (E.D. Mich. Feb. 12, 2016) (recommending a 15% across-the-board reduction in FDCPA counsel's fee request, where his billing entries were deemed "excessive").

Here, a 25% across-the-board reduction represents a deduction of roughly 412.52 hours from Class Counsel's original hours calculation (1650.06 x .25 = 412.52), leaving them with a total hours expended of 1,237.54 (1650.06 – 412.52 = 1237.54). At a rate of $347 per hour, Class Counsel's adjusted fee application now comes to **$429,426.38** (1237.54 x 347 = 429,426.38). This across-the-board reduction is further supported both by a cross-check with the percentage of the fund method as well as awards in similar cases.

As detailed above, when utilizing the percentage-of-the-fund method, the Court considers the ratio of the attorneys' fee to the total class benefit. *Lonardo*, 706 F. Supp. at *796–797. This method also "allows the Court to cross-check the final lodestar figure to ensure that the fee award is reasonable compared to the Settlement Class' benefit[]." *Id*. at 797 (citing *In re Sulzer Orthopedics Inc.*, 398 F.3d 778, 780 (6th Cir. 2005)). Conducting this cross-check is nonetheless prudent where, as here, there exists an independent agreement between the parties regarding

15

attorneys' fees. *Id*. at 791 (citing *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod.*

*Liab. Litig.*, 55 F.3d 768, 820–21 (3d Cir.1995) (recognizing that "the potential for conflict

between the class and its counsel is not limited to situations meeting the strict definitions of a

common fund")). Construing $1,015,000 as the "the total class benefit," an adjusted fee award of

$429,426.38 represents approximately **42%** of the settlement (426,426.39 ÷ 1,015,000 = .423). As

compared to awards in similar cases,[7] this percentage represents a reasonable fee award. *See In re*

*Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1053, 1996 WL 780512 (E.D. Mich. Dec. 20,

1996) (recognizing that fee awards in common fund cases typically range from 20% to 50% of the

fund); *see also In re Telectronics*, 137 F.Supp.2d 1029, 1046 (S.D. Ohio 2001) (same); *Huyer v.*

*Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (approving FDCPA class action fee award of 38% of

the common fund); Jason Scott Johnston, *High Cost, Little Compensation, No Harm to Deter: New*

*Evidence On Class Actions Under Federal Consumer Protection Statutes*, 2017 Columbia Bus.

Law Rev. 1 at 48–56 (surveying consumer class action settlements, and finding that FDCPA class

actions, specifically, saw attorney fee awards exceeding 64% of the settlement fund).

Given the deficiencies identified in Class Counsel's billing records, and as bolstered by

both a cross-check with the percentage of the fund as well as awards in similar cases, this Court

finds that an adjusted fee award of **$429,426.38** represents a reasonable fee.[8] Moreover, this award

properly comports with Congress' motivations in enacting the FDCPA:

> Waste is not in the public interest. The Congress that passed the Fair Debt
> Collection Practices Act in 1977 could hardly have wished to reward lawyers for

---

[7] "Awards in similar cases," is one of twelve factors Courts may consider when adjusting the lodestar figure, as enunciated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and adopted by the Supreme Court in *Hensley*, 461 U.S. at 432. Notably, the most important of these factors, "results obtained," does not apply here given that Plaintiffs cannot be considered the "prevailing party" as they "obtained relief solely based on the defendants' voluntary conduct and did not obtain a judgment compelling a change in the defendants' conduct." *Shields*, 2011 WL 3566485 at *3 (citing *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Hum. Res.*, 532 U.S. 598, 604–605 (2001)).

[8] Importantly, given that Notice has yet been sent, this amount may be subject to change pending any objections from Class members.

doing nonproductive work and wasting their adversaries' time and the time of the courts as well. In directing the courts to award "reasonable" fees, on the contrary, Congress undoubtedly wished to ensure that the lawyer representing a successful plaintiff would receive a reasonable fee for work reasonably found necessary— nothing less, and nothing more.

*Lee v. Thomas & Thomas*, 109 F.3d 302 (6th Cir. 1997).

### E.  Service Award

The Sixth Circuit has found that service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re S. Ohio Correctional Facility*, 175 F.R.D. 270, 273–76 (S.D. Ohio 1997). The Settlement Agreement here allocates $5,000 to named Plaintiff Charles D. McNamee. (ECF No. 181-1 at ¶ 7.5).

This Court finds that Mr. McNamee' involvement in the case was substantial and integral to achieving the award for the opt-in Plaintiffs. His assistance also furthered the important public policies underlying the FDCPA. Accordingly, this Court **APPROVES** the service awards of $5,000 to Charles D. McNamee as appropriate compensation for his participation in this litigation.

### III.    CONCLUSION

For the reasons stated above, this Court **GRANTS with modifications** the parties' Motion for Preliminary Settlement Approval. (ECF No. 181-1). This Court has reviewed the proposed Notice Program, and with the aforementioned changes incorporated, **APPROVES** the Notice for purposes of notifying the Settlement Class as to the Proposed Settlement. The Settlement Administrator is **DIRECTED** to effectuate Notice to the Settlement Class in accordance with the Notice Program. Any Class Member may opt out from, or object to, the Settlement pursuant to the Notice Program schedule. The Court **APPOINTS** Class Counsel to act on behalf of the Settlement

17

18

Class and the Class Representative with respect to the Settlement. The parties may now begin the

Notice procedures and thereafter move for final approval. **A final fairness hearing will be held**

**on Friday May 27, 2022 at 2:00 p.m.**

     **IT IS SO ORDERED.**

                                                       **ALGENON L. MARBLEY**
                                                       **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 25, 2022**