IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CHARLES D. MCNAMEE,** *et al.*, : | |
| : | Case No. 14-1948 |
| **Plaintiffs,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Vascura |
| **NATIONSTAR MORTGAGE LLC,** : | |
| : | |
| **Defendant.** : | |

**FINAL ORDER AND JUDGMENT**

This matter is before the Court on the parties' Joint Motion for Final Approval of Class Action Settlement Agreement. (ECF Nos. 187, 188). For the following reasons, this Court **GRANTS** the parties' Motion for Final Approval of Class Action Settlement, **GRANTS** Plaintiffs' Application for a Service Award to Plaintiff McNamee in the requested amount of $5,000.00, and **GRANTS** Class Counsel's Application for Attorney's Fees.

I. **BACKGROUND**

The facts of this case are detailed in this Court's January 25, 2022, Opinion and Order on the parties' Joint Motion for Preliminary Approval. (*See* ECF No. 185). In the interest of judicial economy, the Court will limit its discussion here to the facts pertinent to the parties' Joint Motion for Final Approval.

After this Court preliminarily approved the Settlement, with modifications related to the attorneys' fee award, the parties entered into an Amended Class Settlement Agreement (the "Agreement") (ECF No. 188-1). The Class Administrator, as approved by this Court, then sent the approved Class Notice to Class Members via first class U.S. Mail, postage prepaid using the addresses provided by Defendant. (ECF No. 188 at 4). Five class members, in addition to the

1

original 74, have opted out of the Settlement and no class members have objected. (*Id*.). On May 23, 2022, the parties filed the instant Joint Motion for Final Approval of Class Action Settlement Agreement. (ECF Nos. 187, 188). Along with that Motion, the Settlement Administrator filed a declaration regarding the notice procedures. (ECF No. 188-2). On May 27, 2022, this Court held a fairness hearing. (ECF No. 186). The parties represent that the Settlement is, in all respects, fair, adequate, and reasonable, and should be fully and finally approved.

## II.    MOTION FOR FINAL SETTLEMENT APPROVAL

### A.    Overview of Settlement Terms

Under the Agreement, Defendant shall pay Plaintiffs a total of $400,000. (ECF No. 188 at 5). This amount is spread across two classes[1] this Court previously certified—the FDCPA Class and the Bankruptcy Class. (*Id*.). The FDCPA Class, roughly 31,811 individuals, will share in a settlement fund of $300,000. (*Id*.). The Bankruptcy Class, roughly 352 individuals, will share in a settlement fund of $100,000. (*Id*.). Named Plaintiff will receive a $5,000 service award, and Class Counsel is seeking $547,475.08 in legal fees and expenses. (*Id*.). In preliminary approving the Settlement, this Court approved Class Counsel's fee award, noting that it may be subject to change pending Class Member objections (ECF No. 185).

Members of both classes will receive a single, per-account payment by check as consideration for fully resolving their settled claims. (*Id*.). Co-borrowers on a single loan will receive one check. (*Id*.). Moreover, as the FDCPA provides for actual damages *in addition to statutory damages*, see 15 U.S.C.A. § 1692k(a)(B), the Agreement preserves the right of FDCPA Class members to bring individual claims for actual damages. Pursuant to the Amended Agreement, Defendant denies all allegations and claims asserted against it in the Complaint and

---

[1] While four classes were certified (*see* ECF No. 62), following this Court's ruling on the parties' Motions for Summary Judgment, only Class 1, the nationwide FDCPA class, and Class 3, the Southern District of Ohio bankruptcy class, remained.

2

denies all wrongdoing. (*Id*.).

## B. Claims Process

On February 8, 2022, Defendant sent the Class Administrator a list of 22,593 persons in the class. (ECF No. 188-2 at ¶ 2). The Class Administrator processed the names and addresses through the National Change of Address Database to update any addresses on file with the United States Postal Service. (*Id*.). A total of 2,781 addresses were updated. (*Id*.). Thereafter, on February 28, 2022, the Class Administrator mailed the Class Notice to the Class Members. (*Id*., ¶ 3). 190 Notices were returned with forwarding addresses and 3,205 were returned with undeliverable addresses. (*Id*., ¶¶ 4, 5). The Class Administrator was able to find updated addresses for 21 of those Class Members. (*Id*., ¶ 5).

On September 17, 2020, the Class Administrator established a website to provide information to the Class Members and to answer frequently asked questions. (*Id*., ¶ 6). As of May 19, 2022, the website was accessed 247 times. (*Id*.). The Class Administrator continues to maintain a toll-free telephone number for Class Members to call and obtain information about the Settlement and request a Notice. (*Id*., ¶ 7). The telephone hotline became operational on September 17, 2020, and as of May, 2022, had received 187 calls. (*Id*.).

The Notice advised Class Members that the opt out and objection deadline was April 7, 2022. (*Id*., ¶ 8). As of May 23, 2022, a total of seven (7) individuals requested to be excluded from the Settlement, the names of which were filed along with the Settlement Administrator's declaration. (*Id*., ¶ 8, 9). As of the date of this Opinion and Order, neither the Court nor Defendant had received any objections to the Settlement. (*Id*., ¶ 9).

## C.　　FINAL APPROVAL UNDER RULE 23

### 1.　　Sufficiency of Notice

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Rule 23(e) specifies that no class action may be settled, dismissed, or compromised without court approval, preceded by notice to class members. Fed. R. Civ. P. 23(e). Rule 23(c)(2) requires that notice to the class be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 629-30 (6th Cir. 2007) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the Settlement Administrator issued notice to Class Members in three ways. First, Class Members received the Court approved Notice via certified mail. (ECF No. 188-1 at ¶ 10.1). Any Notice that was returned as undeliverable, but with a forwarding address, was promptly remailed. (*Id.*). Moreover, as detailed above, the Class Administrator preformed a National Change of Address Registry and LexisNexis/Death Records Search for all Notices returned as undeliverable, without a forwarding address. (*Id.*). Any such Notices were remailed upon the discovery of a valid mailing address. (*Id.*). Second, the Settlement Administrator placed the Notice on the settlement's website and would also provide the Notice upon request. (ECF No. 188-2 at ¶ 6). Third, the Settlement Administrator created, and continues to maintain, a toll-free telephone number for Class Members to call and obtain information about the Settlement and request a Notice. (*Id.*, ¶ 7).

4

In this case, the Notice "described in plain English the terms and operation of the settlement, the considerations that caused Class Counsel to conclude that the settlement is fair and adequate, the procedure for objecting to and opting out of the settlement, the date of the final fairness hearing and the phone number for the Settlement Administrator to inquire about the final fairness hearing." (ECF No. 188 at 6 (citing *Frost v. Household Realty Corp.*, 61 F. Supp.3d 740, 744–45 (S.D. Ohio 2004))). The Notice also "provided a full description of the nature of the action, proposed settlement, and requested attorneys' fees[,]" including those modifications this Court ordered at preliminary approval. (*Id.*). Furthermore, a variety of methods were used to reach class members. A total of 3,184 of 22,593 Notices were returned as undeliverable, after the Settlement Administrator conducted advanced address research. (*Id.* at 7). This represents a delivery rate of approximately 85.91%. Moreover, the Settlement Administrator's website was viewed 247 times and the toll-free number received 187 calls. (ECF No. 188-2 at ¶¶ 6, 7).

The Court therefore finds that the Notice Program provided all members of the Settlement Class with fair and adequate notice of the terms of the Settlement, how to request exclusion or object, and the time and place of the Fairness Hearing. Finally, the Court finds the Notice was clearly designed to, and in fact did advise Settlement Class members of their rights and satisfied the requirements of Rule 23.

### 2. Fairness, Reasonableness, and Adequacy

Before approving a settlement agreement, the Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). In determining whether the proposed settlement is fair, reasonable and adequate, the Court considers several factors:

(1) the risk of fraud or collusion;

  (2) the complexity, expense and likely duration of the litigation;

  (3) the amount of discovery engaged in by the parties;

  (4) the likelihood of success on the merits;

  (5) the opinions of class counsel and class representatives;

  (6) the reaction of absent class members; and

  (7) the public interest.

*UAW*, 497 F.3d at 631. In reviewing a proposed class action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

  The court may limit the fairness hearing "to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of HMOs*, 262 F.3d 559, 567 (6th Cir. 2001) (citations omitted). The court should not, at the fairness hearing, "determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams v. Yukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 904 (S.D. Ohio 2001). However, a court "cannot 'judge the fairness of a proposed compromise' without 'weighting the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)). "Parties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement." *Id.* at 635. Here, this Court finds that the proposed settlement is fair, adequate, and reasonable. All seven factors militate in favor of approval of the settlement.

  First, the Agreement is not the risk of fraud or collusion. The parties reached a settlement

after approximately eight years of contested litigation. (ECF No. 188 at 10). The parties engaged in numerous informal negotiations, an in-person mediation conducted by an experienced mediator, and an in-person settlement conference with the Court. (*Id*.). "The participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

Second, the complexity, expense, and likely duration also weigh in favor of approving the settlement. This litigation has been ongoing for more than eight years and included voluminous discovery, extensive motions practice, and a petition for appeal. (*Id*. at 11). If the litigation were to continue, and this case proceed to trial, Class Counsel represents that "considerable work" would remain, including the trial itself, post-trial motions and likely a subsequent appeal. (*Id*.). At this juncture, Class Counsel has achieved a settlement that would allow significant recovery of Class Members' recoverable damages without further delay and can avoid the "significant risks" of continued litigation. (*Id.*). Were the settlement not approved at this juncture, expenses would only continue to increase, making a future settlement where attorneys' fees may not threaten the class recovery less likely.

The third factor strongly weighs in favor of approval, as the parties have engaged in significant fact discovery, including depositions and the production of numerous documents, as well as the identification of expert witnesses. (*Id*. at 10). In fact, the parties were preparing to try this case mere days before the settlement was reached. (*Id*.). Class Counsel represents that, as a result, they had adequate information on which to determine the advisability of a settlement. (*Id*.; *Kritzer*, 2012 WL 1945144, at *7 (considering the stage of the proceedings and the amount of discovery taken to date in order to determine whether the parties have had access to the

7

information needed to adequately assess their case)).

The fourth factor—the likelihood of success on the merits—likewise weighs in favor of settlement. Although Plaintiff's claims are strong, "given the factual and legal complexity of the case, there is no guarantee that Plaintiffs would prevail at trial." *Dillworth*, 2010 WL 776933, at *6. Moreover, throughout this case, Defendant has asserted that the classes were improperly certified, and that case law supports its contention that the Mortgage Loan Statement does not violate the FDCPA. (ECF No. 188 at 11). The Court also denied Plaintiff's motion for summary judgment on the Mortgage Loan Statement claim, leaving the issue to be determined by a jury—at significant risk to both sides. (*Id.*). Finally, there are substantial risks and uncertainty associated with the Discharge Injunction claims in the Bankruptcy Court, as this Court has itself noted. (*Id.*). This settlement ensures that Plaintiffs will be compensated for a significant portion of their likely recoverable damages without further delay.

Class Counsel has significant experience in national class actions and supports the Settlement Agreement. *See In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (giving weight to the recommendation of experienced and professional trial counsel). Likewise, the Named Plaintiff and Class Representative, Charles D. McNamee, also supports the settlement agreement. Accordingly, the fifth factor also weighs in favor of settlement approval.

In determining whether to approve a settlement, the Court must "take into account the objections, if any, raised by class members." The reaction of absent class members also weighs in favor of approving the Settlement. As discussed above, notice of this Settlement was issued in a manner consistent with due process and Rule 23. Settlement Class members had an opportunity to object and be heard. "[A] relatively small number of class members who object is an indication of

8

a settlement's fairness." *Brotherton v. Cleveland*, 141 F.Supp.2d 894, 906 (S.D. Ohio 2001). Only seven (7) Class Members opted out, and no Class Members objected to the Agreement. Therefore, this factor weighs in favor of approval of the settlement.

Finally, the public interest weighs in favor of approval of the settlement. The public has an interest in the settlement of class action litigation to end "potentially long and protracted litigation." *Kritzer*, 2012 WL 1945144, at *8. While a case may not necessarily be of general public interest, courts have found there to be a "public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve" and a settlement agreement will end long and protracted litigation. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1025; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990).

Finally, the Court has a responsibility "to ensure that the distribution of the settlement proceeds is equitable." *Dillworth*, 2010 WL 776933, at *6 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). The Settlement Agreement treats the members of each of the classes equitably relative to each other. The FDCPA Class member all receive the same payment, on a per account basis. (ECF No. 188 at 13). This payment is based on the fact that their claims are capped by the FDCPA, as well as the fact that they are not releasing claims for actual damages. (*Id.*). The settlement is particularly valuable to class members who, but for the settlement, likely would be unaware of the existence of their legal claims. (*Id.*). The Bankruptcy Class members also all receive the same payment, per account. (*Id.*). This amount, as compared to the FDCPA Class, is larger, based on the fact that these claims are not capped but instead, if they prevailed, would be subject to the Bankruptcy Court's discretion. (*Id.*). Moreover, "[t]he larger payment is supported by the fact that the potential recovery is greater, as well as the fact that the release given . . . is somewhat broader, releasing all damages or injury of any kind that they may have arising from any

9

violation of the Discharge Injunction related to the Mortgage Loan Statement." (*Id*.).

### D. ATTORNEYS' FEES AND SERVICE AWARD

#### A. Attorneys' Fees

To evaluate whether the amount of an award is reasonable, courts consider: "(1) the value of the benefit rendered for the class, (2) society's stake in rewarding attorneys who produce such benefits, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of the attorneys involved." *Kritzer*, 2012 WL 1945144, at *9 *(citing Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

Here, Class Members who opted in will receive a substantial portion of their likely recoverable damages. The FDCPA Class specifically, is receiving 60% of their likely recoverable statutory damages, and have not foreclosed recovery of actual damages under the statute. All told, the significant recovery for members of both classes weighs in favor of a significant fee award. Because any award of attorneys' fees would be separate from the funds allotted for claims by Class Members, awarding the requested attorneys' fees would not diminish in any way the recovery of class members.

Second, society has an interest in conserving federal judicial resources and seeing individuals compensated for their losses. The public also has interest in "seeing individuals recovering something for their compensable injuries, not protracting litigation." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1025. Likewise, there is also a public interest in "ensuring that claimants with smaller claims may pool their claims and resources, and attorneys who take on class action cases enable this." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *12. Class Counsel's effort resulted in a substantial benefit for the Class members, many of whom "would not have been

able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant." *Id.* Here, the Settlement allows individuals to recover a substantial portion of their likely recoverable damages and frees up valuable judicial resources. Thus, the public interest factor favors the settlement.

Third, Class Counsel took this case entirely on a contingent-fee basis, and therefore this factor weighs in favor of awarding the fees sought. Class Counsel have not been compensated for any time or expense since the beginning of this litigation, which weighs in favor of granting an award of attorney fees. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011). Class Counsel have made significant investments of time and have advanced costs but have received no compensation in this matter.

The fourth factor—the value of services on an hourly basis—does not weigh against awarding attorneys' fees here. This Court previously determined that, of the two methods available to determine whether a fee is reasonable, the lodestar method was most appropriate here. (*See* ECF No. 185 at 9). This is particularly because "'the attorney's fees are not being deducted from the Plaintiffs' recovery.'" (*Id.* at 10 (quoting *Cerrato v. All. Material Handling, Inc.*, No. CIV. WDQ-13-2774, 2014 WL 7190687, *4 (D. Md. Dec. 16, 2014))). Class Counsel initially represented that 1650.06 hours total had been billed on this case, at a blended average rate of $347/hour. (ECF No. 183-1 at ¶ 25). Based on this figure, Class Counsel initially sought an award of $610,000—$118,048.70 allocated as expenses and $491,951.30 constituting fees. (ECF No. 183 at 9). When reviewing the billing records supporting Class Counsel's lodestar calculation, however, this Court identified several deficiencies. (ECF No. 185 at 8–17). Specifically, this Court found Class Counsel had billed for non-compensable work and impermissibly used excessive, impermissible "block billing." (*Id.*). As a result, this Court found that an across-the-board

reduction of Class Counsel's hours by 25% was appropriate and ordered as much. (*Id.*). Class Counsel adjusted their fee request in accordance with this Court's guidance and clarified as such in the Notice and their Motion for Final approval. Given these adjustments, and as more fully explained in its Opinion and Order on Plaintiffs' Motion for Preliminary Approval, this Court finds the value of services on an hourly basis reasonable. A cross-check of the final lodestar amount against the percentage-of-the-fund method, further illustrates the award's reasonability.

Construing $947,475.08 as the "the total class benefit," an adjusted fee award of $429,426.38 represents approximately 45% of the settlement (429,426.39 ÷ 947,475.08 = .453). Importantly, the Sixth Circuit considers attorney's fees and costs as part of the "total class benefit." *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011) (finding the district courts failure to "add the attorneys' fees and costs to the class benefit[]" an error, albeit a harmless one). As compared to awards in similar cases, this percentage represents a reasonable fee award. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1053, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) (recognizing that fee awards in common fund cases typically range from 20% to 50% of the fund); *see also In re Telectronics*, 137 F.Supp.2d 1029, 1046 (S.D. Ohio 2001) (same); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (approving FDCPA class action fee award of 38% of the common fund); Jason Scott Johnston, *High Cost, Little Compensation, No Harm to Deter: New Evidence On Class Actions Under Federal Consumer Protection Statutes*, 2017 Columbia Bus. Law Rev. 1 at 48–56 (surveying consumer class action settlements, and finding that FDCPA class actions, specifically, saw attorney fee awards exceeding 64% of the settlement fund).

As to the fifth factor, this litigation was complex and therefore merits a significant fee award. If no settlement is approved, this litigation would progress to trial and would likely involve

12

post-trial motions and an appeal, before a benefit, if any can be achieved, is felt by the class.

Regarding the sixth factor, this Court also finds that the attorneys were highly skilled. Class counsel have served as lead or co-lead counsel in numerous consumer class actions in federal and state courts throughout the country. Defense counsel is likewise highly skilled. Counsel from both sides have professionally and zealously represented the parties, through the motion to dismiss, class certification, summary judgment, as well as extensive mediation and negotiations leading to the settlement agreement.

The Court therefore hereby **GRANTS** Class Counsel's Application for Attorney's Fees in the amount of $429,426.38 and $118,048.70 in expenses for a total amount of **$547,475.08**. The fees shall be paid directly to Class Counsel by Defendant.

### B. Service Award

Service payment awards "are common in class action settlement and routinely approved for the simple reasons 'to compensate named plaintiffs' for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 WL 1945144, at *8 (finding service payments of $2,500.00 each for six class representatives to be reasonable). *See also Swigart v. Fifth Third Bank*, No. 1-11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (approving service payments of $10,000.00 each to the two class representatives); *Rotuna v. West Customer Mgmt. Grp.*, LLC, No. 4:09-cv-1608, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving service award of $3500.00 to a representative plaintiff where the litigation lasted one year).

Class Counsel represents that Plaintiff McNamee has assisted class counsel by submitting to interviews with Class Counsel, forwarding documents and information to Class Counsel, assisting Class Counsel in reviewing the Complaint and settlement documents, and conferring

with Class Counsel as needed. (ECF No. 188 at 15). Accordingly, approval of the service payment is appropriate here.

## E. CONCLUSION

For the reasons set forth above the parties' Motion for Final Approval of Class Action Settlement is **GRANTED.**

**IT IS SO ORDERED.**

*[signature]*
**ALGENON L. MARBLEY**
**Chief United States District Court Judge**

**DATED: June 24, 2022**